David R. Flyer, Bar #100697
Raquel Flyer, Bar #282248
**FLYER & FLYER, A Professional Law Corporation**
4120 Birch St., Ste. 101
Newport Beach, CA 92660
(949) 622-8445
(949) 622-8448 (fax)
davidflyer@flyerandflyer.com
raquelflyer@flyerandflyer.com

Attorneys for Plaintiff
LEAH SNYDER

IN THE UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LEAH SNYDER,<br><br>    Plaintiff,<br><br>vs.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 TO 10,<br><br>    Defendants. | Case No. 8:21-cv-00187<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:**<br>**(1) VIOLATION OF TOM BANE ACT;**<br>**(2) WRONGFUL TERMINATION OF EMPLOYMENT; AND**<br>**(3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**PLAINTIFF DEMANDS TRIAL BY JURY** |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS:

## EXECUTIVE SUMMARY

Plaintiff LEAH SNYDER was employed for over 20 years as a computer programmer and coder by Defendant ALIGHT SOLUTIONS, LLC.  On her own time, she visited Washington, D.C., on January 6, 2021.  She listened to speeches being made and walked to the Capitol, and then she left.  She did not participate in any rioting, she did not observe any rioting, and she did not hear of any injuries to persons or damages to property during her peaceful visit.  On return home, she posted two "selfies" with her friends and at least one smiling police officer in front of the Capitol to a comment thread on the social media of Sean Armstrong.  She believed she was

engaging in a debate over the nature and scope of a protest at the Capitol. Benjamin Krysheld, apparently unaccustomed to societal norms, responded in writing by calling her the most vile and vicious insults in the human vocabulary.  Many of the insults were specifically demeaning to Plaintiff based on her gender.  It is unlikely that a man would have made similar comments to another man. Mr. Armstrong probably posted the written comments from the social media page to Defendant's website.  A true copy of Defendant's publication appears at Fig. "1," below.  When Plaintiff registered a complaint that she was the victim of cyberbullying in the publication with Defendant's Human Resources Department, she was terminated within 48 hours.

## JURISDICTION AND VENUE

1. This civil action arises under California statutes, including but not limited to Civil Code §52.1, Labor Code §1101 and §1102, and common law.

2. This Court has diversity jurisdiction where Plaintiff is a citizen of California and Defendant is a citizen of Illinois, and the amount in controversy exceeds $75,000.00, pursuant to 28 U.S.C. §1332(a).

3. This Court has personal jurisdiction over Defendant, because ALIGHT SOLUTIONS, is an Illinois Limited Liability Co., which employed Plaintiff in Orange County, California, has offices in Orange County, California, and conducts an employer consulting business within California, and within the U.S. Central District of California, Southern Division, both online and through local agents and representatives.  All of the Defendants perform substantial business within this Judicial District.

4. Venue properly lies within the U.S. Central District of California pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) because Defendants are subject to personal jurisdiction in this Judicial District as set forth above, and Plaintiff has been harmed by Defendant's conduct, as described below, in this Judicial District.

## PARTIES

5. Plaintiff is and at all times was a resident of Orange County, California.

[C:\All Files\A2099\Complaint.Snyder.Alight.01pld.wpd]

6. Defendant ALIGHT SOLUTIONS, is an Illinois Limited Liability Co., with principal place of business located at 4 Overlook Point, Lincolnshire, Illinois, which employed Plaintiff here, has offices located in, and conducted substantial business within this Judicial District. Defendant provides human resources and consulting services to California employers.

7. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued as DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names; Plaintiff will amend this complaint to show such true names and capacities when she has ascertained the same.

8. At all times herein mentioned, each of the Defendants was the agent and/or employee of each of the remaining Defendants, and was at all times herein mentioned acting within the course and scope of such agency and employment, and/or ratified the actions or omissions of each of the other Defendants. Plaintiff is further informed and believes, and thereon alleges, that each of the said Defendants is in some way responsible for the obligations hereinafter alleged.

## FACTUAL BACKGROUND

9. Plaintiff was employed by Defendant for over 20 years as a computer programmer and coder. She worked remotely from home. On January 6, 2021, while on paid time off from work, she visited Washington, D.C. She and perhaps as many as one million other people, listened to speeches made by the President of the United States and other important persons. Plaintiff is not a zealous adherent of any system of beliefs. Her impression of the speeches was that the assembled people were being asked to peacefully show their support for the U.S. Constitution and the rule of law while presenting their displeasure with vote counting procedures during the recent national election. At the conclusion of the speeches, she joined a group of people who were peacefully walking to the Capitol. She reached the Capitol, took several "selfies" with friends, and at least one with a smiling police officer in the background.

