JOHNNIE A. JAMES, CA Bar No. 144091
johnnie.james@ogletree.com
KATHLEEN J. CHOI, CA Bar No. 284428
kathleen.choi@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
ALIGHT SOLUTIONS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH SNYDER,<br><br>       Plaintiff,<br><br>     v.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 TO 10,<br><br>       Defendants. | Case No. 8:21-cv-00187-CJC (KESx)<br><br>**DEFENDANT ALIGHT SOLUTIONS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Request for Judicial Notice; Declarations of Mary Elizabeth Kahlich and Jenny S. Lillge; and [Proposed] Order]<br><br>Date: April 26, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>Complaint Filed: January 26, 2021<br>Trial Date: None<br>District Judge: Hon. Cormac J. Carney<br>Courtroom 9B, Santa Ana<br>Magistrate Judge: Karen E. Scott<br>Courtroom 6D, Santa Ana |

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

46584011_1.docx

**TO PLAINTIFF LEAH SNYDER AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 26, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B of the above-entitled Court, defendant Alight Solutions LLC ("Defendant" or "Alight"), will and hereby does move for an Order, pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), dismissing, without leave to amend, each of the claims for relief brought against Defendant by plaintiff Leah Snyder ("Plaintiff" or "Snyder") in this action. The Motion is brought on the ground that Plaintiff has failed to state a claim for which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the records and pleadings on file herein, any such other matter of which this Court may take judicial notice, and any other evidence and argument as may be presented.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which was initiated on March 18, 2021 and concluded on March 23, 2021.

DATED: March 29, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Johnnie A. James
Johnnie A. James
Kathleen J. Choi

Attorneys for Defendant
ALIGHT SOLUTIONS LLC

46584011_1.docx

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ....................................................................... 1

II.   RELEVANT ALLEGATIONS AND MATTERS OF PUBLIC
      RECORD ................................................................................. 2

III.  LEGAL STANDARD ................................................................ 5

IV.   ARGUMENT ............................................................................. 6

      A.   Plaintiff's First Claim For "Violation of Tom Bane Act"
           Fails Because Alight Neither Made Violent Threats Nor
           Prevented Her Participation In The January 6 Capitol
           Riot. ................................................................................. 6

      B.   Plaintiff's Second Claim For Wrongful Termination Fails
           In Light Of Her Admission That She "Was Terminated
           For Participation In A Riot." .......................................... 8

      C.   Plaintiff's Third Claim For "Breach of Covenant of Good
           Faith and Fair Dealing" Fails Because The California
           Supreme Court Rejected The "Tortious Discharge"
           Theory She Advances........................................................ 13

      D.   Leave To Amend Should Be Denied................................. 14

V.    CONCLUSION.......................................................................... 15

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................. 5, 6

*Becerra v. Dr Pepper/Seven Up, Inc.,*
945 F.3d 1225 (9th Cir. 2019) ................................................. 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. 5

*Couch v. Morgan Stanley & Co. Inc.,*
656 F. App'x 841 (9th Cir. 2016) ........................................ 11, 12

*Gonzalez v. Planned Parenthood of Los Angeles,*
759 F.3d 1112 (9th Cir. 2014) ................................................. 5

*Hinton v. Pac. Enters.,*
5 F.3d 391 (9th Cir. 1993) ....................................................... 14

*Krupski v. Costa Crociere S. P. A.,*
560 U.S. 538 (2010) ................................................................. 14

**California Cases**

*Alamo v. Prac. Mgmt. Info. Corp.,*
219 Cal. App. 4th 466 (2013) ................................................. 11

*Austin B. v. Escondido Union Sch. Dist.,*
149 Cal. App. 4th 860 (2007) ................................................. 7

*Eisenberg v. Alameda Newspapers, Inc.,*
74 Cal. App. 4th 1359 (1999) ................................................. 13

*Foley v. Interactive Data Corp.,*
47 Cal. 3d 654 (1988) ............................................................. 13

