DAVID R. FLYER, CA Bar No. 100697
davidflyer@flyerandflyer.com
RAQUEL FLYER, CA Bar No. 282248
raquelflyer@flyerandflyer.com
**FLYER & FLYER**
A Professional Law Corporation
4120 Birch St., Suite 101
Newport Beach, CA 92660
Telephone:  (949) 622-8444
Facsimile:   (949) 622-8448

Attorneys for Plaintiff
LEAH SNYDER

THOMAS M. MCINERNEY, CA Bar No. 162055
tmm@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone:  (415) 442-4810
Facsimile:   (415) 442-4870

Attorneys for Defendant
ALIGHT SOLUTIONS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH SNYDER,<br><br>   Plaintiff,<br><br>vs.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 to 10,<br><br>   Defendants. | Case No. 8:21-cv-00187-CJC (KESx)<br><br>**JOINT STIPULATION ON DISCOVERY DISPUTE**<br><br>U.S. District Court Local Rule 37-2.1<br><br>Discovery Cutoff: June 30, 2022<br>Pretrial Conf.:    October 31, 2022<br>Trial Date:         November 8, 2022<br>District Judge:<br>    Honorable Cormac J. Carney<br>    Courtroom 9B, Santa Ana<br>Magistrate Judge:  Karen E. Scott |

**TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on December 7, 2021 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 6D of the above-referenced Court, located at 411 West 4th Street, Room 1053 Santa Ana, California 92701-4516, defendant Alight Solutions, LLC ("Defendant" or "Alight") will move the Court for an order compelling plaintiff Leah Snyder to answer questions that she refused to provide in her deposition regarding the circumstances of how she was introduced to her attorney in this action.

Good cause exists for the orders requested, as the requested information is not privileged under the attorney-client privilege as it does not call for any communications with her legal counsel.

Alight's motion to compel is based on the following Joint Stipulation and the exhibits and declarations attached thereto, any supplemental memoranda filed pursuant to Local Rule 37-2.3, any additional evidence and argument as may be presented at the hearing on this motion, and all of the pleadings and other filings in this action.

Dated:  November 10, 2021    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Thomas M. McInerney
    Thomas M. McInerney
    Kathleen J. Choi
    Attorneys for Defendant
    ALIGHT SOLUTIONS LLC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION.................................................................................1

II. PRELIMINARY STATEMENTS REGARDING PLAINTIFF'S REFUSAL TO COMPLY WITH RULE 26(A)(1). .............................1

    A. Defendant's Preliminary Statement............................................1

    B. Plaintiff's Preliminary Statement...............................................2

III. DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING HER COUNSEL'S OBJECTION TO PROVIDING TESTIMONY REGARDING HOW THEY WERE INTRODUCED BASED ON THE ATTORNEY-CLIENT PRIVILEGE..................................................4

    A. The Attorney-Client Privilege Only Protects Communications Between An Attorney and Their Client............5

IV. PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING HOW SHE MET HER ATTORNEY ..........................................................................................8

    A. The Attorney-Client Privilege Pertains to More than Just Legal Advice ................................................................................8

    B. The Burden and Expense of Reopening a Deposition is Not Justified ................................................................................10

    C. Conclusions.................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Banks v. Office of Senate Sergeant-at-Arms*,
   241 F.R.D. 376 (D.C.D.C. 2007) .................................................................. 3, 10

*Bates v. State Bar of Arizona*,
   473 U.S. 350, 97 S.Ct. 2691 (1977) .............................................................. 3, 11

*Centerline Housing Partnership I, L.P.-Series 2, et al. v. Palm
   Communities, et al.*,
   2021 WL 4895746 (C.D. Cal. 2021) .................................................................. 6

*Covington v. Curtis*,
   2013 U.S. LEXIS 53406 (C.D. Cal. 2013) ................................................... 7, 11

