DAVID R. FLYER, CA Bar No. 100697
davidflyer@flyerandflyer.com
RAQUEL FLYER, CA Bar No. 282248
raquelflyer@flyerandflyer.com
**FLYER & FLYER**
A Professional Law Corporation
4120 Birch St., Suite 101
Newport Beach, CA 92660
Telephone:   (949) 622-8444
Facsimile:   (949) 622-8448

Attorneys for Plaintiff
LEAH SNYDER

THOMAS M. MCINERNEY, CA Bar No.
162055
tmm@ogletree.com
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone:   (415) 442-4810
Facsimile:   (415) 442-4870

Attorneys for Defendant
ALIGHT SOLUTIONS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH SNYDER,<br><br>       Plaintiff,<br><br>  vs.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 to 10,<br><br>    Defendants. | Case No. 8:21-cv-00187-CJC (KESx)<br><br>**JOINT STIPULATION ON DISCOVERY DISPUTE**<br><br>[PUBLIC VERSION CONTAINING REDACTED REFERENCES TO DOCUMENTS PROPOSED TO BE FILED UNDER SEAL]<br><br>U.S. District Court Local Rule 37-2.1<br><br>Discovery Cutoff:  June 30, 2022<br>Pretrial Conf.:     October 31, 2022<br>Trial Date:        November 8, 2022<br>District Judge:<br>    Honorable Cormac J. Carney<br>    Courtroom 9B, Santa Ana<br>Magistrate Judge:  Karen E. Scott |

**TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:**

    **NOTICE IS HEREBY GIVEN** that on March 15, 2022 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 6D of the above-referenced Court, located at 411 West 4th Street, Room 1053 Santa Ana, California 92701-4516, defendant Alight Solutions LLC ("Defendant" or "Alight") will move the

Court for an order compelling plaintiff Leah Snyder to submit to an independent mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure.

Good cause exists for the orders requested. Plaintiff Leah Snyder is asserting that she is experiencing ongoing emotional distress damages arising from her termination of employment from Alight for participating in the mob riot at the U.S. Capitol Building on January 6, 2021. She has quantified her emotional distress damages variously in her complaint and her most recent disclosures as between $5.5M and $7M. Snyder has refused to stipulate to such an examination, arguing falsely that she is only asserting "garden variety" emotional distress in this case. Seven million dollars is emotional distress damages is hardly "garden variety." Alight is requesting that this examination be conducted on June 28, 2022 in Los Angeles by Dr. Ari Kalechstein, PhD, a licensed and trained psychologist with expertise in this area.

Alight's motion to compel is based on the following Joint Stipulation and the exhibits and declarations attached thereto, any supplemental memoranda filed pursuant to Local Rule 37-2.3, any additional evidence and argument as may be presented at the hearing on this motion, and all of the pleadings and other filings in this action.

Dated: February 18, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Thomas M. McInerney
      Thomas M. McInerney
      Kathleen J. Choi
      Attorneys for Defendant
      ALIGHT SOLUTIONS LLC

# **TABLE OF CONTENTS**

**Page**

I.   ATTEMPTS TO RESOLVE THIS DISPUTE INFORMALLY ............. 1

A.   Defendant's Version. .................................................................. 1

B.   Plaintiff's Version. ..................................................................... 1

II.   PRELIMINARY STATEMENTS REGARDING PLAINTIFF'S REFUSAL TO COMPLY WITH RULE 26(A)(1). ................................ 2

A.   Defendant's Preliminary Statement. .......................................... 2

B.   Plaintiff's Preliminary Statement. ............................................. 4

III.   DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES. ............................................................................... 6

A.   Defendants are Entitled to Conduct a Mental Examination of Plaintiff Because She Has Placed Her Mental State in Controversy and Good Cause Exists to Order the Mental Examination ................................................................................... 8

1.   Snyder placed her mental state in controversy ................... 8

2.   Good Cause Exists for this Order. ..................................... 11

3.   Alight's proposed examination is reasonable. ................... 12

IV.   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES EXPLAINING WHY DEFENDANT IS NOT ENTITLED TO AN IME .......................................................................... 13

A.   Lack of Good Cause Exists for IME ........................................ 13

B.   Justification for Protective Order ............................................. 19

C.   Defendant's Conclusions .......................................................... 19

## ISSUES

1. Whether good cause exists to compel Plaintiff to attend mental examination under FRCP 35?

2. Whether Plaintiff's declaration confirming that, (a) she is Not making a claim for a specific mental or psychiatric disorder or for unusually severe emotional distress; (b) she is Not making a claim for mental and emotional distress over and above that usually associated with ordinary or common place emotional distresses of the kind that any person would experience following termination of long term employment; and, (c) she will Not call on any expert regarding alleged emotional distress damages, which declaration may be read to the jury, is sufficient justification for issuing a protective order against mental examination under *Pringle v. Wheeler*, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021)?

