David R. Flyer, Bar #100697
Raquel Flyer Dachner, Bar #282248
**FLYER & FLYER, A Professional Law Corporation**
4120 Birch St., Ste. 101
Newport Beach, CA 92660
(949) 622-8445
(949) 622-8448 (fax)
davidflyer@flyerandflyer.com
raquelflyer@flyerandflyer.com

Attorneys for Plaintiff
LEAH SNYDER

IN THE UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LEAH SNYDER,<br><br>Plaintiff,<br><br>vs.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 TO 10,<br><br>Defendants. | Case No. 8:21-cv-00187-CJC-KES<br><br>**PLAINTIFF LEAH SNYDER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT, AT DOC. 99**<br><br>[Filed concurrently with Declarations of David Flyer, and Leah Snyder, Statement of Genuine Disputes of Material Fact [Doc. 102] and Objection to Defendant's Request for Judicial Notice [Doc. 103]<br><br>District Judge:<br>    Hon. Cormac J. Carney<br>Magistrate Judge:<br>    Hon. Karen E. Scott<br><br>Date:    July 25, 2022<br>Time:    1:30 p.m.<br>Courtroom: 9B<br>Complaint filed:<br>    January 26, 2021<br>Trial Date:  November 8, 2022 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS:

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

# TABLE OF CONTENTS

Page No.

1.    Overview of Law Applied to Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . .   4

2.    Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

      A.    Wrongful Termination in Violation of Public Policy . . . . . . . . . . . . . .   7

            (1)   Material Facts Supporting Wrongful Termination Claim . . . . . .   7

            (2)   Retaliation Against Plaintiff Based on Reporting Harassment . .   8

            (3)   Grounds for Termination Were Politically Motivated . . . . . . . .   10

      B.    Defendant Terminated Plaintiff's Employment in Violation of
            its Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

      C.    Punitive Damages are Justified . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

3.    Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1

## TABLE OF AUTHORITIES

Page Nos.

2

### Federal Cases

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) . . . . . . . . . . .  4

4

*Bowen v. M. Caratan, Inc.*, 142 F.Supp.3d 1007 (E.D. Cal. 2015)  . . . . . . . . . . . . . .  9

5

*Couch v. Morgan Stanley & Co. Inc.*, 656 F. App'x 841 (9th Cir. 2016)  . . . . . . . .  11

6

*Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235 (9th Cir. 2013) . . . . . . . . . . . .  12

7

*Lederman v. United States,* 291 F.3d 36 (D.C. Cir. 2002)  . . . . . . . . . . . . . . . . .  6-7,12

8

*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 . . . . . . . . . . . . . . . . . . 9-10

9

*Pease v. Gore*, 2018 WL 4951957 (S.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . .  11

10

*Tam v. Qualcomm, Inc.*, 300 F.Supp.3d 1130 (S.D. Cal. 2018) . . . . . . . . . . . . . . .  14

11

### Cal. Cases

12

*Brede v. Science App. Int'l Corp.,* 2014 WL 793118 (2014) . . . . . . . . . . . . . . . . . .  10

13

*Carter v. Escondido Union High Sch. Dist.,* 148 Cal.App.4th 922 (2007)  . . . . . . .  10

14

*Cates Constr., Inc. v. Talbot Partners,* 21 Cal.4th 28 (1999) . . . . . . . . . . . . . . . . . .  13

15

*Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988)  . . . . . . . . . . . . . . . . . . . . . .  14

16

*Garcia-Brower v. Premier Auto. Imports of CA, LLC* (2020)
      55 Cal.App. 5th 961  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

17

18

*Guz v. Bechtel National, Inc.*, 24 Cal.4th 317 (2000) . . . . . . . . . . . . . . . . . . . . . . 13,14

19

*Light v. Dep't of Parks and Rec.*, 14 Cal.App.4th 75 (2017)  . . . . . . . . . . . . . . . . .  12

20

*Luck v. S. Pac. Transportation Co.*, 218 Cal.App.3d 1 (1990) . . . . . . . . . . . . . . . .  14

21

*Lockheed Aircraft Corp. v. Superior Court*, 28 Cal.2d 481 (1946) . . . . . . . . . . . . .  11

22

*Nazir v. United Airlines, Inc.,* 178 Cal.App.4th 243 (2009) . . . . . . . . . . . . . . . . . .  17

23

*Rubio v. CIA Wheel Group,* 63 Cal.App.5th 82 (2021)  . . . . . . . . . . . . . . . . . . . . 15-16

