David R. Flyer, Bar #100697
Raquel Flyer Dachner, Bar #282248
**FLYER & FLYER, A Professional Law Corporation**
4120 Birch St., Ste. 101
Newport Beach, CA 92660
(949) 622-8445
(949) 622-8448 (fax)
davidflyer@flyerandflyer.com
raquelflyer@flyerandflyer.com

Attorneys for Plaintiff
LEAH SNYDER

IN THE UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LEAH SNYDER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ALIGHT SOLUTIONS, LLC, an Illinois Limited Liability Co., and DOES 1 TO 10,<br><br>　　　　Defendants. | Case No. 8:21-cv-00187-CJC-KES<br><br>**PLAINTIFF LEAH SNYDER'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DOC. 102**<br><br>[Concurrently filed with Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, Declarations of David R. Flyer and Leah Snyder, and Objection to Request for Judicial Notice]<br><br>District Judge:<br>　　Hon. Cormac J. Carney<br>Magistrate Judge:<br>　　Hon. Karen E. Scott<br><br>Date:　　July 25, 2022<br>Time:　　1:30 p.m.<br>Courtroom: 9B<br>Complaint filed:<br>　　January 26, 2021<br>Trial Date: November 8, 2022 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS:

　　Plaintiff submits her statement of genuine disputes of material fact and additional contested facts pursuant to U.S. District Court for the Central District of California, Local Rule 56-2:

| | **Defendant's Uncontroverted Material Facts and Supporting Evidence** | **Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence** |
|---|---|---|
| 1. | The Traffic Regulations for the U.S. Capitol Grounds promulgated by the Capitol Police Board, and in effect from February 2019 to present, reflects the following:<br><br>• Section 12.1.10 states "[d]emonstration activity is defined as any protest, rally, march, vigil, gathering, assembly, projecting of images or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution."<br><br>• Section 12.2.10 states "[d]emonstration activity is generally allowed in designated areas as indicated on the 'United States Capitol Grounds Demonstration Areas Map,' as amended."<br><br>• Footnote 34 to Section 12.2.10 states that the United States Capitol Grounds Demonstration Areas Map is reproduced in Appendix G to the Regulations and that it was approved December 5, 2012.<br><br>• The United States Capitol Grounds Demonstration Areas Map in Appendix G to the Regulations is coded to show areas where "no demonstration permitted."<br><br>• Section 12.2.20 states "[n]o person or group of any size may engage in demonstration activity on the steps of the United States Capitol, on the steps of any building on Capitol Grounds or in any area otherwise closed or restricted for official use."<br>Support: (Request for Judicial Notice ["RJN"], Ex. 1.) | 1. Objection, the purported regulations are not relevant because they were not relied on by Defendant in terminating Plaintiff's employment FRE 401; are not subject to judicial notice FRE 201 (see separately filed objection); constitute hearsay FRE 801; and, are not authenticated 901.<br><br>Furthermore, Deny, since there is no discussion of the issued permit for the political rally, and the Capitol Police as supported by other law enforcement officers confirmed that in locations where Plaintiff stood or was walking she was lawfully entitled to be there.<br><br>Support: (Declaration of Leah Snyder ¶4-5, Declaration of David Flyer ¶¶9(A)-(F) and 12(A) and (B), re depositions of Sam Lewis and Maria Jaramillo, with photograph of Maria Jaramillo shaking hands with a Peace Officer who stuck his arm through the window with the glass removed, Exhibit "P.") |
| 2. | On September 3, 2020, the United States Capitol Police announced the closure of the following areas of the | 2. Objection, relevance because Defendant did not rely on the announcement as part of the |

| | Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|---|
| | West Front of the U.S. Capitol from September 7, 2020 through February 28, 2021.<br><br>The area south of the walkway adjacent to the south side of Northwest Drive.<br><br>• The area north of the walkway adjacent to the north side of Southwest Drive.<br><br>• The area east of the east sidewalk of First Street, SW, and NW, including the retaining wall along First Street and the Pennsylvania Avenue, NW, walkway, and Maryland Avenue, SW, walkway.<br><br>• The area west of the Capitol Building and including all terraces, walkways and steps on the north, south and west of the building except for that portion of walkway leading west from the Capitol Plaza to the North Door of the Capitol Building, and that portion of walkway leading west from the Capitol Plaza to the South Door of the Capitol Building.<br><br>• The Lower West Door of the U.S. Capitol Building will be closed to staff or other persons who are not authorized to be within the restricted area.<br>Support: (RJN, Ex. 2.) | termination process FRE 401; the purported police announcements are not subject to judicial notice FRE 201 (see separately filed objection); constitute hearsay FRE 801; and, are not authenticated 901.<br><br>Furthermore, Deny, since there is no discussion of the permit for the political rally, and the Capitol Police as supported by other law enforcement officers confirmed that in locations where Plaintiff stood or was walking she was lawfully entitled to be there.<br><br>Support: (Declaration of Leah Snyder ¶4-5, Declaration of David Flyer ¶¶9(A)-(F) and 12(A) and (B), re depositions of Sam Lewis and Maria Jaramillo, with photograph of Maria Jaramillo shaking hands with a Peace Officer who stuck his arm through the window with the glass removed, Exhibit "P.") |
| 3. | Alight's Code of Conduct states employees must "[f]ollow the laws and our policies" and "Alight colleagues are responsible for following the laws and policies that govern our work."<br>Support: (Snyder Tr. 239:2-10, 240:10-241:12, Ex. 28 [00035]; Robinson Tr. 21:23-22:8, Ex. 1. | 3. Objection, relevance FRE 401. Subject to the objection, Admit. |
| 4. | Alight's Code of Conduct provides the following guidance on "Bringing our Code to life: Political activity":<br><br>Colleagues are free to participate in | 4. Objection, relevance FRE 401. Subject to the objection, Admit. |

-3-

[C:\ALL FILES\A2099\OppSJM\Opp.D.SS-FFpld.wpd]

| | **Defendant's Uncontroverted Material Facts and Supporting Evidence** | **Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence** |
|---|---|---|
| | personal political activities but your involvement must be on an individual basis and on your own time and expense.<br><br>• You may not use Alight'|s social media to promote personal opinions or make any reference to Alight related to your political social media remarks.<br><br>• It is impermissible to use Alight'|s assets or resources for political activities.<br>Support: (Snyder Tr. 239:2-10, 240:10-241:12, Ex. 28 [00036]; Robinson Tr. 21:23-22:8, Ex. 1 [00036].) | |
| 5. | Alight's social media policy and participation guidelines ("Social Media Policy") states in part the following:<br><br>• This policy sets forth the restrictions around social media use, participation, and communications by Alight employees (you)...where your name and title are representative of Alight and you may be identified or presumed as associated with Alight, including Alight-hosted social media and non-Alight hosted social media.<br><br>• Social media is defined as any platform, service, or tool that facilitates connectivity and content sharing on the Internet.<br><br>• Conduct and communication on social media platforms must adhere to Alight's Code of Business Conduct.<br><br>• By working for Alight and identifying yourself as an Alight employees, you are associating yourself with Alight....[and] [t]he content that you post...should be indicative of your professionalism and your representation of Alight on social platforms. | 5.  Objection, relevance FRE 401. Subject to the objection, Deny.  If Defendant interprets its social media policy as barring political speech in opposition to the corporate agenda, then Defendant has implemented a policy which violates *Labor Code* §§1101 and 1102.  In any event, Plaintiff did not post any affiliation with her employer on social media, Plaintiff was the victim of a cyber-attack, where the harasser made the post to Defendant's private social media page about Plaintiff's employment.<br><br>Support: (Declaration of Leah Snyder ¶7, and Declaration of David Flyer ¶3 re Mary Kalich deposition testimony). |