1  She did not cross or see any barricades.  She did not see nor participate in any rioting.
2  She did not enter the Capitol.  She did not observe or hear of any injuries to persons or
3  damages to property.  She was not arrested and she did not see anyone who was
4  arrested.  On occasion, when she encountered police officers, she inquired if walking
5  with the other members of the crowd was legal, and each time, the officers responded
6  that what she was doing was legal.  After spending some time at the Capitol, she left
7  and went home.

8       10.   The day after she returned home, Plaintiff, who felt uplifted by virtue of
9  her participation in a peaceful protest and based on the speeches she heard delivered
10 by the President and others, sought to explain her participation to those who had not
11 attended what she reasonably perceived was a peaceful protest of election vote
12 counting procedures.  She posted two "selfies" to a social media thread of comments
13 on Sean Armstrong's page.  Benjamin Krysheld apparently became greatly upset by
14 Plaintiff's comments.  Rather than engage in civil debate due to differing perspectives
15 from a person who was actually present in Washington, D.C., he began to viciously
16 attack Plaintiff.  Mr. Armstrong probably posted the vitriolic commentary to
17 Defendant's website, see Fig. "1," below:
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///



-5-

COMPLAINT

[C:\All Files\A2099\Complaint.Snyder.Alight.01pld.wpd]

11. Plaintiff was the victim of cyberbulling since the comments posted on Defendant's website were defamatory about her and her gender. Defendant provides its employees, including Plaintiff, with a handbook called the "Code of Conduct." Defendant's "Code of Conduct" promulgates that it values and promotes diversity, at page 4 of Exhibit "A," attached. Further, the "Code of Conduct" encourages and directs those who are subject to harassment to report it to Human Resources without fear of retaliation, at Id. Defendant employs over 15,000 persons in California and around the world, many of whom are involved in advising other companies on code compliance. Believing that her employer meant what it said in writing about diversity and the obligation to report harassment, on January 8, 2021l Plaintiff complained to Kaleen Robinson, a supervisor in Defendant's Human Resources about the posting to Defendant's website.

12. There was no formal investigation of the events by Defendant, no due process was afforded to Plaintiff, and there was no written explanation for its actions. Plaintiff was terminated for participation in a riot within 48 hours of notifying Defendant. Apparently, Defendant adopted a version of the events in Washington, D.C., which had been advanced by a particular cancel culture media outlet. Defendant was willing to employ persons of different races, creeds, colors, genders, and sexual preferences, so long as they conformed their ideas and expression of their ideas to a narrowly focused, but unwritten agenda, established by Defendant. Plaintiff received no protection by Defendant from the cyberbullies.

**FIRST CAUSE OF ACTION**

**VIOLATION OF TOM BANE ACT (Civil Code §52.1)**

**Against All Defendants**

13. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 12 as though fully set forth herein.

14. Plaintiff claims that Defendants intentionally interfered with her civil rights by threats, intimidation, or coercion. The threats, intimidation or coercion by

Defendants caused Plaintiff to reasonably believe that if she exercised her constitutional rights to speak freely, peaceably assemble or petition her grievances to the Government, Defendants would terminate her employment and report her to law enforcement for engaging in unlawful activity even though Defendants knew or should have known that the charges of unlawful activity were false.  Defendants had and have the apparent ability to carry out the threats.

15.  Defendants retaliated against Plaintiff for her having exercised her constitutional rights to speak freely, peaceably assemble or petition her grievances to the Government, and then having reported the interference with her rights to Defendants' Human Resources.

16.  Defendants intended to deprive Plaintiff of her enjoyment of the interests protected by the rights to speak freely, peaceably assemble or petition her grievances to the Government, as more fully set forth in the Tom Bane Act.

17.  Plaintiff was grievously harmed; and Defendants' conduct was a substantial factor in causing her harm.  The harm to Plaintiff included loss of wages and benefits, future loss of wages and benefits due to Defendants' abrupt termination without giving her a referral for alternative employment, and infliction of severe emotional distress, manifested by worry, fear, anxiety, sleeplessness, pain and suffering.  Plaintiff seeks special and general damages under Civil Code §52.1.