*Garcia-Brower v. Premier Auto. Imports of CA, LLC,*
55 Cal. App. 5th 961, 972 (2020) ........................................... 9

*Grinzi v. San Diego Hospice Corp.,*
120 Cal. App. 4th 72 (2004) ................................................ 9, 13

*Guz v. Bechtel Nat. Inc.,*
24 Cal. 4th 317 (2000) ............................................................. 14

*Harris v. City of Santa Monica,*
56 Cal. 4th 203 (2013) ............................................................. 11

*Haycock v. Hughes Aircraft Co.,*
22 Cal. App. 4th 1473 (1994) ................................................. 13

ii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

46584011_1.docx

*Jones v. Kmart Corp.,*
    17 Cal. 4th 329 (1998) .................................................................................. 6

*Julian v. Mission Cmty. Hosp.,*
    11 Cal. App. 5th 360, 395 (2017), *as modified on denial of reh'g*
    (May 23, 2017) ............................................................................................... 6

*Kim v. Regents of Univ. of California,*
    80 Cal. App. 4th 160 (2000) ...................................................................... 13

*King v. State of California,*
    242 Cal. App. 4th 265 (2015) ................................................................. 7, 8

*Lockheed Aircraft Corp. v. Super. Ct. of Los Angeles Cty.,*
    28 Cal. 2d 481 (1946) ................................................................................. 11

*Tameny v. Atl. Richfield Co.,*
    27 Cal. 3d 167 (1980) ................................................................................... 9

*Wills v. Super. Ct.,*
    195 Cal. App. 4th 143 (2011), *as modified on denial of reh'g* (May
    12, 2011) ....................................................................................................... 12

*Yau v. Santa Margarita Ford, Inc.,*
    229 Cal. App. 4th 144 (2014) ...................................................................... 9

**Federal Statutes**

18 U.S.C.
    § 1752(a)(1) .................................................................................................... 4

40 U.S.C.
    § 5104(e)(2)(D), (G) .................................................................................. 4, 5

**California Statutes**

Cal. Civ. Code
    § 47 .................................................................................................................. 8
    § 52.1(a), (b) .................................................................................................. 6
    § 52.1(k) .......................................................................................................... 7
    § 1150 ............................................................................................................ 14

Cal. Lab. Code
    § 2 .................................................................................................................. 10
    §§ 1101 and 1102 ................................................................................. 10, 11
    § 2292 ........................................................................................................... 13

**Other Authorities**

Judicial Council of California Civil Jury Instructions ("CACI"),
    Instruction No. 2430 .................................................................................. 11

Stats. 1915, Ch. 38, p. 47, § 1 .............................................................. 9, 10, 11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   <u>INTRODUCTION</u>

Plaintiff Leah Snyder ("Snyder"), an employee of defendant Alight Solutions LLC ("Alight"), traveled to Washington, D.C., on January 6, 2021 to attend former President Trump's "Save America Rally." By the end of his speech, rioters were already grappling with police on the Capitol steps, and would soon lay siege to the Senate and House chambers. In the midst of this stunning insurrection against the U.S. government, Snyder joined friends at the Capitol, unlawfully walking past restricted areas where police barricades had been overrun. She posed for "selfies" along the way, steps from the Capitol building as law enforcement personnel in riot gear are visible in the background. When she reached the top of the Capitol, she posed for another photo, grinning in front of a paneless window and two security officers. After Snyder returned home, she gleefully shared her photos on Facebook, which resulted in a heated argument with a third-party who apparently disapproved of the attack on our Capitol. Alight learned of the exchange when an unknown third party sent the photos to its Facebook page. Deeply troubled by Snyder's apparent alliance with the rioters at the January 6 insurrection, and after an investigation verifying the photos, Alight terminated her employment.