*Doe v. City of San Diego*,
   2013 WL 6577065 (S.D. Cal. 2013) .................................................................. 11

*Dominguez v. Los Angeles*,
   2018 WL 6332279 (C.D. Cal. 2018) ............................................................ 7, 11

*Jadwin v. Abraham*,
   2008 WL 4057921 (E.D. Cal. 2008) ............................................................ 7, 11

*McCoy v. Southwest Airlines Co., Inc.*,
   211 F.R.D. 381 (C.D. Cal. 2002) ........................................................................ 6

*Oakes v. Halvorsen Marine Ltd.*,
   179 F.R.D. 281 (C.D.Cal.1998) ......................................................................... 6

*Star Editorial, Inc. v. United States District Court for the Central
   District of California (Dangerfield)*,
   7 F.3d 856 (9th Cir.1993) ................................................................................... 6

**California Cases**

*Dastagir v. Dastagir*,
   109 Cal.App.2d 809 (1952) ........................................................................... 2, 10

*Estate of Kime v. Randolph J. Barnard*,
   144 Cal.App.3d 246 (1983) ............................................................................ 6, 9

*Mahoney v. Superior Court*,
   142 Cal.App.3d 937 (1983) ............................................................................ 6, 8

*Ex Parte McDonough*,
  170 Cal. 230 (1915) .................................................................................. 6, 9

*Mitchell v. Superior Court*,
  37 Cal.3d 591 (1984) ............................................................................. *passim*

*Woods v. Fox Broadcasting Sub., Inc.*,
  129 Cal.App.4th 344 (2005) ............................................................................ 11

**California Statutes**

Cal. Evid. Code
  § 952 ........................................................................................................ 6, 9

**Other State Statutes**

Civil Code
  § 52.1 ............................................................................................................. 1

**Other Authorities**

Fed. R. Evid. 501 ................................................................................................. 6

*FRCP Rule* 26(b)(2) .................................................................................... 3, 10

Local Rule 37-1 ................................................................................................... 1

Local Rule 37-2.1 ................................................................................................ 1

Rule 26 ................................................................................................................. 7

<u>RULE 26(A)(1)</u> ................................................................................................ 1

Rule 26(b)(1) ....................................................................................................... 7

## I. INTRODUCTION

Pursuant to Local Rule 37-1, the parties met and conferred via written correspondence and October 22, October 28, and October 29, 2029. To date, these discovery disputes have not been resolved. Accordingly, pursuant to Local Rule 37-2.1, the parties hereby submit this Joint Stipulation regarding defendant Alight Solutions, LLC's ("Defendant" or "Alight") motion to compel Snyder to appear for a continuation of her deposition and answer questions regarding the circumstances surrounding how she met her attorney, including who introduced them, when they were introduced, and other related non-privileged testimony.

## II. PRELIMINARY STATEMENTS REGARDING PLAINTIFF'S REFUSAL TO COMPLY WITH RULE 26(A)(1).

### A. Defendant's Preliminary Statement.

Defendant Alight terminated plaintiff Snyder after she participated in the insurrection at the U.S. Capitol Building on January 6, 2021. Snyder brought this action in this Court on January 26, 2021. Judge Cormac J. Carney previously dismissed with prejudice a claim under section 52.1 of the Civil Code. Snyder's remaining claims are for Wrongful Termination in Violation of Public Policy and for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Snyder originally objected to appearing in person for her deposition, arguing that it was burdensome for her to appear in the jurisdiction where she filed this action and that her attorney has concerns over COVID-19. This Court overruled these objections and ordered her to appear for her deposition. On October 21, 2021, she was deposed in Orange County. During the course of that deposition, she testified that she had been in communication with her attorney at the time she was terminated in January 2021. When asked to describe the circumstances of how she introduced to her attorney, her counsel objected, asserting the attorney-client privilege. Alight's counsel confirmed he did not want to hear of any communications between the two regarding legal advice. Rather, he wanted to know the circumstances surrounding