# I.    <u>ATTEMPTS TO RESOLVE THIS DISPUTE INFORMALLY</u>

## A.    <u>Defendant's Version.</u>

Pursuant to Local Rule 37-1, the parties met and conferred extensively regarding defendant Alight Solutions LLC ("Alight") request that plaintiff Leah Snyder ("Snyder") stipulate to an independent mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure. On December 20, 2021, counsel for the parties conducted a discovery meet and confer by telephone in which defense counsel requested this stipulation. This was followed by written correspondence by the parties on December 21, December 22, January 9, January 13, January 18, and January 25. Counsel for the parties also met and conferred again about this issue by telephone on January 20, 2022. (Declaration of Thomas M. McInerney in Support of the Joint Stipulation for an Independent Mental Exam ("McInerney Decl."), ¶¶ 3-9, Exhibit ("Exh.") A, B, C, D, E, and F. To date, these discovery disputes have not been resolved. Accordingly, pursuant to Local Rule 37-2.1, the parties hereby submit this Joint Stipulation regarding Alight's motion to compel Snyder to appear for an independent mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure.

## B.    <u>Plaintiff's Version.</u>

Defendant has not meaningfully participated in dispute resolution because Plaintiff announced that she withdrew her claims for presenting specific psychological damages and promised not to call an expert at trial by declaration which could be read to the jury, in reliance on the District Judge's opinion in *Pringle v. Wheeler*, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021), but Defendant refused and continues to refuse to explain why it needs a highly expensive and invasive 8-9 hour neuropsychological examination. (See Declaration of Leah Snyder, paragraphs 2 and 3, and Exhibit "1," to Declaration of David Flyer). Defendant owes a reasonable explanation as to why it elected Not to respond to Plaintiff's February 7, 2022 letter, particularly where Defendant Amended the proposed

Stipulation on February 11, 2022, after receiving the letter.  The rate for Defendant's hired gun for pre-deposition services is at least $445.00 per hour, and for deposition and trial services at least $950 per hour, (see Exhibits "2," and "3," to Flyer Declaration).  Further, Defendant insists that the examination take place in Los Angeles, like her deposition, again requiring Plaintiff to incur unnecessary and unjustifiable expenses when she does Not reside in California.

It was patently unreasonable for Defendant to refuse to respond to Plaintiff's genuine offer of resolution and worse, for Defendant to fail to rebut the application of law to an identical fact pattern.  Defendant is wasting valuable legal and judicial resources by trying to force Plaintiff to call an expert witness, which she has irrevocably announced she will not do so.

## II. <u>PRELIMINARY STATEMENTS REGARDING PLAINTIFF'S REFUSAL TO COMPLY WITH RULE 26(A)(1).</u>

### A. <u>Defendant's Preliminary Statement.</u>

Alight terminated plaintiff Snyder after she participated in the mob riot at the U.S. Capitol Building on January 6, 2021.  Snyder brought this action on January 26, 2021.  Judge Cormac J. Carney previously dismissed with prejudice a claim under section 52.1 of the Civil Code.  Snyder's remaining claims are for Wrongful Termination in Violation of Public Policy and for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Alight seeks to compel the mental examination of plaintiff Snyder pursuant to Rule 35 of the Federal Rules of Civil Procedure to determine the extent and causes of her purported emotional distress.

Snyder has unquestionably put her mental condition at issue in this action.  First, she seeks emotional distress damages arising from numerous claims for relief under the California Fair Employment and Housing Act ("FEHA").  In her pleadings in this case she has quantified her emotional distress damages at between $5.5M and $7M. ████████████████████████████████████

[REDACTED]

Third, Snyder's counsel has informed Alight that he may cause these healthcare providers to testify at the trial of this action related to her alleged emotional distress.

Based upon the allegations in her pleadings and her deposition testimony, Snyder will attempt to show that she has suffered significant emotional distress as a result of Alight's alleged wrongful conduct. Indeed, should she prevail at trial, Snyder's purported emotional distress will almost certainly represent the bulk of her potential damages recovery. Accordingly, Alight's ability to have a retained expert conduct a mental examination is vital: Alight needs to make an unfiltered and expert assessment of Snyder's mental state, both before and after her termination, and explore the cause(s) of Snyder's alleged emotional injuries and the impact of alternative stressors. Notwithstanding Alight's good cause to seek her mental examination, Snyder has refused to cooperate, which in turn has required Alight to file the instant Motion. Alight requests that the Court compel Snyder to submit herself to a mental examination on June 28, at 10:30 a.m., in Los Angeles, which is the earliest available date for Dr. Ari Kalechstein, Alight's retained expert.

Dr. Kalechstein's proposed examination will include an interview, psychological testing, and any other methodologies that are ordinarily deemed a part of a general mental examination, including but not limited to the following requirements and conditions precedent:

The mental examination shall take place at the office of Dr. Kalechstein on

June 28 at his office located at 11835 W. Olympic Blvd., Suite 1265E, Los Angeles, CA 90064.