24

*Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167 (1980)  . . . . . . . . . . . . . . . . . . . . .  8

25

*Wills v. Super. Ct.*, 195 Cal.App.4th 143 (2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

26

### Cal. Statutes

27

*Civil Code* §3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

28

*Labor Code* §§1101 and 1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

## 1. <u>OVERVIEW OF LAW APPLIED TO MATERIAL FACTS</u>

This Honorable District Court early on identified the law applicable to claims for wrongful termination in violation of public policy and breach of the covenant of good faith and fair dealing, at Doc. 30, pp. 4-6, observing:

> ... [A]n employer may not terminate an at-will employee for an unlawful reason, or for a purpose that contravenes fundamental public policy. [*Yau v. Santa Margarita Ford, Inc.*, 229 Cal.App.4th 144, 155 (2014)].  When an employee is discharged in violation of 'fundamental principles of public policy,' the employee may maintain a tort action and recover damages traditionally available in such actions." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 79 (2004) (quotations omitted). California courts recognize four categories of public policy cases: "the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 76 (1998).

Since Defendant had no facts nor evidence to justify termination of Plaintiff's employment based on alleged participation in a riot, on March 29, 2021, Defendant supported its motion to dismiss [Doc. 10] with newspaper clippings, press releases and arrests of other people [see Docs. 13-2 through 13-11, and 13-13].  Today, after 15 depositions and exchanges of extensive written discovery Defendant still has no facts nor evidence to justify termination of Plaintiff based on alleged participation in a riot, so Defendant supports its motion for summary judgment with stale newspaper clippings [see repeat Docs. 103-3 through 103-5, and 103-7 through 103-9].  Worse, there are additional material facts based on actual eye witness testimony, proving that Plaintiff was simply a bystander at a political rally who neither entered the Capitol, nor crossed any barricades or damaged any property [see Additional Contested Facts in Plaintiff's Statement of Genuine Disputes of Material Facts, "ACF"1, at page 11].

Defendant cannot ignore unfavorable facts in seeking summary judgment, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986) "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Defendant knew or should have known of the existence of material facts in

-4-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1   opposition to its summary judgment motion based on deposing the two people who

2   accompanied Plaintiff to Washington, D.C., Sam Lewis and Maria Jaramillo. They

3   were in Plaintiff's presence and testified they did not cross barricades nor observe any

4   rioting. But, there is no mention of the eye witnesses in the moving papers probably

5   because Defendant seeks to address their testimony in rebuttal for the first time, when

6   Plaintiff has no opportunity to reply. If that is Defendant's intent – then it is unfair.

7           With respect to the social media posting that appeared on Defendant's private

8   Facebook page – which was not visible to the public – Plaintiff did not identify

9   herself as Defendant's employee; rather the cyber-bully labeled her as part of his

10  attack [ACF2]. Plaintiff is an innocent victim of the cyber attack, but Defendant

11  elected to punish her for not conforming to its single-minded interpretation of a riot.

12          The applicable categories of public policy at issue here are termination for

13  exercising a statutory right to express political opinions and for reporting

14  cyberbullying as required by express Company Policy [ACF3]. The additional

15  material facts in opposition to Defendant's motion for summary judgment, are:

16  Plaintiff was employed for over 20 years as a computer programmer and coder by

17  Defendant [ACF4]. On her own time, she visited Washington, D.C., to attend a

18  political rally on January 6, 2021. She was told the rally organizers had a lawful

19  permit [ACF5]. She periodically asked law enforcement officers if she was allowed

20  to be in the locations where she was walking or standing and was told she was

21  authorized to be there. She did not cross any barricades [ACF6].

22          In fact, when Plaintiff was standing outside of the Capitol, near a window with

23  the glass removed, a police officer who had been speaking with her, reached through

24  the window and shook hands with her friend, Maria Jaramillo [which activity was

25  captured in a photo, ACF7 and Exhibit "P"]. When a law enforcement officer reaches

26  out and shakes hands, this is certainly not an indication that any law is being broken.

27  Plaintiff listened to speeches; she did not participate in any rioting [ACF8]. Later she

28  engaged in debate on social media only to find gender degrading remarks and death

-5-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1   threats posted about her, some of which made it to Defendant's private social media

2   inbox [ACF9].  Defendant suffered no adverse consequences from the social media

3   posting, because the comments could not be viewed by others [ACF10].