| | **Defendant's Uncontroverted Material Facts and Supporting Evidence** | **Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence** |
|---|---|---|
| | • Activities conducted on personal time using personal equipment that are unacceptable under Alight's Code of Business Conduct...and which are not otherwise protected activity, may lead to discipline, up to and including termination of employment. Examples of such conduct include, but are not limited to, any actions that are illegal....<br>Support: (Snyder Tr. 254:21-256:13, Ex. 29 at 00026-27.) | |
| 6. | Snyder is not aware of any Alight Solutions rule, regulation, or policy, written or otherwise, forbidding employees from participating in off-duty political activity.<br>Support: (Snyder Tr. 102:22-103:1.) | 6. Deny. Defendant promulgated corporate political positions, which were supported by its major stakeholder, Blackstone, and where opposition to the corporate positions would not be tolerated.<br><br>Support: (Declaration of David Flyer ¶13 re Bates Stamp Alight 000378 and 000644 at Exhibit "Q.") |
| 7. | Snyder is not aware of any Alight rule, regulation, or policy, written or unwritten, forbidding employees from becoming candidates for political office.<br>Support: (Snyder Tr. 103:2-6.) | 7. Deny. Defendant promulgated corporate political positions, which were supported by its major stakeholder, Blackstone, and where opposition to the corporate positions would not be tolerated.<br><br>Support: (Declaration of David Flyer ¶13 re Bates Stamp Alight 000378 and 000644, at Exhibit "Q.") |
| 8. | Alight never threatened Snyder about engaging in any kind of political activity.<br>Support: (Snyder Tr. 103:7-9.) | 8. Objection, vague. Subject to the objection, Deny. Alight terminated her employment for engaging in political activity.<br><br>Support: (Declaration of Leah Snyder ¶8.) |
| 9. | Alight never encouraged or urged Snyder to engage in any political activity<br>Support: (Snyder Tr. 103:10-12.) | 9. Objection, vague. Subject to the objection, Deny. Alight terminated her employment for engaging in political activity.<br><br>Support: (Declaration of Leah Snyder ¶8.) |

| | **Defendant's Uncontroverted Material Facts and Supporting Evidence** | **Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence** |
|---|---|---|
| 10. | No one in a management position at Alight ever indicated that it was either contrary to Alight policy or that the company did not want Snyder supporting Donald Trump.<br>Support: (Snyder Tr. 254:1-11.) | 10. Admit only that management did not openly state its political positions to Plaintiff. Otherwise, Deny.<br><br>Support: (Declaration of David Flyer ¶13 re Bates Stamp Alight 000378 and 000644, at Exhibit "Q.") |
| 11. | Alight'\|s written offer of employment to Snyder reflected in part the following:<br><br>• "Your start date will be 06/19/2018."<br><br>• "Your position will be a Full-time, exempt Programmer II-Defined Benefits reporting to Rob Hyde at an annual salary of $88,000…."<br><br>• Summary of eligibility to participate in Alight'\|s Premium Salary program and comprehensive benefits plans as well as vacation accrual.<br><br>• "Nothing in this letter is intended or should be construed as a contract or guarantee of indefinite employment. Your employment with the Company is not for a specified period of time and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause. This letter supersedes any prior representation or agreements between you and the Company, whether written or oral."<br>Support: (Snyder Tr. 42:10-43:15, Ex. 3.) | 11. Admit only that the letter contains part of the employment agreement. Otherwise, deny, because the evidence from most of Defendant's witnesses is that once employed by Defendant's predecessors-in-interest, as Plaintiff was so employed, then employment was virtually guaranteed for life.<br><br>Support: (Declaration of David Flyer ¶¶2(A), 5, 6(A), (B), and (D), 7(B), 8(C), and 10(C) re depositions of Kaleen Robinson, Danielle Holleran, Thomas Hand, MacKenzie Lucas, Mary De Angelo, and Kelley Tabor.) |
| 12. | It was Snyder's understanding, when she went to work for Alight, that she was free to leave and pursue other jobs at any time for any reason.<br>Support: (Snyder Tr. 44:10-13.) | 12. Admit. |