18.  Plaintiff seeks injunctive relief ordering Defendants to restore her to her former position of employment with back pay.

19.  Defendant ALIGHT SOLUTIONS, INC., is, and at all times herein mentioned, was uniquely situated to know all of the constitutional, statutory and common law rights involved in the relationship between employer and employee, because it lists that one of its main business functions is to provide compliance guidance and consultation to employers in California. Therefore, when Defendant deviated from the guidance and consultation which it provides to others, then Defendant is and was acting purposefully, maliciously and oppressively to deprive one

of its own employees of her constitutional rights. Defendant apparently does not see the hypocrisy in advising others how to act, but then acting contrary to its own advice. Defendant's egregiously bad conduct justifies imposition of punitive damages against it under Civil Code §3294.

20. Plaintiff was required to retain attorneys to advance her claim for interference with her civil rights and retaliation for exercising her rights. Plaintiff seeks attorneys fees and costs.

## SECOND CAUSE OF ACTION
## WRONGFUL TERMINATION OF EMPLOYMENT
## IN VIOLATION OF PUBLIC POLICY
### Against All Defendants

21. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 20 as though fully set forth herein.

22. Plaintiff claims that Defendants breached their employment contract by firing her in violation of public policy under Art. 1, Sec. 1 of the California Constitution as interpreted by *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980). Plaintiff commenced her employment with Defendants on December 4, 2000. The employment contract included an implied provision that Plaintiff would not be discharged except for showing of good cause. Further, she was expressly advised that there would be no retaliation for exercise of her civil rights nor for reporting harassment initiated by others against her based on exercise of her rights.

23. Labor Code §1101 guarantees Plaintiff protection from an employer controlling or directing any of her political activities or affiliations. And Labor Code §1102 guarantees that no employer shall coerce or influence or attempt to coerce or influence its employees through or by means of threat of discharge or loss of employment for failure to comply with a restricted line of political action or political activity. Labor Code §98.6 provides authority for damages against employers for violation of enumerated civil rights.

24. Defendants discharged Plaintiff for exercising her constitutional rights to speak freely, peaceably assemble or petition her grievances to the Government, by falsely claiming that she was instead, trespassing and/or rioting. Defendants' narrative of what occurred is untrue, but even if any portion of its narrative were true, Defendants acted in reckless disregard of the fact that from Plaintiff's reasonable perspective, she at all times acted within her constitutionally and statutorily protected rights, and justifiably reported harassment of her. Defendants retaliated against Plaintiff's exercise of her rights and reporting of harassment.

25. Plaintiff substantially performed her job duties.

26. Defendant discharged Plaintiff without good cause and in violation of public policy.

27. Plaintiff was harmed; and Defendants' breach of the contract of employment was a substantial factor in causing Plaintiff's harm. The harm to Plaintiff included loss of wages and benefits, future loss of wages and benefits due to Defendant's abrupt termination without giving her a referral for alternative employment, and infliction of severe emotional distress, manifested by worry, fear, anxiety, sleeplessness, pain and suffering.

## THIRD CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### Against All Defendants

28. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiff claims Defendants violated the duty implied in their employment contract to act fairly and in good faith. Plaintiff and Defendants entered into a continuous employment relationship on December 4, 2000.

30. Plaintiff substantially performed her job duties

31. Defendants breached the duty of good faith and fair dealing by terminating Plaintiff based on pretextual grounds that she had engaged in rioting or

1  trespass, without basis in fact.  Defendants' conduct prevented Plaintiff from
2  receiving the benefits due her under the contract.
3      32.    Defendants did not act fairly and in good faith.  Plaintiff was harmed by
4  Defendants' conduct.
5      Wherefore, Plaintiff prays for:
6      1.    For economic damages of at least $3,000,000.00;
7      2.    For general, special and non-economic damages of at least
8  $7,000,000.00;
9      3.    For punitive damages;
10     4.    For preliminary injunction and permanent injunction reinstating her
11 employment at the same level of remuneration;
12     5.    For attorney's fees by statute, Civil Code §52.1;
13     6.    For prejudgment interest;
14     7.    For costs; and
15     8.    For such further relief as may be proper.

Respectfully submitted,

FLYER & FLYER, A PROFESSIONAL LAW CORPORATION

Dated: January 26, 2021    By: _____
    David R. Flyer
    Raquel Flyer
    Attorneys for
    Plaintiff LEAH SNYDER

**PLAINTIFF DEMANDS TRIAL BY JURY**