Clearly stung that her "peaceful and fun day" at the U.S. Capitol during what appeared to be an insurrection—which she states left her "uplifted"—should carry consequences, Snyder now claims Alight wrongfully terminated her for exercising First Amendment rights in support of an unpopular political view. Her claims rest on an imaginary fictitious line between her conduct and those of other rioters who committed the most egregious violations, by pleading she did not personally breach police barricades or desecrate the Capitol building. This line does not exist. On January 8, 2021, FBI Director Christopher Wray made clear: "what took place [January 6, 2021] was not First Amendment-protected activity, but rather an affront on our democracy." And the Department of Justice brought charges against others

1

46584011_1.docx

who claimed they merely wanted "to see what was going on" and that they were inadvertently pushed into the Capitol by the crowd. No law restricts an employer's ability to sever ties with an employee it believes violated the law and who participated in a lawless, violent riot.

In short, Snyder's claims fail because Alight never threatened Snyder and it did not prevent her from participating in the January 6 events. Snyder admits in her Complaint that Alight terminated her employment *after* she returned from Washington, D.C., because it believed she participated in a riot. No facts are alleged to suggest Alight's belief was insincere. And even if Snyder were a contract employee, she has alleged no more than breach of her employment contract, not the covenant of good faith and fair dealing. As explained further below, Snyder's Complaint should be dismissed without leave to amend.

## II.   RELEVANT ALLEGATIONS AND MATTERS OF PUBLIC RECORD

Alight, a cloud-based provider of integrated digital human capital and business solutions, employed Snyder as a computer programmer and coder for "over 20 years." (Compl., ¶ 9, ECF No. 1.) Snyder visited Washington, D.C. on January 6, 2021 and "listened to speeches made by the President of the United States and other important persons." (*Id*.) Extensive media reports from multiple print and television outlets detailed the events of the day for the nation:

- The rally took place at the Ellipse, a park near the White House and several blocks from the Capitol. (*See* concurrently-filed Request for Judicial Notice ["RJN"], Exs. 6 at 140, 8 at 159, 11 at 192.)

- Even during President Trump's speech, a crowd began growing at the perimeter fencing around the Capitol grounds, which had been closed to the public by the United States Capitol Police until February 28, 2021. (RJN, Exs. 8 at 160-161, 9 at 177-178, 13.) By the time his speech ended, an

increasingly violent mob breached the police barricades set up along some, but not all, of the perimeter. (RJN, Exs. 7 at 147, 155, 8 at 160-164, 9 at 177-178, 10 at 185.)

- Rioters then streamed into the Capitol building through a door and a broken window. (RJN, Exs. 7 at 155, 8 at 166.)

During this period, Snyder joined others walking to the Capitol. (Compl., ¶ 9.) To reach the Capitol, Snyder necessarily passed through the Capitol grounds closed months earlier by the Capitol Police and past the fencing and barricades breached when the insurrection began. (RJN, Exs. 7 at 147, 155, 8 at 160-164, 9 at 177-178, 10 at 185, 13.) At the top of the Capitol, she took several "selfies," including one standing just outside a paneless window with a security officer in the background, and another with law enforcement officers in riot gear visible behind her. (*Id.*, *see also* Compl., at Fig. 1; RJN, Ex. 12.)

The day after Snyder returned home, feeling "uplifted," she posted her "selfies" to a discussion thread on a third-party's Facebook page. (Compl., ¶ 10; Fig. 1; RJN, Ex. 12.) Predictably, this ignited an argument with another third-party that devolved into name-calling. (*Id.*) An unknown individual sent the photos to Alight's Facebook page. (*Id.*; *see also* Declaration of Mary Elizabeth Kahlich.) Snyder complained to Alight's Human Resources department about the reposted Facebook exchange on January 8, effectively admitting at the same time her participation in the January 6 riot. (Compl., ¶ 11.) By this point, exhaustive media coverage of the uprising publicized the closure of the Capitol grounds, not just the building, making clear that the mob trespassed in a restricted area. (*See, e.g.,* RJN, Exs. 7 at 152, 8 at 162-164, 166, 10 at 185, 13.) That very day, the Department of Justice announced it would charge thirteen individuals for crimes committed at the Capitol on January 6, including "knowingly entering or remaining in any restricted building or grounds without lawful authority; or knowingly, with intent to impede government business or official functions, engaging in disorderly conduct on Capitol grounds; and violent

3

entry and disorderly conduct on Capitol grounds." (RJN, Ex. 2.) The same announcement quotes FBI Director Christopher Wray declaring "what took place that day was not First Amendment-protected activity, but rather an affront on our democracy." (*Id*.)