1  how they met. Despite this clarification, Snyder's counsel continued to object and
2  instructed his client not to answer any questions regarding any circumstances as to
3  how they met.
4  Such information is not protected by the attorney-client privilege because, by
5  definition, the questions did not call for the disclosure of any confidential
6  communications. This information calls for discoverable information, as the
7  circumstances regarding how the plaintiff met her attorney could lead to the
8  discovery of witnesses and could impact the credibility of witnesses. Indeed, such
9  questions are routine in most litigation, and it is bizarre and deeply suspicious that
10 Snyder is being precluded by her counsel from providing such basic information.
11 Accordingly, objections based on the attorney-client privilege should be overruled
12 and she should be compelled to appear for a further deposition and offer further
13 testimony regarding the facts and circumstances regarding her introduction to her
14 counsel.

### B. Plaintiff's Preliminary Statement.

16 Defendant has acknowledged terminating Plaintiff's 20 year employment in
17 violation of its own express policies regarding mandatory obligation to report sexual
18 harassment and cyberbullying, as well as guidelines promoting diversity, and
19 uninhibited participation in political activities. Probably recognizing its liability to
20 Plaintiff, instead of defending on the merits, Defendant has embarked on a campaign
21 of intimidation, where the most recent instance involves demanding a deposition
22 answer as to how Plaintiff met her attorneys, adopting the procedure: "'[W]hen you
23 have no case intimate misconduct on the part of the witnesses and *try them*—not the
24 case.' This advice which was given by a notorious English barrister in the days of
25 Dickens who pilloried him in his novels is not to be indulged today." *Dastagir v.*
26 *Dastagir,* 109 Cal. App. 2d 809, 816-817 (1952).
27 First, Defendant's motion to reopen a deposition which was completed after
28 seven (7) hours of questions and answers, and which contained but a single objection

1 and instruction not to answer a patently intrusive question protected by attorney-
2 client privilege [D's P&A 4:6, infra] is meritless and must be denied.
3     Second, Defendant who has the burden of persuasion on its motion, has not
4 located a single precedent for the proposition that a party must disclose how she met
5 her attorneys. Indeed, the closest Defendant comes to such intrusive questioning is
6 *Mitchell v. Superior Court*, 37 Cal.3d 591, 598 (1984), which only permitted the
7 question, "When did you first meet [your attorney]?" Plaintiff answered that
8 question here. The California Supreme Court did not endorse any obligation to
9 respond as to how a party is referred to her attorneys, but instead, fully endorsed the
10 attorney-client privilege in order "to promote full and open discussion [between
11 attorney and client] of the facts and tactics surrounding individual legal matters," Id.,
12 599.
13     Third, not only is the question about referral source invasive of the attorney-
14 client relationship, but a "court may limit discovery if it determines that 'the burden
15 or expense of the proposed discovery outweighs its likely benefit, taking into account
16 the needs of the case …,'" see *FRCP Rule* 26(b)(2) as discussed by *Banks v. Office*
17 *of Senate Sergeant-at-Arms,* 241 F.R.D. 376, 384 (D.C.D.C. 2007) (blocking
18 questions about where attorney met his clients, non-party employees).
19     Fourth, a referral source for an attorney is not "relevant to any claim or
20 defense …," under *FRCP Rule* 26(b)(2), because attorney services are not fungible
21 such that the decision to retain a particular counsel is unrelated to what led a client to
22 walk through the door in the first instance, see *Bates v. State Bar of Arizona*, 473
23 U.S. 350, 373-374, 97 S.Ct. 2691, 2703 (1977) (First Amendment permitted attorney
24 advertising over ban by State Bar).
25     And, fifth, procedurally, so as not to waive the objections if necessary on
26 future matters: (1) although, Defendant was invited on-the-record to provide
27 authorities to support its position [Transcript 194:3-6], Defendant wrongfully
28 withheld the citations listed below until the Joint Stipulation was sent over – which is

pure gamesmanship; and, (2) Defendant was also invited on-the-record to ask its questions about any referral source from witness Sam Lewis [TR 194:17-19], but Defendant declined the opportunity to ask the question.