At the time of said examination, Snyder shall answer all proper questions and inquiries submitted to her by Dr. Kalechstein, including her history and prior and other mental injuries for the purpose of making a proper diagnosis of Snyder's conditions and shall in all ways cooperate with Dr. Kalechstein.

The examination will consist of a detailed clinical interview and mental status examination, a review of medical records, and the administration of appropriate generally accepted standardized psychological testing and screening cognitive assessments.

Alight shall bear the costs of such examination.

The examination is anticipated to last eight to nine hours assuming cooperation from Snyder.

The mental examination will involve no physical examination and involve no blood tests or other intrusive medical studies or procedures.

### B.    Plaintiff's Preliminary Statement.

Defendant hi-lighted the disputed issue for the Court, which is contrary to the Court's stated analysis at Doc. 54, page. 4, para. 3.C.  Defendant wrote above: "Alight terminated plaintiff Snyder after she participated in the mob riot at the U.S. Capitol Building on January 6, 2021," in order to correct the Court's analysis that: "The premise of [Plaintiff's] argument is wrong, since Defendant's stated reason for terminating Plaintiff was *her own* unlawful activity and her subsequent decision to publicize it on social media, not merely participating in rally where other people engaged in unlawful activity." [Emphasis in original].  Defendant has just conceded that it cannot rely on help from the Court as to the issue, because Plaintiff did not engage in "any unlawful activity," she was not convicted, nor even charged with any crime.  Once unlawful activity is taken out of the issues, then matter *sub judice* is whether Defendant terminated Plaintiff's long term employment in violation of

*Labor Code* §§1101 and 1102 and public policy.

Defendant has not come to grips with the issue here, that it must show good cause for compelling mental examination, *Fed. Rules of Civ. Proc., Rule* 35(a)(2). Plaintiff has the right to limit her claim for damages by declining to call her own expert, see *Pringle v. Wheeler*, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021) (in a case involving racial discrimination and hostile work environment, defendant's motion for mental examination was denied).  Note that a District Judge ruled in *Pringle*, which is the only cited case not involving a Magistrate Judge.  Defendant did cite to the U.S. Supreme Court case of *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (motion to compel mental examination of plaintiff-driver in bus-tractor accident case, upheld by appellate court, but reversed on writ of mandamus to the High Court).  We agree the Supreme Court precedent is dispositive, holding at 379 U.S. 104, 117:

> The courts of appeals in other cases have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. This is obviously true as to the 'in controversy' and 'good cause' requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

Even if Plaintiff had placed her mental state in issue, she retains the right to limit her claim for damages by submission of her *Pringle* conforming declaration, where the District Judge approved the declaration method adopted in *Preston v. City of Oakland,* 2015 WL 12976100*3 (N.D. Cal. 2015) (denying defendant's mental examination in a violation of Labor Code §1102.5 case).  Simply suing Defendant does not mean that Plaintiff must be crazy.  Plaintiff certainly has no foundation for testifying at Court as to her alleged diagnosis of post-traumatic stress disorder. Defendant has not, and cannot distinguish the reasoning and holding of *Pringle*.

Defendant has mischaracterized the meet and confer telephone discussion above, by averring that "[Plaintiff's] counsel has informed Alight that he may cause

these healthcare providers to testify at the trial …"  Plaintiff's counsel did not say what is alleged, because Plaintiff has no intention of calling and will not call, either the physician's assistant, Ms. Kathy Shinozaki, nor the therapist, Ms. Linda Snell, at trial, (see Flyer Decl., para. 4).  The health care records of these two providers are confidential and should not be released to the public, because they will not be offered in evidence at trial, (see Flyer Decl., para. 5).  Defendant is wrong to assert that "the bulk of her potential damages recovery" relates to some form of psychological damages.  Plaintiff suffered a significant loss of income, and her efforts at mitigation have not resulted in obtaining a job at equivalent remuneration, (see Flyer Decl., para. 6).

Plaintiff appeared in person at her costs for her deposition in California.  She resides and works in Las Vegas, Nevada (see Flyer Decl., para. 7).  She should not be required to incur further expenses by returning for additional discovery in California.

### III.    DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES.

Snyder's complaint alleges that the actions of Alight resulted in the "infliction of *severe emotional distress*, manifested by worry, fear, anxiety, sleeplessness, pain and suffering."  (Complaint, ¶¶ 17, 27) (emphasis added).  The complaint also asserted that in addition to economic damages of $3,000,000, Snyder has experienced "non-economic damages of at least $7,000,000.00."  (Complaint, Prayer, 10:6-8).

In her most recent initial disclosures, served on November 5, 2021, Snyder further asserted the following regarding her emotional distress damages:

> Plaintiff has suffered non-economic damages in the form of worry, anxiety, depression, anger, sleeplessness, physical discomfort, loss of self-worth, and fear about being able to provider for her own care given she is unemployed, and not likely to obtain comparable employment, or she will be significantly unemployed.  It is estimated that the value of her non-economic damages is at least equivalent to the value of her

actual projected economic damages.[1]

Plaintiff's Second Supplemental Disclosures, attached at McInerney Decl., ¶ 10, Exh. G.