4          Company Policy as interpreted by the chief compliance officer, Mary De

5   Angelo, encouraged employees to report harassing remarks of the type made to

6   Plaintiff, and Plaintiff truthfully reported the remarks to the Company [ACF11].

7   "Deeply troubled by [Plaintiff's] apparent alliance with the rioters ..." [Doc. 30, p. 2

8   and Doc. 100, 8:15], Defendant terminated Plaintiff's employment within 48 hours of

9   her complaint of harassment, in a decision which Customer Experience Officer Cesar

10  Jelvez made in just 10 minutes [ACF12].  Defendant's claim that employment

11  termination was due to Plaintiff's participation in a riot or crossing barricades or

12  standing by a window with glass removed for a social media posted photograph, is

13  pretextual [ACF13].  Indeed, in order to appease its major stakeholder, Defendant

14  maliciously acted to harm Plaintiff, without giving her any due process rights to

15  explain her position after being confronted with allegations of participation in a riot.

16  Plaintiff was never criminally charged, and Defendant chose to believe

17  "entertainment" news commentary rather than actual eye witnesses to Plaintiff's

18  innocent activities in Washington, D.C. [ACF14].  Defendant's purported avenue for

19  success by motion requires the Court to find that there was a riot, and Plaintiff

20  crossed barricades or performed other illegal conduct, such that she could not be an

21  just a bystander.  Defendant asserts everyone near the scene should be tarred with the

22  same broad brush, because they are obviously politically affiliated.

23         Defendant's "Brief Statement of Law Regarding Access to United States

24  Capitol Grounds" [Doc. 100, 2:14-3:28] must be disregarded. The Traffic Regulations

25  are irrelevant to this action since (1) Defendant did not rely on them in making its

26  termination decision [ACF12], and (2) Defendant has not met its burden by showing

27  that Plaintiff was engaged in "demonstration activity" at the time the photographs of

28  her were taken outside the Capitol [ACF1].  See *Lederman v. United States*, 291 F.3d

-6-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

36, 39 (D.C. Cir. 2002): "Although barricades prevent vehicles from entering this central area except through designated gatehouses, no barriers impeded pedestrian access. As a result, members of the public use the area extensively, commuting to work, sightseeing, posing for pictures, jogging, and walking dogs." [Cited by Defendant at Doc. 100, 9:19, re an earlier matter, just not read far enough by it].

## 2. <u>LEGAL ANALYSIS</u>

**A.**     <u>Wrongful Termination in Violation of Public Policy</u>

    **(1) <u>Material Facts Supporting Wrongful Termination Claim</u>**

Defendant retaliated against Plaintiff for fulfilling her duty under Company Policy and her statutory rights to exercise political speech and to assemble.  Company Policy is defined in Defendant's Code of Conduct:

> Reporting harassment and discrimination.  Complaints of harassment or discrimination can be reported to a manager, to Human Resources or via the Ethics Helpline. Although all colleagues should report any incidents of harassment or discrimination that they witness or experience, managers and supervisors must report to HR all harassment and discrimination complaints (both formal and informal) they receive.

[Exhibit "B," p. 00034, ACF3].

Plaintiff was harassed while presenting her opinions on social media, and she became the victim of death threats.  She reported the harassment in speaking on the telephone with chief compliance officer, Mary De Angelo, who testified:

> Q. BY MR. FLYER: So this conversation [with Ms. Snyder] lasted 15 to 20 minutes. Did Leah [Snyder] have a duty to report to Alight that she was being harassed online?
>
> THE WITNESS: So to -- as well as I understand the question, it would be encouraged perhaps, not required.
>
> Q. BY MR. FLYER: When you say "encouraged," are you referring to the code of conduct of Alight?
>
> A. Yes.

[De Angelo Tr. 8:21-9:7, ACF11].

Continuing, Ms. De Angelo testified:

> Q. Did you believe she was telling you about harassment online in good

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

faith?

A. I believe that she indicated in our conversation, as I said previously, that she was being harassed.

Q. Did you believe she was truthful?

A. In our conversation, yes, I believe that the point of our conversation was to capture her understanding of what actually occurred on that day, so I had no reason to believe she was not being truthful.

[De Angelo Tr. 11:13-23, Id.].