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| 13. At her deposition, Snyder retraced her steps on January 6, 2021, marking her route from her Airbnb, along Pennsylvania Avenue, and eventually arriving at the Capitol Building. Support: (Snyder Tr. 131:6-17, 131:24-132:4, 147:20-151:15, Ex. 9.) | 13. Admit in part. Otherwise, deny, because Plaintiff was not able to trace her steps, but she explained the general direction of her travel from the Ellipse. Support: (Declaration of Leah Snyder ¶9.) |
| 14. At her deposition, Snyder marked the location at the Capitol Building where she posed for a photo on the United States Capitol Grounds Demonstration Areas Map. Support: (Snyder Tr. 151:23-153:20, Ex. 10, Snyder Tr. 164:10-165:13 Ex. 17.) | 14. Admit in part. Otherwise deny, because Plaintiff was not able to place her location at the Capitol with precision, in part due to the lack of detail and the scale of the overhead view of the Capitol. Support: (Declaration of Leah Snyder ¶9.) |
| 15. Snyder reached the top of the stairs to the Capitol Building around 3:30 to 4:00 p.m. and testified that she "hung out" around that area for probably an hour, posing for "selfies" and taking video and photos. Support: (Snyder Tr. 140:15-25, 167:1-172:10, Ex. 18; Snyder Tr. 176:15-177:10, Ex. 21; Snyder Tr. 177:11-25, Ex. 22.) | 15. Admit. |
| 16. In response to third-party Sean Armstrong's ("Armstrong") Facebook post about the events at the Capitol building on January 6, 2021, Snyder posted the following:<br><br>• Snyder commented, in part, "[i]t was a peaceful and fun day!"<br><br>• Snyder posted two photos reflecting her activities on January 6, 2021.<br>Support: (Snyder Tr. 200:5-201:3; Snyder Tr. 212:7-215:6, Ex. 24; Compl., ¶ 10., Fig. 1; Snyder Tr. 218:22-219:21.) | 16. Admit in part. Otherwise, deny. The communication thread is much longer than represented, and contained derogation and death threats. Support: (Declaration of Leah Snyder ¶7.) |
| 17. Alight Digital Marketing Manager of Search Engine Marketing ("SEO") and Organic Search Mary Elizabeth Kahlich ("Kahlich") logged into Alight's Facebook account on January 7, 2021 | 17. Admit. |

| | Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|---|
| | to view a private message apparently sent by Armstrong.<br>Support: (Kahlich Tr. 18:22-20:10, Exs. 1, 2.) | |
| 18. | Kahlich copied the message and forwarded it to her manager Daniel Arvayo and then-Director of Public Relations MacKenzie Lucas ("Lucas").<br>Support: (Kahlich Tr. 19:4-7, 65:15-25; Lucas Tr. 11:11-24, 39:13-16.) | 18. Admit. |
| 19. | Lucas emailed Human Resources Vice President Kaleen Robinson ("Robinson") on the morning of January 8, 2021, attaching Armstrong's screenshot.<br>Support: (Robinson Tr. 32:20-33:1, Ex. 2, 46:8-17.) | 19. Admit. |
| 20. | Robinson received Lucas' email well before Snyder alerted Human Resources to Armstrong's social media post.<br>Support: (Robinson Tr. 46:22-24, 71:17-25, 93:20-24.) | 20. Objection, vague as to time, and relevance. |
| 21. | Robinson alerted Alight Customer Experience Officer Cesar Jelvez on January 8, 2021 telling him that an Alight colleague in his organization was the subject of an investigation for unlawful conduct in violation of Alight's Code of Conduct.<br>Support: (Jelvez Tr. 5:25-7:8; Robinson Tr. 88:23-89:13.) | 21. Admit. |
| 22. | Alight's Communications, Legal, Security, IT, and HR Connect groups collaborated on the investigation.<br>Support: (Robinson Tr. 67:6-10, 70:24-71:2.) | 22. Objection, vague as to identity of persons involved, and scope of investigation. No report of the investigation methods or results was ever made to Plaintiff. |
| 23. | When Vice President of Security Mary De Angelo called Snyder on January 8, Snyder confirmed to De Angelo that she took a couple of selfies outside of the Capitol Building.<br>Support: (De Angelo Tr. 12:11-13, 6:9-16; 10:21-11:1, 7:15-8:11; Robinson Tr. 102:25-104:5, Ex. 17) | 23. Admit in part. The contemporaneously prepared email of the conversation between Plaintiff and Mary De Angelo, and the testimony by Mary De Angelo about the telephone call present a clearer picture of what was said. |