Reasonably believing that Snyder participated in the January 6 riot, Alight terminated her employment on or about January 10, 2021. (Compl., ¶ 12.)

In the days immediately after Snyder's termination, the Department of Justice brought charges against other rioters based on social media postings similar to the photos Snyder disclosed to Alight. For example:

- Andrew Wrigley was charged on January 11, 2011 with violations of 18 U.S.C. § 1752(a)(1) and 40 U.S.C. § 5104(e)(2)(D), (G) for "knowingly entering or remaining in any restricted building or grounds without lawful authority" and "violent entry and disorderly conduct on Capitol grounds." (RJN, Ex. 5 at 133.) The supporting statement of facts submitted by the investigating agent notes that "the exterior plaza of the U.S. Capitol was also closed to members of the public" "[o]n January 6, 2021." (*Id*. at 134.) It includes several screenshots from Mr. Wrigley's Facebook page showing crowds of rioters besieging the Capitol exterior, a photo of Mr. Wrigley just inside the Upper West Terrance door of the Capitol, and another of Mr. Wrigley smiling with a group outdoors while a mob is visible behind. (*Id*. at 136-138.)

- Jennifer Ryan was charged under the same statutes as Mr. Wrigley on January 15, 2021. (RJN, Ex. 3 at 117.) The investigating agent's statement also highlighted video and screenshots from Ms. Ryan's Facebook page showing her

4

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

walking to the Capitol and posing and smiling in front of the Capitol. (*Id.* at 120.) In a photo reminiscent of Snyder's in Figure 1 of the Complaint, Ms. Ryan poses while grinning in front of a paneless window at the Capitol. (*Id.*)

- Like Mr. Wrigley and Ms. Ryan, Katherine Schwab was charged under the same statutes. (RJN, Ex. 4 at 124.) The investigating agent's statement and interview notes reflect that, like Snyder, Ms. Schwab "did not see any violence or anyone destroying anything" and she claimed she was pushed by the crowd into the Capitol building and exited as quickly as she could. (*Id.* at 130-131.) Nonetheless, the agent found probable cause to charge Ms. Schwab with violations of 18 U.S.C. § 1752(a)(1) and (2) as well as 40 U.S.C. § 5104(e)(2)(D) and (G).

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft*, 556 U.S. at 678. Likewise, the court "need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), internal quotation and formatting marks

1  omitted).

2      Determining whether a complaint states a plausible claim for relief is a

3  context-specific task that requires the court to draw on its judicial experience and

4  common sense. *Ashcroft*, 556 U.S. at 678; *Becerra v. Dr Pepper/Seven Up, Inc.*, 945

5  F.3d 1225, 1228 (9th Cir. 2019) (quoting *Ashcroft*).

6  **IV.   ARGUMENT**

       **A.   Plaintiff's First Claim For "Violation of Tom Bane Act" Fails**
7            **Because Alight Neither Made Violent Threats Nor Prevented Her**
8            **Participation In The January 6 Capitol Riot.**

9      The allegations in the Complaint fail to state a plausible claim for "violation of

10  Tom Bane Act" because the only adverse conduct attributed to Alight falls well short

11  of the requisite "threat, intimidation, or coercion." And even if that element were

12  met, Alight's conduct *after* Snyder returned home obviously could not interfere with

13  her participation in the January 6 riot. Section 52.1 of the California Civil Code,

14  known as the "Tom Bane Civil Rights Act," prohibits interference "by threat,

15  intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion,

16  with the exercise or enjoyment by any individual or individuals of rights secured by

17  the Constitution or laws of the United States, or of the rights secured by the

18  Constitution or laws of [California]." Cal. Civ. Code § 52.1(a), (b). "The [California]

19  Legislature enacted section 52.1 to stem a tide of hate crimes." *Jones v. Kmart Corp.*,

20  17 Cal. 4th 329, 338 (1998) (citation omitted). To that end, "[t]he plaintiff must

21  show 'the defendant interfered with or attempted to interfere with the plaintiff's legal

22  right by threatening or committing violent acts.'" *Julian v. Mission Cmty. Hosp.*, 11

23  Cal. App. 5th 360, 395 (2017), *as modified on denial of reh'g* (May 23, 2017)

24  (citations omitted).