### III. DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING HER COUNSEL'S OBJECTION TO PROVIDING TESTIMONY REGARDING HOW THEY WERE INTRODUCED BASED ON THE ATTORNEY-CLIENT PRIVILEGE.

On October 21, 2021, the following exchange occurred during Snyder's deposition:

Q (by MR. MCINERNEY): How did you get introduced to your counsel in this case?

MR. FLYER: That's attorney-client privilege. I'm instructing you not to answer.

MR. MCINERNEY: No, it's not.

MR. FLYER: It is.

MR. MCINERNEY: I just want to know did somebody introduce you to Mr. Flyer?

MR. FLYER: No, don't answer that question.

BY MR. MCINERNEY: Without disclosing any communications you had with a lawyer, are you able to tell me how you met Mr. Flyer?

MR. FLYER: No. Don't answer the question.

MR. MCINERNEY: Counsel, can I find out what the basis is for the objection?

MR. FLYER: Attorney-client privilege.

MR. MCINERNEY: It's not asking for communications, so can you explain, maybe elaborate on it beyond saying attorney client communication or attorney-client privilege?

MR. FLYER: I believe it's attorney-client privilege. I'm willing to research it,

1 and if you have something that says I'm wrong, I'll be glad to discuss it with you but
2 I believe --
3 　　　MR. MCINERNEY: I expressly said I'm not asking for communications with
4 an attorney representing you. I just want to know how you learned about him. Did
5 you look him up in the phonebook? Did you Google his name? None of that
6 information is even remotely privileged, so that's . . . did Sam Lewis tell you to call
7 him? Any of those kinds of questions aren't even remotely privileged so that's what I
8 want to find out.
9 　　　MR. FLYER: I think that last question could be a fair question: Did Sam
10 Lewis? Because he's been named as a witness. But otherwise, I'm instructing her
11 not to answer at that question.
12 　　　MR. MCINERNEY: I'm not going to go through the names of literally
13 everyone she mentioned in the deposition and ask if they referred you. I just want
14 her to tell me who referred her to you. Are you guys -- are you guys relatives? Did
15 you -- look, we're wasting so much time here. Just tell me how you met him and I'll
16 move on.
17 　　　MR. FLYER: I'm inviting you to move on because I'm instructing her not it
18 answer and she'll follow that instruction.
19 　　　(Declaration of Thomas M. McInerney ("McInerney Decl.") in Support of
20 Motion to Compel Further Discovery, Exh. A, 193:6-195:5).
21 　　　Following the deposition, after defense counsel attempted to meet and confer
22 on this issue, Mr. Flyer responded that his objection to allowing Snyder's testimony
23 was based on both attorney-client privilege and "relevance." (McInerney Decl., Exh.
24 A, 195:6-196:20) Mr. Flyer continues to refuse to allow her to explain how they
25 met.
26 　　　**A.**　　　**The Attorney-Client Privilege Only Protects Communications**
27 　　　　　　　**Between An Attorney and Their Client.**
28 　　　In a diversity action involving California state law questions, California law

5　　　　　　　　　　　　　　Case No. 2:19-cv-09869 SB (JCx)
JOINT STIPULATION ON DISCOVERY DISPUTE

regarding the attorney-client privilege governs. Fed. R. Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal.1998). *Centerline Housing Partnership I, L.P.-Series 2, et al. v. Palm Communities, et al.*, 2021 WL 4895746, *10 (C.D. Cal. 2021). Moreover, when a party asserts the attorney-client privilege it is incumbent upon that party to prove the preliminary fact that a privilege exists. *Mahoney v. Superior Court*, 142 Cal.App.3d 937, 940 (1983).