Ms. Snyder also testified at length under oath in her deposition regarding her alleged emotional distress damages.  She testified that she started seeing a therapist named Linda Snell, LCSW, in early February 2021, shortly after her termination, and that she has seen this therapist weekly since that time.  (McInerney Decl., ¶ 2, Exh. H [Snyder Depo., 60:4-19]).  Ms. Snell is also identified as a witness she may call in this case, and in Snyder's counsel's letter dated January 25, he states that Snell "may testify as [a] percipient non-retained witness[]" at trial.  (McInerney Decl., ¶ 9, Exh. F.)  In documents produced by therapist Snell pursuant to a subpoena, ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

(McInerney Decl., ¶ 11, Exh. I).  ████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████  (McInerney Decl., ¶ 2, Exh. H [Snyder Depo., 58:10-59:24]).

Notably, Snyder testified in her deposition that her emotional distress symptoms have not abated, but are ongoing and entirely attributable to the actions of

---

[1] Snyder's disclosures estimated her economic damages at $5,500,000.  Therefore, as of November 2021 she estimated her emotional distress damages were at least equivalent to that amount.

Alight.  (*Id.* [Snyder Depo., 65:18-70:6]).

## A.   Defendants are Entitled to Conduct a Mental Examination of Plaintiff Because She Has Placed Her Mental State in Controversy and Good Cause Exists to Order the Mental Examination

Rule 35 of the Federal Rules of Civil Procedure provides that "[t]he court . . . may order a party whose mental or physical condition – including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.  When determining a Rule 35 motion, the court is to construe Rule 35 liberally in favor of granting discovery.  *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964).  "Granting a request for a psychiatric examination pursuant to Rule 35 is to preserve [] the equal footing of the parties to evaluate the plaintiff's mental state…."  *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995).  The mental examination of a party is permitted so long as: 1) the mental condition of the party has been placed "in controversy" and 2) "good cause" for the examination is established.  *Schlagenhauf*, 379 U.S. at 117 20; *see Ragge*, 165 F.R.D. at 608 (citing Schlagenhauf with approval).

## 1.   Snyder placed her mental state in controversy

A plaintiff puts her mental state in controversy if one or more of the following aggravating factors is present: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; or (5) plaintiff concedes that her mental condition is "in controversy" within the meaning of Rule 35(a).  *See*, *e.g.*, *Robertson v. City of San Diego*, Civil No. 13cv1460 W (JLB), 2014 WL 6810726, at *2 (S.D. Cal. Dec. 2, 2014); *Turner v. Imperial Stores, et al.*, 161 F.R.D. 89, 98 (S.D. Cal. 1995).  The presence of even one of these factors is sufficient to place mental state in controversy.  *See Ayat v. Societe Air France*, No. C 06-1574 JSW (JL), 2007 WL 11203528, at *4 (N.D. Cal. Apr. 16, 2007).

1    Here, Snyder satisfies at least three of these five factors.  First, she alleges

2 specific mental or psychiatric injury or disorder.  Indeed, she has sought treatment

3 from both Linda Snell, LCSW, and Cathy Shinozaki, P.A., for emotional distress that

4 she attributes to her termination from Alight.  She alleges that this emotional distress

5 is continuing and unabated. ███████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████ Her recent disclosures

10 state that she continues to suffer from "worry, anxiety, depression, anger,

11 sleeplessness, physical discomfort, loss of self-worth, and fear about being able to

12 provider for her own care given she is unemployed."  (McInerney Decl., ¶ 10, Exh.

13 G)  And, she testified that █████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████

16    Second, she also alleges unusually severe emotional distress.  For example,

17 her complaint alleges that the actions of Alight resulted in the "infliction of **severe**

18 **emotional distress**, manifested by worry, fear, anxiety, sleeplessness, pain and

19 suffering."  (Complaint, ¶¶ 17, 27) (emphasis added).  The complaint also asserted

20 that in addition to economic damages of $3,000,000, Snyder has experienced

21 emotional distress damages of at least $7,000,000.00."  (Complaint, Prayer, 10:6-8).

22 Her recent disclosures downgraded this only slightly, estimating her emotional

23 distress damages to be **at least** $5,500,000.

24    Third, Snyder's counsel has indicated that he may call her therapist Snell and

25 Shinozaki at trial, stating in recent correspondence that both "may testify as

26 percipient non-retained witnesses."  (McInerney Decl., ¶ 9, Exh. F.)  Considering the

27 fact neither individual was with Snyder at the U.S. Capitol on January 6, 2021, the

28 only potentially relevant testimony either could provide relates to their treatment to

Snyder for emotional distress.