Termination of employment occurred within 48 hours of Plaintiff complying with Company Policy. Defendant avers Plaintiff was in a photo taken outside the Capitol near a window with the glass removed and that she crossed barricades to get there [Doc. 100, 20:8-13]. However, no witness presented by Defendant saw Plaintiff cross any barricade [ACF1 and ACF13]. Defendant argues that traffic regulations restricted access and barricades must have been set up according to the news media [Doc. 100, 14:1-2]. Defendant did not rely on the alleged traffic regulations in terminating Plaintiff, making the discussion irrelevant under Fed.R.Evid. Rule 401. Also, restricted access does not apply when Plaintiff was not demonstrating, and particularly when law enforcement officers repeatedly informed Plaintiff it was legal for her to be standing and walking where she was [ACF6]. One officer even reached through a window with glass removed to shake hands with Plaintiff's friend [ACF7]. Patently, Plaintiff broke no laws.

**(2) Retaliation Against Plaintiff Based on Reporting Harassment**

In *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 172 (1980), the California Supreme Court recognized that terminating a 15 year employee in retaliation for his refusal to participate in an illegal pricing scheme pled a viable claim for the employee, and confirmed that other "courts have recognized that an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute ... or by considerations of public policy... [including] (... reporting violations of consumer protection laws).'" Defendant cannot contest the duty to report the

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

harassment, since its chief compliance officer in interpreting Defendant's Code of Conduct, testified that employees are encouraged to report harassment and that Plaintiff truthfully reported the harassment.  Although, Defendant mentions *Tameny* [Doc. 22, 7-11], it does not explain why the Supreme Court precedent does not apply.

Defendant argues that it investigated Plaintiff's claim she was being harassed [Doc. 100, 17:18-27].  But, first it does NOT state the results of the investigation, and second, it does NOT explain why, if the investigation was incomplete, there was still a need to rush through the termination of employment within 48 hours, see *Garcia-Brower v. Premier Auto. Imports of CA, LLC,* 55 Cal.App. 5th 961, 975–76 (2020) (termination within 48 hours was a key fact in showing lack of diligent investigation based on employee's alleged failure to reveal misdemeanor conviction, which supported reversal of nonsuit) [Doc. 10, 14:17-18, Defendant's earlier motion].  The appellate court observed:

> Nothing prevented the company from taking more than a weekend to evaluate whether it was proceeding in a lawful manner or from taking stock of Molina's disclosure that her conviction had been judicially dismissed. Whether an employer has conducted <u>an adequate investigation before dismissing an employee for an unlawful purpose is generally a question of fact for the jury.</u>

*Id*. at 974 [Emphasis added].

From *Bowen v. M. Caratan, Inc*., 142 F.Supp.3d 1007, 1029-1030 (E.D. Cal. 2015) (summary judgment denied due to issue of material fact as to whether employer's grounds for termination were pretextual), the elements of the claim for wrongful termination are:

> (1) [A]n employer-employee relationship existed between Plaintiff and Defendant; (2) Plaintiff's employment was terminated; (3) the violation of public policy was a motivating reason for her termination; and (4) the termination was the cause of Plaintiff's damages.

Defendant concedes it bears the burden of proving by preponderance of evidence that either an element of the claim cannot be shown or it had a legitimate reason to terminate the employee, relying on *McDonnell Douglas Corp. v. Green,* 411

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1   U.S. 792 (1973) [Doc. 100, 21:11-14].  *McDonnell* is a racial discrimination case, not

2   a retaliation based on required reporting to management case.  Here, the investigation

3   into Plaintiff's reporting of cyberbullying according to Defendant, was cast aside or

4   abandoned, in favor of investigating allegedly illegal conduct by Plaintiff [Doc. 100,

5   19:17-21].  However, the predicate for the investigation into Plaintiff's alleged

6   participation in a riot was her telephone call about cyberbullying.

7        None of Defendant's authorities fit the material facts here.  Two of its cases

8   involved the whistle-blower statute, see *Carter v. Escondido Union High Sch. Dist.,*

9   148 Cal.App.4th 922 (2007) (teacher who was terminated during probationary period

10  could not invoke *Labor Code* §1102.5 for telling a coach at another school about

11  nutritional supplements) [Doc. 100, 22:14] and *Brede v. Science App. Int'l Corp.,*

12  2014 WL 793118 (2014) (employment termination was for reporting perceived

13  misrepresentation by employer) [Doc. 100, 21:21].  Plaintiff was required to report

14  cyberbullying, which Defendant used as a springboard for terminating her.