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| | Support: (Declaration of David Flyer ¶8(A) and (B) re deposition of Mary De Angelo, and Exhibit "D.") |
| 24. De Angelo, Alight Associate General Counsel Ilene Grant ("Grant"), and Robinson provided the following information to Alight General Counsel Paulette Dodson ("Dodson") regarding Snyder¡'s involvement in the events of January 6, 2021:<br><br>• De Angelo summarized her telephone call with Snyder in an email, including Snyder's confirmation that she took selfies outside of the Capitol Building,<br><br>• Grant and Robinson told Dodson that it was confirmed that Snyder was in the photo from Armstrong's Facebook message, that Snyder was there at the Capitol, and that Snyder is the person who was in front of the broken window at the Capitol Building.<br>Support: (Dodson Tr. 19:14-21:1.) | 24. Admit. |
| 25. Based on news reports of police barriers and reports of violent behavior to gain access to that portion of the Capitol Building, Dodson understood that Snyder's photo showed her in an area that was not at the time open to the public.<br>Support: (Dodson Tr. 11:23-12:14, 17:23- 18:15, 43:10-16.) | 25. Objection, the purported news reports are not relevant because they were not relied on by Defendant in the termination decision FRE 401; are not subject to judicial notice FRE 201 (see separately filed objection); constitute hearsay FRE 801; and, are not authenticated 901.<br><br>Furthermore, Deny, since there is no discussion of the permit for the political rally, and the Capitol Police as supported by other law enforcement officers confirmed that in locations where Plaintiff stood or was walking she was lawfully entitled to be there. In other words, it was an incomplete investigation.<br><br>Support: (Declaration of Leah |

| | **Defendant's Uncontroverted Material Facts and Supporting Evidence** | **Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence** |
|---|---|---|
| | | Snyder ¶4-5, Declaration of David Flyer ¶¶9(A)-(F) and 12(A) and (B), re depositions of Sam Lewis and Maria Jaramillo, with photograph of Maria Jaramillo shaking hands with a Peace Officer who stuck his arm through the window with the glass removed, Exhibit "P.") |
| 26. | Dodson spoke to Jelvez on January 10, 2021 and told him that Snyder had been shown to have been at the Capitol Building, that there were photographs on social media, and that the company had been tagged in connection with that Facebook post.<br>Support: (Dodson Tr. 21:5-22:16; Jelvez Tr. 5:24-6:13, 8:24-9:2.) | 26. Admit. |
| 27. | Jelvez understood that Snyder was the person in the photo, that she had attended the Capitol riot, and that she was outside the Capitol Building.<br>Support: (Jelvez Tr. 9:17-25.) | 27. Objection relevance as to what Mr. Jelvez understood, since there was an incomplete investigation, and he made the decision in 10 minutes.<br><br>Support: (Declaration of David Flyer ¶11(B), re deposition of Paulette Dodson.) |
| 28. | Jelvez testified in his deposition that he understood that the Capitol Building was completely surrounded by a barrier on January 6, 2021.<br>Support: (Jelvez Tr. 37:21-38:4, 10:8-11:11.) | 28. Objection relevance as to what Mr. Jelvez understood, since there was an incomplete investigation, and he made the decision in 10 minutes.<br><br>Support: (Declaration of David Flyer ¶11(B), re deposition of Paulette Dodson.) |
| 29. | Jelvez concluded that Snyder engaged in unlawful conduct that went against company policy related to both the social media aspect of Alight's Code of Conduct as well as the act of having trespassed barriers and taking a picture next to a broken window at the Capitol Building.<br>Support: (Jelvez Tr. 9:17-25, 25:25-26:6, 37:9-38:24, 39:15-40:1.) | 29. Objection relevance as to what Mr. Jelvez concluded, since there was incomplete investigation and his conclusions were pretextual.<br><br>Support: (Declaration of David Flyer ¶11(B), re deposition of Paulette Dodson, and Declaration of Leah Snyder ¶8.) |