25      Snyder's claim fails because she does not allege any "threat, intimidation, or

26  coercion" within the meaning of the statute. The only "threat, intimidation, or

27  coercion" alleged is Alight's "terminat[ion] [of] her employment and report [] to law

28  enforcement for engaging in unlawful activity." (*See* Compl., ¶ 14.) Snyder does not

6

allege any other adverse conduct by Alight beyond this. But the plain language of the statute is clear that such comments are insufficient:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

Cal. Civ. Code § 52.1(k). No threats of violence are alleged here and even threatening to terminate someone's employment is not suggestive of violence. Similarly, stating one's intention to report an incident to law enforcement does not "threaten[] violence against a specific person or group of persons." Nowhere does Snyder even allege that she feared violence against her person or property.

Even assuming Alight's statements about ending Snyder's employment and reporting her participation in the January 6 riot to law enforcement constituted violent "threat[s], intimidation, or coercion," there is no link between Alight's alleged actions and any conceivable interference with Snyder's rights. "The essence of a Bane Act claim is that the defendant, by the specified improper means (*i.e.*, 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (nonsuit on Bane Act claim that priest's alleged battery interfered with plaintiffs' right to public education where "no evidence…Priest caused (1) Austin and Jessica not to attend school or (2) that he attempted to achieve this result"); *see also King v. State of California*, 242 Cal. App. 4th 265, 295 (2015) (reversing jury verdict on Bane Act claim because "King did not testify that Tawney's threat caused him to do anything or refrain from doing anything, only that it caused him fear"). The constitutional rights that Alight allegedly interfered with are Snyder's "rights to speak freely, peaceably assemble or petition her grievances to the Government…." (Compl., ¶ 14.) Alight terminated

Snyder's employment days *after* the Capitol riot and Snyder's return from Washington, D.C. (Compl., ¶¶ 9-12.) By definition, once Alight terminated Snyder's employment, no further obligations bound the parties together—Snyder was free to speak, assemble, or petition as she deemed appropriate. Nor could Alight's alleged "threat" to report Snyder's involvement to law enforcement prevent Snyder from speaking, assembling, or petitioning.[1]

The Court of Appeal's careful analysis in *King* reflects an analogous timeline, which was fatal to that plaintiff's Bane Act claim. There, police officers unlawfully frisked a motorist following an unlawful traffic stop. *King*, 242 Cal. App. 4th at 271-275, 280, 287. When the motorist complained that the officer's "control hold" hurt him, the officer whispered "do something" to the motorist, which the motorist understood to be both a provocation and a threat. *Id*. at 275, 295. The Court accepted the jury's finding that "do something" was a threat of violence but concluded the threat did not interfere with any then-existing rights of the motorist because the unlawful stop and frisk *had already taken place*. *Id*. at 295. Similarly, based on her own allegations, Snyder cannot state a claim for violation of the Bane Act when Alight plainly did not try to prevent or force her to do anything.

In sum, for these two separate and independent reasons, Snyder's allegations fall well outside the protective scope of the Bane Act and this claim should be dismissed.

## B. Plaintiff's Second Claim For Wrongful Termination Fails In Light Of Her Admission That She "Was Terminated For Participation In A Riot."