Under California law, the attorney-client privilege applies to confidential communications between a client and his attorney during the course of that relationship. *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 386 (C.D. Cal. 2002). "Confidential communication between client and lawyer" is defined as:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952.

Further, in California the privilege has been held to encompass not only oral or written statements, but additionally actions, signs, or other means of ***communicating information***. *Ex Parte McDonough*, 170 Cal. 230, 234 (1915); *Estate of Kime v. Randolph J. Barnard*, 144 Cal.App.3d 246, 255 (1983). However, the California Supreme Court has held that since the privilege only applies to communications with an attorney for purposes of providing legal advice, it does not apply to circumstances or events unrelated to actual communications between the client and attorney, such as a question asking when the client met their attorney. *Mitchell v. Superior Court*, 37 Cal.3d 591, 598, 601 (1984).

Here, defense counsel explicitly stated he did not want to hear any communications between Snyder and her attorney. He merely asked her to how she was met her attorney. Once provided this information, he would have asked follow up non-communication-related questions regarding the circumstances. These questions are standard in a deposition and clearly not privileged.

To the extent plaintiff's counsel argues that these questions are "irrelevant" and outside the scope of discovery as spelled out in Rule 26, such an argument is clearly frivolous. Preliminarily, "relevance" is an improper basis to instruct a witness not to answer a deposition question. *Dominguez v. Los Angeles*, 2018 WL 6332279, *4 (C.D. Cal. 2018), citing *Doe v. City of San Diego*, 2013 WL 6577065, at *6 (S.D. Cal. 2013) ("[A] relevance objection is an insufficient basis for instructing a deposition witness not to answer."); *see also Covington v. Curtis,* 2013 U.S. Dist. LEXIS 53406, at *6 n. 2 ("An attorney may not instruct a witness not to answer a question on the ground that it has been asked and answered ... or is irrelevant."); *Jadwin v. Abraham*, 2008 WL 4057921 (E.D. Cal. 2008) ("[A]n objection that the question might have been repetitive was not a proper basis to instruct the witness not to answer it.").

Moreover, the standard for discovery is much broader than relevance or admissibility at trial. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. ***Information within this scope of discovery need not be admissible in evidence to be discoverable***."

Here, there can be no question that these questions are narrowly tailored and calculated to lead to the discovery of admissible evidence. For example, if another

witness in this case introduced her to counsel, this could impact that witness' credibility. Any individual who introduced Snyder to her counsel was also likely talking to Snyder about the facts and circumstances of her lawsuit contemporaneously with the events occurring. Such an individual may have discoverable information regarding these events, including how Snyder was describing or reacting to the facts and circumstances of her participation in the Capitol insurrection, her discussions with Alight officials about that action, and her termination. There are many possible avenues of legitimate discovery to which these questions relate.

### IV. PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING HOW SHE MET HER ATTORNEY

#### A. The Attorney-Client Privilege Pertains to More than Just Legal Advice

Plaintiff concurs that in diversity actions, such as this one, "California law regarding the attorney-client privilege governs," [D's P&A 5:15-20]. "Under California law, upon the refusal of the deponent to answer a question, the burden is upon the party seeking discovery to obtain an order … to compel disclosure." And, "the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." See *Mahoney v. Superior Court*, 142 Cal.App.3d 937, 940 (1983) (writ denied, where petitioner failed to present a record from the trial court, but simply made assertions of fact regarding psychotherapist-patient relationship) [D's P&A 5:22]. Defendant asserts a referral to an attorney must predate the attorney-client relationship and therefore, should not be privileged. However, Defendant provides no factual basis and zero authority to support its conclusion.