Snyder's counsel has argued during the meet and confer process that he never put her emotional distress at issue in this case and that she only seeks "garden variety" emotional distress damages.  These arguments are flatly false.  First, her complaint and disclosures specifically assert emotional distress damages that dwarf the economic damages she is seeking in this case.  Arguing that she has not put her mental condition in controversy requires ignoring her complaint and disclosures, as well as her extensive deposition testimony regarding her alleged emotional distress.

Second, seeking $5.5M or $7M in emotional distress damages is hardly "garden variety."  Snyder's counsel seems to think that by simply "re-branding" her claim for massive emotional distress damages as "garden variety" insulates her from being subject to a Rule 35 examination.  This is simply not the case.  "Garden variety emotional distress is ordinary or commonplace emotional distress that is simple and usual or incidental."  *Nunez v. Keurig Dr. Pepper*, 2019 WL 6170733 *2 (C.D. Cal. 2019), *quoting Diungugala v. Dep't of Conservation*, 2018 WL 6137595, at *1 (C.D. Cal. 2018); *Houghton v. M&F Fishing, Inc*., 198 F.R.D. 666, 669 (S.D. Cal. 2001) (garden variety emotional distress is "normally associated with or attendant to" the injury).

For example, in the recent Central District case of *Nunez v. Keurig Dr. Pepper*, the plaintiff similarly argued she had experienced only "garden variety" emotional distress.  However, the Court compelled the examination based on the fact the plaintiff was seeking $200,000 in emotional distress damages, the emotional distress was allegedly ongoing, and the information sought from a mental examination was not available by any other means.  Here, Snyder seeks emotional distress damages ***28 to 35 times greater*** than that asserted by the plaintiff in *Nunez*. One simply cannot legitimately argue that such an enormous emotional distress damage claim is merely "garden variety."  Snyder also testified █████████ ████████████████████████ (McInerney Decl., ¶ 2, Exh. H [Snyder Depo., 65:18-

70:6]).  And, there is no possible way for Alight to obtain this expert information by any other means.

### 2.   Good Cause Exists for this Order.

Good cause also exists for a mental examination of Snyder.  Courts in the Central District have recognized that where a plaintiff claims an ongoing mental or emotional injury, "[c]ourts have read *Schlagenhauf* as merging the 'in controversy' and 'good cause' requirements of Rule 35."  *Ragge*, 165 F.R.D. at 609; *see also Duncan v. Upjohn*, 155 F.R.D. 23, 25 (D. Conn. 1994) ("By claiming ongoing psychiatric harm caused by the ... defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination under *Schlagenhauf*.")

Even if the two requirements were not merged, Alight would simply be required to satisfy only one of the following elements to meet Rule 35's requirements for good cause:

(1) the plaintiff has pled a cause of action for intentional or negligent infliction of emotional distress;

(2) the plaintiff has alleged a specific mental or psychiatric injury;

(3) the plaintiff has pled a claim for unusually severe emotional distress;

(4) the plaintiff plans to offer expert testimony to support a claim of emotional distress, and/or

(5) plaintiff has conceded that his or her mental condition is 'in controversy' for the purposes of FRCP 35(a).  *Ford v. Contra Costa Cty.*, 179 F.R.D. 579, 580 (N.D. Cal. 1998).  As explained above, Snyder satisfies at least three of the five applicable elements.  Snyder therefore satisfies the "good cause" element.

Beyond those points, one factor courts consistently use to assess "good cause" or determine whether a mental examination is generally warranted is whether a party has alleged some type of ongoing mental injury.  *See, e.g., Enwere v. Terman Associates, L.P.*, No. C 07-1239 JF (PVT), 2008 WL 5146617, at *3 (N.D. Cal.

Dec. 4, 2008) (citing *Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 221–22 (S.D.N.Y. 1994); *Duncan v. Upjohn*, 155 F.R.D. 23, 25 (D.Conn. 1994); *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (ordering mental examination where Plaintiff demonstrated ongoing mental injury by alleging that her mental health injuries require "continuing medical treatment"); *Ragge*, 165 F.R.D. at 608. If a plaintiff alleges ongoing mental injury or the likelihood of future mental distress, typically good cause exists for a mental examination. *Ayat*, 2007 WL 1120358, at *4 (ordering mental examination when plaintiff alleged he "suffered and continues to suffer from depression").

Here, as explained above, Snyder alleges that ███████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████ (McInerney Decl., ¶ 2, Exh. H [Snyder Depo., 65:18-70:6]). The good cause requirement is met.

### 3.   Alight's proposed examination is reasonable.

The examination Alight seek will test the extent and nature of Snyder's alleged emotional distress, as well as whether she has experienced any alternative environmental or psychological factors that contribute to her emotional distress. Dr. Kalechstein meets Rule 35's requirements of being "suitably licensed or certified examiner[s]"; further, he has administered a large number of prior mental examinations. (*See* McInerney Decl., ¶ 12, Exh. J [Curriculum Vitae of Dr. Ari Kalechstein].) The examination and psychological tests Dr. Kalechstein seeks to use are widely accepted, non-invasive, and designed to evaluate Snyder's allegations. (*See* McInerney Decl., ¶ 13, Exh. K ["Description of the Neuropsychological Evaluation"]).