15       **(3) <u>Grounds for Termination Were Politically Motivated</u>**

16       Returning to Doc. 30 at p. 5, the Court explained the legal theory of wrongful

17  termination for engaging in statutorily permitted activity:

18          Plaintiff alleges that she was wrongfully terminated for exercising
        "constitutional rights to speak freely, peaceably assemble or petition her
19      grievances to the government." ... She alleges that her termination was in
        violation of the public policy described California Labor Code §§ 1101
20      and 1102. "Sections 1101 and 1102 . . . prohibit employers from
        interfering with 'the fundamental right of employees in general to engage
21      in political activity.'" *Couch v. Morgan Stanley & Co. Inc.,* 656 F. App'x
        841, 842 (9th Cir. 2016). "[L]iability under §§ 1101(a) and 1102 is
22      triggered only if an employer fires an employee based on a political
        motive." *Id.* at 843.

23      The Court also inserted the terms of *Labor Code* §§1101(a) and 1102, fn. 3:

24          Section 1101 states: "No employer shall make, adopt, or enforce
25      any rule, regulation, or policy . . . forbidding or preventing employees
        from engaging or participating in politics, or . . . controlling or directing,
26      or tending to control or direct the political activities or affiliations of
        employees." Section 1102 states: "No employer shall coerce or influence
27      or attempt to coerce or influence his employees through or by means of
        threat of discharge or loss of employment to adopt or follow or refrain
28      from adopting or following any particular course or line of political

-10-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1   action or political activity."

2      Defendant attempts to prove a riot must have occurred by references to

3   "entertainment" news articles that only show one point of view.  Reliance on skewed

4   reporting is further evidence that Defendant's decision to terminate Plaintiff was

5   politically motivated in violation of both *Labor Code* §§1101 and 1102.

6      The leading case on interpretation of *Labor Code* §§1101 and 1102 is

7   *Lockheed Aircraft Corp. v. Superior Court*, 28 Cal.2d 481 (1946) [Doc. 10, 11:6-7,

8   Defendant's motion], where the California Supreme Court interpreted and then

9   expressly upheld the validity of these Labor statutes against the employer's

10  constitutional challenges when confronted with a wartime protest demonstration by

11  18 employees whom the employer terminated, *Id*. 484-486.  Note that *Lockheed*

12  involved protests against an aircraft manufacturer/weapons supplier during time of

13  war; there was no war on January 6, 2021.  *Labor Code* §§1101 and 1102 vest a

14  private cause of action in employees against employers who seek to restrict the rights

15  of political speech and assembly.

16     In a factually similar case, see *Pease v. Gore*, 2018 WL 4951957 at*5 (S.D.

17  Cal. 2018): "Even if other persons engaged in scuffles and threw some bottles at each

18  other and even if such conduct falls outside the First Amendment's protections, the

19  Complaint alleges that Plaintiff was not one of these persons."  To date, Defendant

20  has not presented any evidence that Plaintiff crossed barricades or was in a location

21  where she should not have been.

22     Even if there have been other individuals criminally charged, Plaintiff was not

23  one of those persons. Defendant ignored Plaintiff's version of facts and retaliated

24  against her for reporting harassment and speaking about her experience on social

25  media.  Turning to Defendant's cited cases, *Couch v. Morgan Stanley & Co. Inc.,*

26  F.App'x 841 (9th Cir. 2016) [Doc. 100, 8:26], is factually distinguishable. In *Couch*,

27  a full-time financial advisor campaigned to be elected to the board of supervisors, a

28  35 hour/wk position, *Id.,* at 842. There was a non-political reason for termination

-11-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1   since plaintiff could not work both as a full-time financial advisor and a full-time

2   supervisor, *Id.,* at 843. In contrast, Defendant's only reason for terminating Plaintiff

3   was pretextual. Pretext can reasonably be inferred since the termination decision was

4   made in 10 minutes with no actual evidence and in fact ignored the evidence that

5   Plaintiff was a peaceful observer [ACF12 and ACF13].  Further, Plaintiff was not

6   given any opportunity to rebut the unfair charges against her.

7       Returning to *Lederman v. United States,* 291 F.3d 36 (D.C. Cir. 2002)

8   [100, 9:19], the circuit court actually held that there are constitutional limits against

9   restricting public access outside the Capitol building:  "In deciding how to classify

10   the East Front sidewalk, we have little maneuvering room, as courts have long

11   recognized that the Capitol Grounds as a whole meet the definition of a traditional

12   public forum: They have traditionally been open to the public, and their intended use

13   is consistent with public expression." *Id.*, at 41.