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| 30. Jelvez made the decision to terminate Snyder's employment based on the information provided by Robinson and Dodson.<br>Support: (Jelvez Tr. 14:1-9.) | 30. Admit. |
| | **Additional Contested Facts and Supporting Evidence** |
| | ACF1. Plaintiff was a bystander at a political event who neither entered the Capitol, nor crossed any barricade, nor damaged any property.<br><br>Support: (Declaration of Leah Snyder ¶¶4-5 and Declaration of David Flyer ¶¶9(A) through (E), and 12(A) and (B), re deposition testimony of Sam Lewis and Maria Jaramillo.) |
| | ACF2. Plaintiff did not identify herself as an Alight employee on any social media, rather she was a victim of cyber-bullying where the harasser tagged her as an employee on Defendant's private (not available to the public) social media inbox.<br><br>Support: (Declaration of Leah Snyder ¶7 and Declaration of David Flyer ¶¶2(G) and 3 re depositions of Kaleen Robinson and Mary Kalich.) |
| | ACF3. Defendant's Code of Conduct states:<br><br>"Reporting harassment and discrimination. Complaints of harassment or discrimination can be reported to a manager, to Human Resources or via the Ethics Helpline. Although all colleagues should report any incidents of harassment or discrimination that they witness or experience, managers and supervisors must report to HR all harassment and |

-11-

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| | discrimination complaints (both formal and informal) they receive." <br><br> Support: (Exhibit "B," p. 00034, to Declaration of David Flyer ¶2 re deposition of Kayleen Robinson.) |
| | ACF4. Plaintiff was employed for over 20 years as a computer programmer and coder by Defendant by virtue of having been employed at the same predecessors-in-interest, Hewitt, which was acquired by Aon-Hewitt, and then spun off as Alight Solutions, LLC, but having the same supervisors, same co-workers, same customers, same type of work, and similar computer programs to do the work. <br><br> Support: (Declaration of David Flyer ¶¶2(A), 5, 6(A), (B), and (D), 7(B), 8(C), and 10(C) re depositions of Kaleen Robinson, Danielle Holleran, Thomas Hand, MacKenzie Lucas, Mary De Angelo, and Kelley Tabor, and Declaration of Leah Snyder ¶2.) |
| | ACF5. On her own time, Plaintiff visited Washington, D.C., to attend a political rally on January 6, 2021. She was told the rally organizers had a lawful permit. <br><br> Support: (Declaration of Leah Snyder ¶3.) |
| | ACF6. While in Washington, D.C., Plaintiff, who was always accompanied by Sam Lewis and Maria Jaramillo, periodically asked law enforcement officers if she was allowed to be in the locations where she was walking or standing and was told she was authorized to be there. She did not cross any barricades. <br><br> Support: (Declaration of Leah |

-12-

[C:\ALL FILES\A2099\OppSJM\Opp.D.SS-FFpld.wpd]

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| | Snyder ¶¶4-5, and Declaration of David Flyer ¶¶9(A)-(E), and 12(A) and (B), re depositions of Sam Lewis and Maria Jaramillo.) |
| | ACF7. While Plaintiff was standing outside of the Capitol, near a window with the glass removed, a police officer who had been talking to her and Maria Jaramillo, reached through the window and shook hands with Maria Jaramillo.<br><br>Support: (Declaration of David Flyer ¶12(B), and photograph of Maria Jaramillo shaking hands with a Peace Officer who stuck his arm through the window with the glass removed, Exhibit "P.") |
| | ACF8. Plaintiff listened to speeches in Washington, D.C.; she did not participate in any rioting.<br><br>Support: (Declaration of Leah Snyder ¶6.) |
| | ACF9. When she returned to California, Plaintiff engaged in debate on social media only to find gender degrading remarks and death threats posted about her, some of which made it to Defendant's private social media inbox.<br><br>Support: (Declaration of Leah Snyder ¶7.) |
| | ACF10. Defendant suffered no adverse consequences from the social media posting, because it could not be viewed by others.<br><br>Support: (Declaration of David Flyer ¶¶3 and 4(A), re deposition testimony of Mary Kalich and Cesar Jelvez.) |