The allegations in the Complaint also fail to state a plausible claim for wrongful termination based on any of the "public policies" cited. This common-law

---

[1]     Indeed, Snyder quickly retained counsel and exercised her right to petition—filing the instant complaint barely two weeks after her employment termination on January 10, 2021. To the extent Snyder's vague allegations are intended to attack *post*-termination, pre-litigation discussions between counsel regarding reinstatement and settlement, these discussions are absolutely privileged. *See* Cal. Civ. Code § 47.

claim permits an "employee who has suffered damages as a result of such discharge [for refusing to "commit a criminal act to further its interests"][to] maintain a tort action for wrongful discharge against the employer." *Tameny v. Atl. Richfield Co*., 27 Cal. 3d 167, 178 (1980). "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc*., 229 Cal. App. 4th 144, 154 (2014). Snyder alleges her termination was motivated by violations of the public policies enunciated in Sections 98.6, 1101, and 1102 of the California Labor Code. (Compl., ¶ 23.) Her claim fails because Section 98.6 does not grant employees any independent substantive rights. While Sections 1101 and 1102 do protect employees against specified categories of politically-motivated discharge, neither provision protects employees who participate in a riot.

"Section 98.6 prohibits an employer from retaliating against an applicant or employee because the applicant or employee exercised a right afforded him or her under the Labor Code." *Garcia-Brower v. Premier Auto. Imports of CA, LLC*, 55 Cal. App. 5th 961, 972 (2020). This provision is not an independent "public policy" that can give rise to a wrongful termination claim in the absence of a predicate violation of the California Labor Code. *See Grinzi v. San Diego Hospice Corp*., 120 Cal. App. 4th 72, 88 (2004) (sustaining demurrer to wrongful termination claim based on an alleged violation of Section 98.6). Thus Snyder cannot state a wrongful termination claim founded on Labor Code section 98.6 itself—she must successfully allege violations of the substantive protections of the Labor Code found in Sections 1101 and 1102.

Sections 1101 and 1102 of the California Labor Code were originally enacted in 1915 as a single section in California's General Laws. *See* Stats. 1915, Ch. 38, p.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

47, § 1; (RJN, Ex 1 at 14).[2] That statute read:

> It shall be unlawful for any employer of labor to make, adopt or enforce any rule, regulation or policy forbidding or preventing his employees, or any of them, from engaging or participating in politics or from becoming candidates or a candidate for public office, or controlling or directing, or tending to control or direct the political activities or affiliations of such employees or any of them; or to coerce or influence or attempt to coerce or influence such employees or any of them through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.

(*Id*.) When this statute was included in the 1937 codification of the California Labor Code, the new law specified that "[t]he provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments." Stats. 1915, Ch. 38, p. 47, § 1; Cal. Lab. Code § 2.

Neither section 1101 nor 1102 has been revised since the 1937 codification. *Compare* Stats. 1915, Ch. 38, p. 47, § 1 *and* RJN, Ex.1 at 14 *with* Cal. Lab. Code §§ 1101, 1102. Section 1101 provides that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office. (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Its sister Labor Code provision, section 1102, states "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." Following the instruction of Labor Code section 2 to read Sections 1101 and 1102 as "restatements and continuations" of the 1915 statute, the protections of both provisions are limited to the employees described in Section

---

[2]    Page 14 in Exhibit 1 to the Request for Judicial Notice reflect the text of the 1915 statute as obtained from Legislative Intent Services.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1101(a): those (i) who engage or participate in politics; or (ii) who become candidates for public office.[3] The California Supreme Court validated this reading of sections 1101 and 1102 when it noted that in these statutes "there is no intimation or implication of any intent to protect any individual or group advocating the overthrow of the government by force or violence. On the contrary, the words 'politics' and 'political' imply orderly conduct of government, not revolution.*" *Lockheed Aircraft Corp. v. Super. Ct. of Los Angeles Cty*., 28 Cal. 2d 481, 485 (1946).