In this case, Plaintiff traveled to California for in-person deposition where the deposition comprised seven (7) hours of time, and where all of the issues, and supporting facts were thoroughly explored. Like the defendant in *Mitchell v.*

*Superior Court,* 37 Cal.3d 591 (1984) (attorney for chemical company asked deposition questions regarding warnings about hazardous chemicals provided to plaintiff by her counsel, held: writ issued to preclude questioning based on attorney-client privilege) [D's P&A 6:16], Defendant here asked when the relationship between Plaintiff and her attorneys commenced, and she answered. Plaintiff fully cooperated with Defendant, save for a single question about how she was referred to her attorneys. Now with about two pages of transcript – in other words in a factual vacuum – Defendant seeks a do over to recommence her deposition. Defendant has not met its burden of proof to show context nor relationship of the referral question to any claim or defense.

In *Mitchell, supra,* the California Supreme Court explained that the "attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years." *Id*. 599. Continuing: "Although, exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature … has determined that these concerns are outweighed by the importance of preserving confidentiality …" *Id*. It is not enough for Defendant to speculate that it could be another witness who referred Plaintiff to the underlying counsel [D's P&A 7:15], because <u>counsel expressly invited Defendant to ask that question</u> – but Defendant declined [D's P&A 4:25-27]. The attorney-client privilege is found in *Cal. Evidence Code Sec.* 952 and extends to all information transmitted between client and counsel. All information includes everything leading up to the client calling or walking through the lawyer's door as part of the retention process.

We join in the applicability of Defendant's reference to *Ex Parte McDonough,* 170 Cal. 230 (1915) [D's P&A 6:11], where the Supreme Court discharged finding of contempt against an attorney for refusal to identify the name of his client who provided money to post bail. Even the name of a client is privileged. Similarly, *Estate of Kime v. Barnard*, 144 Cal.App.3d 246 (1983) [D's P&A 6:12] upheld the privilege related to information conveyed by an attorney to his client in family court

1  proceedings and reversed the judgment of the probate court.  Defendant correctly
2  recites that it is a valid question as to <u>when</u> a client met her counsel, citing to
3  *Mitchell, supra* [D's P&A 6:16], but that is not the same as <u>how</u> a client met her
4  counsel.  Defendant must concede it cannot meet its burden of identifying persuasive
5  authority for the single question at issue here.

6        Defendant may claim that it is merely idle curiosity which piques its interest in
7  source of referral, but the question also has the sinister smell of intimidation.  When
8  "immaterial and irrelevant questions [are] propounded," there is serious risk that a
9  party is deprived of the right to fair trial, see *Dastagir v. Dastagir,* 109 Cal.App.2d
10  809, 817 (1952) (in paternity action, improper questioning regarding non-existent
11  sexual relationship with other men, led to reversal of judgment).  In the absence of
12  context and relationship to any claim or defense, a single question which is invasive
13  of attorney-client privilege, should not result in granting Defendant a second-bite-at
14  the apple by restarting a very expensive deposition.

15      **B.**    <u>**The Burden and Expense of Reopening a Deposition is Not Justified**</u>

16        A court may and should limit unnecessary discovery where the burden and
17  expense outweighs any reasonable benefit, see *FRCP Rule* 26(b)(2) as discussed in
18  *Banks v. Office of Senate Sergeant-at-Arms,* 241 F.R.D. 376, 384 (D.C.D.C. 2007)
19  (in employment discrimination case, plaintiff's attorney was not justified in asking
20  questions as to where non-party employees met counsel).  The unnecessary expense
21  and waste of time in restarting a deposition for one question benefits no one.  If the
22  question were really important to any claim or defense, then Defendant could have at
23  least placed a telephone call to the Magistrate Judge <u>during</u> the deposition for
24  resolution.

25        Defendant strings a number of cites together without benefit of analysis.  In
26  doing so, Defendant ignores a very important legal principle: "the language of an
27  opinion must be construed in light of the facts of the particular case, an opinion's
28  authority is no broader than its factual setting, and the parties cannot rely on a rule

10    Case No. 2:19-cv-09869 SB (JCx)
JOINT STIPULATION ON DISCOVERY DISPUTE

announced in a factually dissimilar case," *Woods v. Fox Broadcasting Sub., Inc.,* 129 Cal.App.4th 344, 352 (2005).