Further, for all the reasons related above, the proposed testing is necessary to obtain an accurate diagnosis. Moreover, Dr. Kalechstein is available to conduct this examination at his office located at 11835 West Olympic Blvd., Suite 1265E, Los Angeles, California 90064. He is available to conduct it on June 28, 2022 starting at

10:30 a.m.  It is anticipated to last eight to nine hours, excluding breaks.  (*Id*.).  Such a duration is well within the purview that courts routinely give for such examinations.  *See*, *e.g*., *Ayat*, 2007 WL 1120358, at *2, 9 (eight hours allowed).

Due to the COVID-19 pandemic, Dr. Kalechstein will also implement various protective precautions, as outlined in his "Examination Parameters Due to COVID-19," attached at Exh. L of the McInerney Declaration.  Such precautions include the wearing of a mask or face shield[2] and certifying that she has not knowingly been diagnosed with COVID-19 and that she will confirm she does not have a temperature greater than 100 degrees F.

## IV.   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES EXPLAINING WHY DEFENDANT IS NOT ENTITLED TO AN IME

### A.   Lack of Good Cause Exists for IME

Defendant's wish to have a neuropsychologist who charges between $445.00 and $950.00 an hour, is calculated to drive up costs and embarrass Plaintiff, only. Plaintiff was seen by a therapist and a physician's assistant for her garden variety "emotional distress" caused by Defendant's wrongful termination of her. Plaintiff does not intend to introduce any specific diagnosis at trial nor any expert testimony on emotional distress damages, and her declaration may be read to the jury.

The elements required to permit mental examination are described in the leading published case of *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995) (defendant's motion to compel mental examination in employment discrimination case by black cashier who was terminated for taking an unauthorized one hour and 10 minute break, but which did not contain a separate claim for intentional or negligent infliction of emotional distress, was denied), at 95:

---

[2] At her deposition, for unclear reasons, Snyder wore a mesh mask, not a mask designed to provide protection from transmitting COVID-19.  To protect Dr. Kalechstein Alight would request that the order require the wearing of a cloth or procedure mask consistent with what is recommended by the Centers for Disease Control over her mouth and nose.  *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html

These cases suggest that courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

Applying those elements here:

1.) There is no cause of action for intentional or negligent infliction of emotional distress;

2.) No specific mental or psychiatric injury or disorder was alleged in the Complaint;

3.) Discovery has revealed no "unusually severe emotional distress." Instead, Plaintiff disclosed that she was treated by Kathy Shinozaki, a physician's assistant and Linda Snell, a licensed social worker. The total number of pages dedicated to diagnosis and therapy consumes less than 20 pages at a charge of about $4,000.

4.) Plaintiff has not, and will not, retain an expert witness to support her claim of emotional distress.

5.) Plaintiff has not placed her mental condition in controversy. She initially sought therapy as she had difficulty coping with her termination after 20 years working for Defendant, and believed she would have difficulty in obtaining replacement employment. After being on disability for eight months, Plaintiff was able to partially mitigate her loss of future employment damages claim by obtaining a job at about 60% of her rate of pay from Defendant. Plaintiff seeks "garden variety" emotional distress damages, only.

In *Pringle v. Wheeler*, No. 19-CV-07432-WHO, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021), the District Judge held plaintiff's assurances that he was not making a claim for a specific mental or psychiatric injury or disorder and that he

would not call an expert regarding his alleged emotional distress damages negated any good cause for a mental examination:

> While I find that Pringle's emotional distress claims do not put his mental condition in controversy, he must give Regan the assurances provided in his reply brief in a binding form. See *Preston*, 2015 WL 12976100, at *3 (finding it unclear whether plaintiff's emotional distresses, including insomnia, anxiety, headaches, and decreased social activity, "are 'garden-variety,' especially given plaintiff's claim of $1 million in general damages," but concluding that a stipulation from plaintiff agreeing to not make a claim for a specific mental or psychiatric injury or for usually severe emotional distress, along with an assurance that plaintiff will not use expert testimony regarding her alleged emotional distress damages "would render a mental examination unnecessary in this case").

Further, "[T]he amount of the emotional distress damages sought by plaintiff is [ ] not by itself dispositive of" whether mental condition is in controversy. See *Pringle, supra*, at *4 (seeking the statutory maximum of $300,000.00, without more, did not warrant an independent medical examination). See also *Turner, supra*, 161 F.R.D. at 97 rejecting argument that "compensatory damages in excess of one million dollars" for emotional distresses justifies a request for a mental examination because a "claim for damages in this amount, without more, does not alter this court's conclusion that Turner's claim for damages for emotional distress is basically a 'garden-variety.'" And see *Preston v. City of Oakland*, No. 14-CV-02022 NC, 2015 WL 12976100, at *2 (N.D. Cal. 2015) (seeking $1 million in general damages for her emotional distress, the highest component of damages in case for violation of California Labor Code section 1102.5 and the First Amendment right to free speech, was not dispositive on the issue of whether to grant motion to compel psychological examination).