14       In *Lawler v. Montblance N. Am.*, LLC, 704 F.3d 1235 (9th Cir. 2013) our

15   Circuit Court confirmed granting of summary judgment because the employer's

16   termination decision was not pretextual in a case where plaintiff-manager was

17   physically unable to perform her job.  By contrast, Plaintiff was not terminated for

18   inability to perform her job, the same job she had been performing for 20 years.  She

19   was terminated as repeatedly stated by Defendant, because Defendant was: "Deeply

20   troubled by [Plaintiff's] apparent alliance with the rioters ..." [Doc. 30, p. 2].

21       Defendant cites to *Light v. Dep't of Parks & Recreation,* 14 Cal.App.5th 75, 94

22   (2017) [Doc. 100 page 26:26], for the proposition that there had to be more than a

23   "mere temporal relationship between an employee's protected activity and the adverse

24   employment action." There is much more than a temporal relationship here. The

25   discussion on social media following attendance at the political rally, and reporting

26   the cyberbulling to Defendant, were all protected activity. Defendant did not just

27   terminate Plaintiff around the same time as these events occurred, but based on its

28   own interpretation that anyone who attended the events on January 6, 2021 must have

-12-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

been guilty of a crime, terminated Plaintiff's employment.

Defendant adopted a lock-step approach to dealing with Plaintiff due to its uniform corporate ideology: the rally was a riot, period.  During Plaintiff's deposition, ironically she was shown one of the cell phone videos she had taken of the inside of the Jefferson Memorial – one purpose of her trip was a vacation to see the monuments around Washington, D.C. [ACF15]. The video captured the famous quotation of our Third President in a letter to Dr. Benjamin Rush: "I have sworn on the altar of God eternal hostility to every form of tyranny over the mind of man."  A corporate policy which considers an observer of a political rally to be a rioter is "a form of tyranny over the mind of man."  It is not persuasive for Defendant to argue based on snippets from case law and only portions of testimony of some witnesses, while entirely ignoring eye witness testimony, that it has proved absence of political motivation to terminate Plaintiff.

**B.**     **Defendant Terminated Plaintiff's Employment in Violation of its Policy**

The breach of covenant of good faith and fair dealing claim rests on Defendant's promise it would not terminate employment for an employee who complied with her duty to report severe cyber-harassment or participated in political speech or assembly.  The elements of the claim under CACI 2423, which applies the analysis of the Supreme Court in *Guz v. Bechtel National, Inc.,* 24 Cal.4th 317, 353 fn. 18 (2000) (benefits are contractual, but employer cannot by pretext defraud an employee from her benefits) [Doc. 100, 27:12]], are:

> (1) Plaintiff and Defendant entered into an employment relationship;  (2) Plaintiff substantially performed her job duties; (3) all conditions required for Defendant's performance had occurred; (4) Defendant by pretext claimed Plaintiff participated in a riot, terminated her and prevented her from receiving benefits of her employment; (5) In doing so, Defendant did not act fairly and in good faith; and (6) Plaintiff was harmed by Defendant's conduct.

The California Supreme Court recognized that the implied covenant of good faith and fair dealing applies in all contracts.  See *Cates Constr., Inc. v. Talbot Partners,* 21 Cal.4th 28, 42 (1999).  Here, Plaintiff was employed by Defendant for

-13-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1  20 years. Plaintiff's employment was governed by a "Code of Conduct" which stated

2  Defendant would value and promote diversity, and demanded those who see

3  harassment report it without fear of retaliation. These were the agreed terms between

4  Plaintiff and Defendant. See *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 680

5  (1988):

6  > In the employment context, factors apart from consideration and
7  > express terms may be used to ascertain the existence and content of an
   > employment agreement, including "the personnel policies or practices of
8  > the employer, the employee's longevity of service, actions or
   > communications by the employer reflecting assurances of continued
9  > employment, and the practices of the industry in which the employee is
   > engaged."