-13-

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| | ACF11.  Company Policy as interpreted by the chief compliance officer, Mary De Angelo, encouraged employees to report harassing remarks of the type made to Plaintiff, and Plaintiff truthfully reported the remarks to the Company. <br><br>Support: (Declaration of David Flyer ¶8(A) and (B) re testimony of Mary De Angelo: <br><br>Q. By Mr. Flyer: So this conversation [with Leah Snyder] last 15 to 20 minutes. Did Leah [Snyder] have a duty to report to Alight that she was being harassed online? <br>The Witness: So to -- as well as I understand the question, it would be encouraged perhaps, not required. <br>Q. By Mr. Flyer: When you say "encouraged," are you referring to the code of conduct of Alight? <br>A. Yes. <br>[De Angelo Tr. 8:21-9:7]. <br><br>Continuing, Ms. De Angelo testified: <br>Q. Did you believe she was telling you about harassment online in good faith? <br>A. I believe that she indicated in our conversation, as I said previously, that she was being harassed. <br>Q. Did you believe she was truthful? <br>A. In our conversation, yes, I believe that the point of our conversation was to capture her understanding of what actually occurred on that day, so I had no reason to believe she was not being truthful. <br>[De Angelo Tr. 11:13-23].) |

-14-

OPPOSITION TO SEPARATE STATEMENT
8:21-cv-00187-CJC-KES

[C:\ALL FILES\A2099\OppSJM\Opp.D.SS-FFpld.wpd]

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
|  | ACF12.  Defendant terminated Plaintiff's employment within 48 hours of her complaint of harassment, in a decision which Customer Experience Officer Cesar Jelvez made in just 10 minutes.<br><br>Support: (Declaration of David Flyer ¶11(B) re deposition testimony by Paulette Dodson.) |
|  | ACF13.  Defendant's claim that employment termination was due to Plaintiff's participation in a riot or crossing barricades or standing by a window with glass removed for a social media posted photograph, is pretextual since there is no factual support for the grounds for termination.<br><br>Support: (Declaration of Leah Snyder ¶¶3-9, and Declaration of David Flyer ¶9(A)-(E), 11(A) and (B), and 12(A) and (B), re deposition testimony by Sam Lewis, Paulette Dodson and Maria Jaramillo.) |
|  | ACF14.  Defendant maliciously acted to harm Plaintiff, who had worked for Defendant almost her entire adult life, without giving her any due process rights, such as allowing her to explain her position after confronting her with allegations of participation in a riot. Defendant relied on alleged television and newspaper messages which did NOT involve Plaintiff, rather than upon eye witness testimony regarding Plaintiff's peaceful activities. Plaintiff was not criminally charged.  Defendant was motivated to appease its major stakeholder.<br><br>Support: (Declaration of Leah Snyder ¶8, and Declaration of David Flyer ¶¶9(A)-(E), 12(A) and |

[C:\ALL FILES\A2099\OppSJM\Opp.D.SS-FFpld.wpd]

| Defendant's Uncontroverted Material Facts and Supporting Evidence | Plaintiff's Statement of Genuine Disputes of Material Facts, and Additional Contested Facts with Supporting Evidence |
|---|---|
| | (B), and 13 re depositions of Sam Lewis and Maria Jaramillo, and Bates Stamped documents supplied by Defendant, at Exhibit "Q.") |
| | ACF15. One purpose of Plaintiff's visit to Washington, D.C., was sightseeing and touring the monuments. In particular, she visited the Jefferson Memorial and took a video of the inscription carved into the ceiling, which video was played at her deposition. The inscription from Thomas Jefferson reads: "I have sworn on the altar of God eternal hostility to every form of tyranny over the mind of man." <br><br> Support: (Declaration of Leah Snyder ¶9). |

Respectfully submitted,

FLYER & FLYER, A PROFESSIONAL LAW CORPORATION

Dated: July 1, 2022     By:     /s/ David R. Flyer
David R. Flyer
Raquel Flyer Dachner
Attorneys for
Plaintiff LEAH SNYDER

[C:\ALL FILES\A2099\OppSJM\Opp.D.SS-FFpld.wpd]