Thus to state a wrongful termination claim predicated on these provisions, Snyder must plead facts sufficient to show that Alight terminated her employment because it believed she engaged or participated in the orderly conduct of government. *See Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (requiring "proof that [illegal] discrimination was a substantial factor in an employment decision"); *Alamo v. Prac. Mgmt. Info. Corp*., 219 Cal. App. 4th 466, 479 (2013) (noting that *Harris* "substantial factor" test applies to wrongful termination in violation of public policy claims); Judicial Council of California Civil Jury Instructions ("CACI"), Instruction No. 2430. But Snyder's Complaint states the opposite. Snyder alleges she "was terminated for participation in a riot within 48 hours of notifying [Alight]. Apparently, [Alight] adopted a version of the events in Washington, D.C., which had been advanced by a particular cancel culture media outlet." (Compl., ¶ 12.) This admission is fatal to her claim because "liability under §§ 1101(a) and 1102 is triggered **only** if an employer fires an employee based on a political **motive**." *Couch v. Morgan Stanley & Co. Inc*., 656 F. App'x 841, 843 (9th Cir. 2016) (emphasis added). In *Couch*, the Ninth Circuit affirmed summary

---

[3]     The prohibitions on "controlling or directing…the political activities or affiliations of *such employees*…or [] coerc[ing] or influenc[ing]…*such employees*…to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity" is clearly limited to the employees described earlier in the statute. Stats. 1915, Ch. 38, p. 47, § 1; (RJN, Ex. 1 at 14). "*Such employees*" are those "engaging or participating in politics or [] becoming candidates…for public office.*" (*Id*.)

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

judgment for the employer because the employer fired plaintiff for "a legitimate, apolitical reason": it reasonably believed he could not work both as a Financial Advisor and as a County Supervisor. 656 F. App'x at 843 (that plaintiff was terminated after his political candidacy was insufficient).

Nothing in the Complaint suggests Alight did not sincerely believe Snyder participated in a riot and that it terminated her employment because of some animus against the political viewpoints espoused in the course of her civic participation. At best, the Complaint alleges either that Alight was mistaken or that Snyder believed she did nothing wrong. (Compl., ¶ 24.) Neither is relevant since the pertinent inquiry is limited to Alight's motivation. *Cf. Wills v. Super. Ct.*, 195 Cal. App. 4th 143 at 160 (2011), *as modified on denial of reh'g* (May 12, 2011) ("[t]he [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent") Nor is it plausible that Alight acted out of some impermissible animus when the only information Alight had about Snyder's January 6 activities showed her proudly trespassing at a Capitol building entrance. (*Compare* Compl., Fig. 1, RJN *and* Ex 12 *with* RJN, Exs. 3 at 120, 4.) The Capitol Police had announced the Capitol grounds would be closed on that day. (*See, e.g.*, RJN, Ex. 13.) Extensive media reports confirmed the closure of the Capitol grounds and the violent breach of perimeter fencing and barricades placed around the Capitol to enforce that closure. (*See generally* RJN, Exs. 7-11.) And the very day Snyder disclosed her participation in the January 6 riot to Alight, the Department of Justice announced it charged thirteen individuals with various crimes, including entering and remaining on restricted grounds and disorderly conduct on Capitol grounds. (*See, e.g.*, RJN, Ex. 2.) Indeed, later charges indicate the Department of Justice shares Alight's view of individuals who joined the rioters (and proved it by posting "selfies" by shattered Capitol windows) – individuals who later claimed they were just patriots observing from the sidelines who were pushed by

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

others into the Capitol and left as quickly as possible. (RJN, Ex. 4.) In sum, it was entirely reasonable, and in fact correct, for Alight to believe that Snyder's participation in the January 6 riot far exceeded any reasonable definition of "engaging or participating" in the orderly conduct of government.

Snyder's claim should be dismissed because she admits that Alight terminated her employment "for participation in a riot"—a legitimate, apolitical reason that is not protected by Labor Code sections 1101 and 1102 or any other statutory provision. (*See* Compl., ¶ 12); *accord Grinzi*, 120 Cal. App. 4th at 88 (no "public policy against a private employer's termination of an employee for the employee's lawful conduct, otherwise unprotected by the Labor Code, occurring during nonworking hours away from the employer's premises").