Now distinguishing Defendant's cites, starting with *Dominguez v. City of Los Angeles,* 2018 WL 6332279 (C.D.Cal. 2018) [D's P&A 6:25], that case related to an officer involved shooting. The disputed issue at deposition involved the same officer being a defendant in an earlier shooting of a citizen and whether questions about the other shooting were relevant. The court explained that the other shooting related to a claim that the officer had a particular motivation or possible lack of credibility, or could show that the officer's employer should have been aware of a proclivity for violence, Id., at *4. By contrast, there is no related case here, and fundamentally, how the client met her counsel does not relate to any claim or defense.

Reliance on *Doe v. City of San Diego*, 2013 WL 6577065 (S.D. Cal. 2013) [D's P&A 6:26] is misplaced. In that case, defense attorney instructed his witness at least 28 times not to answer questions, Id., at 5. Here there is a single objection with instruction not to answer a question based on attorney-client privilege.

*Covington v. Curtis,* 2013 U.S. LEXIS 53406 (C.D. Cal. 2013) [D's P&A 7:1], was an unpublished decision reminding counsel only to instruct a witness not to answer a deposition question to preserve privilege – precisely what was done in this case. As to *Jadwin v. Abraham,* 2008 WL 4057921 (E.D. Cal. 2008) [D's P&A 7:3], that case involved a bizarre on-the-record discussion between attorneys that almost led to fisticuffs. The court was critical of both counsel and admonished them accordingly. By contrast, here, Defendant never provided its points and authorities to justify invasion of the attorney-client privilege <u>prior</u> to submission of this Joint Stipulation despite on-the-record request that it do so [D's P&A 4:25-27]. Even still, its authorities here are not persuasive.

How a client meets an attorney is meaningless, because retention of legal services involves a discussion of the specific task to be performed, see *Bates v. State Bar, supra*, 97 S.Ct. at 2704. The discussion is protected, and how the discussion

took place is protected.

### C. Conclusions

After seven (7) hours of asking every question under the sun, and getting answers, Defendant asked a single question: "How did you get introduced to your counsel in this case?" [D's P&A 4:6]. Counsel objected. In the ensuing meet and confer, Defendant said it could be relevant if she were referred by a witness, Sam Lewis. In reply, Counsel offered Defendant a chance to ask if Plaintiff had been referred by Sam Lewis [D's P&A 4:25-27]. But, Defendant elected not to ask the question. Defendant elected not to call the Magistrate Judge during the deposition to get his question answered. Instead, knowing that Plaintiff had to travel from Las Vegas to California for deposition, Defendant wants a do-over to impose even greater costs on her.

Defendant wanted to know <u>when</u> Plaintiff retained counsel – she answered. Defendant cited no authority to justify getting a response to <u>how</u> did a client meet her attorney. We have found no such authority. The question is invasive of attorney-client privilege as part of the retention process. The question is frivolous.

Defendant provided insufficient transcript record to show context or surrounding facts which would make the question as to how did a client meet her attorney, relevant to any claim or defense. The Court should reject the invitation to reopen deposition on such a slim record.

Respectfully submitted,

Dated: November 10, 2021        FLYER & FLYER,
                                A PROFESSIONAL LAW CORPORATION


                                By: /s/ David R. Flyer
                                    David R. Flyer
                                    Raquel Flyer
                                    Attorneys for Plaintiff
                                    LEAH SNYDER

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: November 10, 2021 | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
| 3 | | |
| 4 | | By: /s/ Thomas M. McInerney |
| | | Thomas M. McInerney |
| 5 | | Kathleen J. Choi |
| | | Attorneys for Defendant |
| 6 | | ALIGHT SOLUTIONS LLC |

49254874.1