Emotional distress being an element of damages is not equivalent to placing a "mental condition" "in controversy."  See *Perez v. Health,* 2016 WL 1156497 (N.D. Cal. 2016), where plaintiffs brought an action against their former employer for discrimination, retaliation, constructive discharge, and failure to provide a workplace free of retaliation, at *1. Both plaintiffs claimed to suffer from "severe emotional

distress, including but not limited to, anxiety, humiliation, embarrassment, loss of self-esteem, mental anguish, depression and post-traumatic stress." *Id*. But, the court held, at *2:

> However, Plaintiffs' allegations appear to be based on the distress an ordinary person would suffer if she suffered employment discrimination as alleged.  This language concerning Plaintiffs' general emotional distress is contained in all six of Plaintiffs' claims, with no separate cause of action for infliction of emotional distress. Furthermore, as noted above, Plaintiffs have agreed to limit any emotional distress damages to garden variety type emotional distress. Cases that involve garden variety allegations of emotional distress ordinarily are not sufficient to require a mental exam. *Rund*, 2007 WL 312037, at *2 ("there is no doubt that the ordinary person would suffer temporary distress if he were unlawfully terminated from employment he otherwise desired to retain. There is no need to conduct a mental examination, or have medical personnel testify to such, for the very reason that such distress is normal and understandable by the lay factfinder.") (citing *Sabree v. United Broth. of Carpenters & Joiners*, 126 F.R.D. 422, 426 (D. Mass. 1989) (finding that although complaint contained specific claims for emotional distress under state law, plaintiff's mental condition was not at issue); *Benchmaster, Inc. v. Kawaelde*, 107 F.R.D. 752, 754 (E.D. Mich. 1985) (proffering rationale that psychiatrist could aid only in determining present emotional disturbance); see also *Minnard v. Rotech Healthcare Inc*., 2008 WL 150502, at *3 (E.D. Cal. Jan. 15, 2008) ("A review of the complaint indicates for most claims that the addition of 'emotional distress' damages to the prayer was fairly routine and would not have placed defendant on notice that a Rule 35 exam should have been scheduled. But the addition of a specific 'intentional infliction of emotional distress' claim is a factor pointing to the necessity for such an exam.").

Importantly, in *Perez*, as is the case here, neither plaintiff was treated by psychiatrist, *Id*. at *3. When there has been no treatment or diagnosis by a *medical doctor*, an independent *medical* examination is not appropriate nor justified.

Other than *Schlagenhauf v. Holder*, where Plaintiff agrees with the holding, Defendant's remaining cases are distinguishable.  In *Nunez v. Keurig Dr. Pepper, Inc.*, 2019 WL 6170733, at *3 (C.D. Cal. 2019) the plaintiff testified that the deaths of her brother-in-law and god-daughter "bundled up" with the allegedly wrongful termination led her to see a <u>medical doctor</u> to seek counseling for depression and anxiety. Therefore, there was "a question regarding what portion of Plaintiff's depression is attributable to Defendants' alleged wrongful conduct and what portion is attributable to Plaintiff's other life circumstances. There is no other available

means for Defendants to determine the extent of Plaintiff's injuries attributable to Defendants' alleged wrongful conduct." *Id*. Here, there are no other contributing factors. Further, in *Nunez,* the plaintiff actually was treated by a medical doctor.

In *Diunugala v. Dep't of Conservation,* 2018 WL 6137595 (C.D. Cal. 2018), the court did not rule on a motion to compel mental health examination so as to allow "the parties more fully [to] consider a stipulation that limits Plaintiff's emotional distress damages claims only for 'garden variety' emotional distress." *Id*., at *1.  In the absence of stipulation, a declaration limiting damages is sufficient.

In *Houghton v. M&F Fishing, Inc.,* 198 F.R.D. 666 (S.D. Cal. 2001), the motion for mental health examination in a Jones Act case was denied, with the Magistrate Judge observing: "[B]y adding the words 'showing good cause therefor,' the Rules indicate that there must be greater showing of need under … [Rule] 35 than under the other discovery rules." *Id*., at 667.

Further, Defendant argues that Plaintiff alleges ongoing mental or psychiatric injury or disorder. That is not completely true. Defendant refers to Plaintiff continuing to suffer from "worry, anxiety, depression, anger, sleeplessness, physical discomfort, loss of self-worth, and fear about being able to provider for her own care given she is unemployed" (McInerney Decl., Exh. G). First, defense attorney's description refers to garden variety emotional distress and not to any specific mental disorder.  Plaintiff lacks foundation to testify as to any particular psychiatric injury or disorder, *Fed. Rules of Evidence, Rule* 602.  And, second, the description is overcome by subsequent events, since Plaintiff has located replacement employment.

Compare the cases Defendant cited regarding ongoing mental injury: in *Enwere v. Terman Assocs., L.P.*, 2008 WL 5146617, at *4 (N.D. Cal. Dec. 4, 2008), plaintiff "attached to her Request for Relief a note from her <u>doctor</u> which states that the additional stress of this court case is worsening Plaintiff's bipolar disorder and depression, thus indicating that at least some portion of Plaintiff's current emotional distress may not be compensable in this lawsuit."  [Emphasis added].  Even though

the *Enwere* court granted the IME, there were limitations placed, that the defendant's expert could not use psychiatric expert testimony to impugn another party's credibility, *Id*.

Defendant refers to *Enwere's* citation to *Bridges v. Eastman Kodak Co*., 850 F.Supp. 216, 221-222 (S.D.N.Y.1994), for the proposition that courts evaluating a Rule 35 motion also consider whether a party has alleged some type of *ongoing* mental injury. But, *Bridges*, instructed "Courts have determined that in some employment and sexual discrimination cases plaintiffs do not affirmatively put their mental conditions in controversy by alleging psychological injury." *Id*., at 221. Something more than just psychological injury is required. Because the *Bridges* plaintiff did not allege a separate tort claim for emotional distress, "the court accepts plaintiffs' denial of the existence of a separate tort claim, that basis for granting the Rule 35(a) order does not exist." *Id.,* at 222.

Defendant cites to *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605 (C.D. Cal. 1995) where in a sexual harassment and discrimination in the workplace case, the plaintiff not only asserted ongoing emotional distress but also pled a cause of action for intentional infliction of emotional distress, *Id*., at 608.

Next, Defendant cites to completely distinguishable cases where plaintiff's mental condition was the crux of the case: In *Duncan v. UpJohn,* 155 F.R.D. 23, 25 (D. Conn. 1994) , plaintiff claimed defendant was negligent in the testing and marketing of a tranquilizer, which caused plaintiff to become psychologically unstable and caused him to undergo a drastic personality change; in *Hodges v. Keane,* 145 F.R.D. 332, 334 (S.D.N.Y. 1993) an inmate brought a civil rights action against prison officials, but prison officials asserted that the inmate suffered paranoid schizophrenia which affected his perception of the events; and, in *Ayat v. Societe Air France*, 2007 WL 11203528 [sic: 1120358] (N.D. Cal. 2007) plaintiff alleged mental and physical injuries as a result of an aircraft crashing into a ravine, coupled with specific diagnoses being made by a medical doctor, whom plaintiff expected to call

to present such testimony at trial, at *4.

Defendant's motion if granted would unnecessarily increase the cost of litigating this case. Plaintiff, who only sought treatment from a therapist and a physician's assistant, spending about $4,000, would be required to engage her own medical doctor to testify as an expert. Utilizing medical doctors as experts in this case will likely increase the cost for each side by $50,000 (see Flyer Decl., para. 8). Of course, to Defendant the benefit is obvious in forcing Plaintiff out of the case due to unreasonable costs; but there is no accompanying benefit to Plaintiff.

**B.     Justification for Protective Order**

The District Judge issued a protective order against mental examination by Defendant in *Pringle v. Wheeler*, No. 19-CV-07432-WHO, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021).  Grounds for protective order are found at Fed. Rules of Civ. Proc., Rule 26(c):

> (1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery …

The meet and confer related to Defendant's concurrently submitted motion for Independent medical examination forms the basis for seeking a protective order against such examination.  The examination sought here is an "annoyance," calculated to drastically increase Plaintiff's litigation costs, interrupt her life, require her to return to California, and somehow brand her as a person who dared to sue Defendant.

**C.     Defendant's Conclusions**

Defendant has not shown good cause for mental examination, particularly

where Plaintiff has submitted declaration promising not to seek specific or severe psychological damages, nor to call an expert at trial on the subject.  In fact, Defendant has located no authority challenging *Pringle, supra*, despite being aware of Plaintiff's position on the subject based on correspondence.  Were there good cause for mental examination, then still a protective order should issue.   Plaintiff should not be caused to retain a medical expert solely for purposes of refuting Defendant's allegation that scientifically, it could not be held to be a substantially contributing source of her emotional distress damages.

Respectfully submitted,

Dated:  February 14, 2022          FLYER & FLYER,
                                   A PROFESSIONAL LAW CORPORATION


                                   By:  /s/ David R. Flyer
                                        David R. Flyer
                                        Raquel Flyer
                                        Attorneys for Plaintiff
                                        LEAH SNYDER

Dated:  February 11, 2022          OGLETREE, DEAKINS, NASH, SMOAK &
                                   STEWART, P.C.


                                   By:  /s/ Thomas M. McInerney
                                        Thomas M. McInerney
                                        Kathleen J. Choi
                                        Attorneys for Defendant
                                        ALIGHT SOLUTIONS LLC

Case No. 2:19-cv-09869 SB (JCx)
JOINT STIPULATION ON DISCOVERY DISPUTE

50415284.v1-Ogletree