10  In *Guz v. Bechtel Nat. Inc., supra,* plaintiff alleged both a breach of an implied

11  contract cause of action and breach of the implied covenant of good faith and fair

12  dealing causes of action, as such the claim "merely realleges that breach as a violation

13  of the covenant is superfluous." *Id.*, at 352.  In *Tam v. Qualcomm, Inc.*, 300

14  F.Supp.3d 1130, 1146 (S.D. Cal. 2018) the court reasoned:

15  > The relevant factors to determine whether an implied-in-fact
   > contract might exist include "the personnel policies or practices of the
16  > employer, the employee's longevity of service, actions or
   > communications by the employer reflecting assurances of continues [sic:
17  > continued] employment, and the practices of the industry in which the
   > employee is engaged."... *Foley*, 47 Cal. 3d at 681 ....
18
   > ... If Plaintiff wishes to plead facts to support an express contract
19  > and a breach of the implied covenant of good faith and fair dealing then
   > he may do so. If Plaintiff wishes to plead facts to support an
20  > implied-in-fact contract then he may do so....

21  "The determination whether an implied contract not to terminate except for

22  good cause exists is an issue of fact." *Luck v. S. Pac. Transportation Co.*, 218

23  Cal.App.3d 1, 14–15 (1990) (employee terminated for refusal to submit urine sample

24  presented sufficient evidence to the jury to support verdict awarding damages for

25  wrongful termination and breach of the implied covenant of good faith and fair

26  dealing). In *Luck*, the plaintiff worked for a railroad company for over six years,

27  where she was promoted and received salary increases. Continuing, *Id.*:

28  ///

-14-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1
2
3
4
5

> These factors contribute to a reasonable expectation that she would not be terminated except for good cause....Therefore, the jury's implied finding that a contract existed is supported by substantial evidence.... As the statutory presumption that Luck was an at-will employee was overcome by evidence of an implied contract, Southern Pacific was required to show good cause for her termination.

6   Almost all of the witnesses who presented testimony on behalf of Defendant

7   worked for the same predecessors-in-interest of Defendant, as did Plaintiff [ACF4].

8   In sequence, long term employment involved tenure at Hewitt, then Aon-Hewitt, and

9   Aon spun off Hewitt, which became Alight Solutions, LLC.  But for Defendants

10  wrongful acts, Plaintiff should have been able to complete her working career with

11  the same company.

12  **C.   <u>Punitive Damages are Justified</u>**

13      Civil Code §3294 provides in pertinent part:

14
15
16

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. ...

17
> (c) As used in this section, the following definitions shall apply:

18
19
20

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

21      The law of punitive damages as applied in a labor setting is appropriately

22  described in *Rubio v. CIA Wheel Group,* 63 Cal.App.5th 82, 91 (2021) (holding

23  employer liable for economic and punitive damages in case involving termination due

24  to medical condition after bench trial):  "As the California Supreme Court explained

25  in *Simon* [*v. San Paolo U.S. Holding Co., Inc.,* 35 Cal.4th 1159, 1171 (2005)]:

26  'United States Supreme Court precedents appear to contemplate, in some

27  circumstances, the use of measures of harm beyond the compensatory damages.'"

28      The *Rubio* Court explained: "In *State Farm* [*Mut. Automobile Ins. Co. v.*

-15-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1  *Campbell* 538 U.S. 408, 416–418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)], the high

2  court articulated 'three guideposts' for courts reviewing punitive damages: '(1) the

3  degree of reprehensibility of the defendant's misconduct; (2) the disparity between the

4  actual or potential harm suffered by the plaintiff and the punitive damages award; and

5  (3) the difference between the punitive damages awarded by the jury and the civil

6  penalties authorized or imposed in comparable cases.'" *Id*., at 90.

7       Defendant's conduct was highly reprehensible.  It acted swiftly to appease its

8  major stakeholder who had a "strong interest" in termination of any employee who

9  attended a rally for the opposition political party [ACF14].  Defendant denied

10  Plaintiff the basic right to present her explanation when falsely accused of inciting or

11  participating in a riot.  The termination decision was made in 10 minutes, based on a

12  social media posting and watching "entertainment" news on television.  Even today,

13  Defendant eschews eye witness testimony in favor of its own political agenda.

14  Egregiously, the unsworn "entertainment" news versions on which Defendant relies

15  cannot even be considered by the trier of fact, see for instance, 9th Circuit Model Jury

16  Instructions, No. 1.15:

17       Do not communicate with anyone in any way and do not let anyone else
        communicate with you in any way about the merits of the case or anything to
18       do with it. This includes discussing the case in person, in writing, by phone,
        tablet, or computer, or any other electronic means, via email, text messaging, or
19       any internet chat room, blog, website or application, including but not limited
        to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any
20       other forms of <u>social media</u>. This applies to communicating with your fellow
        jurors until I give you the case for deliberation, and it applies to
21       communicating with everyone else including your family members, your
        employer, <u>the media or press</u>, and the people involved in the trial, ... [Emphasis
22       added].

23       In State Court, see CACI 116: "The evidence that is presented in court can be

24  tested; it can be shown to be right or wrong by either side; it can be questioned; and it

25  can be contradicted by other evidence. What you <u>might read or hear on your own</u>

26  <u>could easily be wrong</u>, out of date, or inapplicable to this case." [Emphasis added].

27       It is impossible to accept Defendant's explanation that it would give more

28  credence to news reporting than to its own employee, where the news station owners

-16-

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

1    are patently dedicated to providing "entertainment" for profit rather than providing a

2    forum for honest debate – why else is the news sandwiched between episodes of

3    "Friends" and "NCIS?"  Defendant inconsistently argues it rightfully terminated

4    Plaintiff for trespass on the Capitol [Doc. 100, 25:14], but then hedges its bets, by

5    claiming it could have made a legitimate mistake, since the determining factor should

6    be its subjective motivation for termination, again relying on *Wills v. Super. Ct.*, 195

7    Cal.App.4th 143 (2011) [Doc. 100, 26:3].  Defendant's wrongful motivation here can

8    be inferred even if not overtly expressed.  In *Nazir v. United Airlines, Inc.,* 178

9    Cal.App.4th 243, 283 (2009) (reversing summary judgment in case involving

10   harassment and retaliatory termination of employment) the appellate court observed:

11   "Proof of discriminatory intent often depends on inferences rather than direct

12   evidence.... And, because it does, 'very little evidence of such intent is necessary to

13   defeat summary judgment.'"

14          Defendant cites authority that punitive damages have no place in a case relying

15   on respondeat superior [Doc. 100, 28:21], which is not this case.  But, Defendant gets

16   to that point by quibbling that Plaintiff was only employed for a short time period

17   [Doc. 100, 12:9].  Defendant's argument is debunked by its own witnesses,

18   particularly by the testimony of Thomas Hand, Plaintiff's supervisor, who recounted

19   how the same corporation had changed names three times in 20 years, as Hewitt,

20   Aon-Hewitt, and then Alight, all having in common the same supervisors, same co-

21   workers, same customers, same type of work, and similar computer programs to do

22   the work [ACF4].  It is Defendant itself, that is liable for punitive damages.

23          A corporation cannot use the services of an employee for her entire adult life

24   and then kick her to the curb for expressing an opposing political view, without being

25   exposed to claim of punitive damages for such malicious and oppressive conduct.

26   Recall the admonition of Thomas Jefferson; Defendant practices tyranny by forcing

27   its work force to adopt a single political ideology.

28   ///

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]

# 3. <u>CONCLUSIONS</u>

The wrongful termination of employment claim is based on the pretext of immediate termination for participating in a riot, where favorable eye witness testimony by Sam Lewis and Maria Jaramillo was ignored in Defendant's motion, because the true ground for adverse employment action was to punish Plaintiff for reporting harassment and cyberbullying – her mandatory duty – and for exercising her rights to political speech and assembly – which is her statutory right.  It is unjust for Defendant to reserve its criticism of the eye witnesses, probably based on their opposing political views, until its reply brief.

Simply because her political views differed from Defendant's corporate dogma and to appease its major stakeholder, Defendant maliciously and purposefully acted to inflict serious harm on Plaintiff, who was employed by Defendant and its predecessors-in-interest for almost her entire adult life.

Plaintiff was the victim of a cyber attack.  She did not publish any affiliation with Defendant on social media; the harasser posted the comment to Defendant's private inbox.  Defendant suffered no harm, because no one outside the company could access the social media post [ACF10].  The contractual breach of covenant of good faith and fair dealing claim is based on termination for improper cause.

Wherefore, Plaintiff prays that the motion for summary judgment or partial summary judgment be denied and for such other relief as shall be proper.

Respectfully submitted,

FLYER & FLYER, A PROFESSIONAL
LAW CORPORATION

Dated:  July 1, 2022              By:        /s/  David R. Flyer
                                          David R. Flyer
                                          Raquel Flyer Dachner
                                          Attorneys for
                                          Plaintiff LEAH SNYDER

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. 8:21-cv-00187-CJC-KES

[C:\ALL FILES\A2099\OppSJM\Opp.SJM.PA.FF.wpd]