### C. Plaintiff's Third Claim For "Breach of Covenant of Good Faith and Fair Dealing" Fails Because The California Supreme Court Rejected The "Tortious Discharge" Theory She Advances.

"Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant." *Kim v. Regents of Univ. of California*, 80 Cal. App. 4th 160, 164 (2000). But "[a]n employment relationship with no specified term is presumptively 'at-will' and both the employee and the employer are free to terminate the relationship at any time, with or without cause." Lab. Code § 2292; *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988) ("Labor Code [S]ection 2292 establishes a presumption of at-will employment"). In light of this presumption, the employee bears the burden of overcoming it with admissible evidence of an express or implied contract to the contrary. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386-87 (1999); *Haycock v. Hughes Aircraft Co.*, 22 Cal. App. 4th 1473, 1488-89 (1994). The requisite employment contract is absent here because the Complaint alleges Snyder and Alight "entered into a continuous employment relationship," not one of any specified term, and thus her employment was presumptively at-will. *See* Lab. Code § 2292. The Complaint is devoid of any other factual allegations sufficient to

13

Case No. 8:21-cv-00187-CJC (KESx)

46584011_1.docx

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  establish the existence of a contract. *See* Cal. Civ. Code § 1150. In the absence of the

2  predicate contract, Snyder has no claim for breach of the covenant of good faith and

3  fair dealing.

4        Even if Snyder were able to amend her allegations to plead an employment

5  contract, the balance of her allegations are clear that she alleges no more than an

6  unfair breach of that contract. (*See* Compl., ¶ 31.) The California Supreme Court has

7  rejected the notion that the good faith covenant is breached when an employer

8  allegedly terminates an employee in bad faith. *See Guz v. Bechtel Nat. Inc*., 24 Cal.

9  4th 317, 352 (2000). In other words, Snyder's attempt to plead a tortious breach of

10  contract has no basis in law:

11        the remedy for breach of an employment agreement, including the
      covenant of good faith and fair dealing implied by law therein, is solely

12        contractual. In the employment context, an implied covenant theory
      affords no separate measure of recovery, such as tort damages. (citation)

13        Allegations that the breach was wrongful, in bad faith, arbitrary, and
      unfair are unavailing; there is no tort of "bad faith breach" of an

14        employment contract.

15  *Id*. Similar to the *Guz* plaintiff, Snyder alleges that Alight "breached the duty of good

16  faith and fair dealing by terminating [her] based on pretextual grounds that she had

17  engaged in rioting or trespass, without basis in fact." (Compl., ¶ 31.) The Supreme

18  Court rejected this type of claim over twenty years ago. *Guz*, 24 Cal. 4th at 352. This

19  claim should be dismissed.

20      **D.**    <u>**Leave To Amend Should Be Denied.**</u>

21        Because the facts alleged in the Complaint show that Snyder has no plausible

22  claims, Snyder should not be given leave to amend her complaint. Under Federal

23  Rule of Civil Procedure 15(a), appropriate grounds for denying a request to amend

24  include untimeliness, undue delay, bad faith, dilatory motive, prejudice to the other

25  party, and futility. *Krupski v. Costa Crociere S. P. A*., 560 U.S. 538, 553 (2010);

26  *Hinton v. Pac. Enters*., 5 F.3d 391, 397 (9th Cir. 1993) (affirming district court's

27  order denying leave to amend complaint where amendments would be futile). Any

28  proposed amendments would be futile because Snyder's own photographs and the

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

public record are clear: Snyder joined the January 6 rioters at the Capitol, trespassing on restricted property to do so. When her activities came to Alight's attention, it reasonably concluded she participated in the riot, and terminated her employment. Alight was within its rights to condemn the rioters' actions and separate an employee who publicly aligned herself with their criminality and violence.

## V.    **CONCLUSION**

For the reasons stated above, Alight respectfully requests the Court grant its motion to dismiss with prejudice.

DATED: March 29, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Johnnie A. James
     Johnnie A. James
     Kathleen J. Choi

Attorneys for Defendant
ALIGHT SOLUTIONS LLC

46584011.1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF