1  KATHLEEN J. CHOI, CA Bar No. 284428
   kathleen.choi@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
4  Telephone:  213-239-9800
   Facsimile:   213-239-9045
5
   THOMAS M. MCINERNEY, CA Bar No. 162055
6  tmm@ogletree.com
   OGLETREE, DEAKINS, NASH,
7  SMOAK & STEWART, P.C.
   One Embarcadero Center, Suite 900
8  San Francisco, CA  94111
   Telephone:  415-442-4810
9  Facsimile:   415-442-4870

10 Attorneys for Defendant
   ALIGHT SOLUTIONS LLC

11

12                **UNITED STATES DISTRICT COURT**

13                **CENTRAL DISTRICT OF CALIFORNIA**

14 | LEAH SNYDER,

                                          Case No. 8:21-cv-00187-CJC (KESx)
15           Plaintiff,
                                          **REPLY IN SUPPORT OF**
16      v.                                **DEFENDANT'S MOTION FOR**
                                          **SUMMARY JUDGMENT OR, IN THE**
17 | ALIGHT SOLUTIONS, LLC, an            **ALTERNATIVE, PARTIAL**
   Illinois Limited Liability Co., and    **SUMMARY JUDGMENT**
18 | DOES 1 TO 10,
                                          Date:        July 25, 2022
19           Defendants.                  Time:        1:30 p.m.
                                          Place:       Courtroom 9B
20
                                          [Filed concurrently with Response to
21                                        Additional Contested Facts; Reply
                                          Declaration of Kathleen J. Choi; and
22                                        Evidentiary Objections to Declarations of
                                          David Flyer and Leah Snyder]
23
                                          Discovery Cut-off:    June 30, 2022
24                                        Pre-Trial Conference: October 31, 2022
                                          Complaint Filed: January 26, 2021
25                                        Trial Date:      November 8, 2022
                                          District Judge:  Hon. Cormac J. Carney
26                                                         Courtroom 9B, Santa
                                                           Ana
27                                        Magistrate Judge: Karen E. Scott
                                                           Courtroom 6D, Santa
28                                                         Ana

1

## <u>TABLE OF CONTENTS</u>

2
                                                                                    **<u>Page</u>**

3   I.      INTRODUCTION ................................................................................... 1

4   II.     ARGUMENT ......................................................................................... 2

5           A.    No Genuine Dispute of Material Fact on Snyder's Claim
                  for Wrongful Termination. ............................................................ 2
6
                  1.    There is no evidence Alight's termination of
7                       Snyder's employment contravened a substantial
                        public policy. ....................................................................... 2
8
                  2.    There is no evidence that Alight's legitimate reason
9                       for termination was pretextual. ........................................... 5

10                3.    Snyder cannot salvage her wrongful termination
                        claim by arguing a new legal theory that was not
11                      previously alleged. ............................................................... 7

12          B.    No Genuine Dispute of Material Fact on Snyder's Claim
                  for Breach of Covenant of Good Faith and Fair Dealing.............. 8
13
            C.    No "Clear and Convincing Evidence" of "Oppression,
14                Fraud, or Malice" against Snyder................................................ 11

15  III.    CONCLUSION.................................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
52133625.v5-OGLETREE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bd. of Trs. of Keene State Coll. v. Sweeney*,
   439 U.S. 24 (1978) ..................................................................................... 5

5

6

*Carr v. Home Depot U.S.A., Inc.*,
   No. 17cv1377 JM (JLB), 2018 WL 2329673 (S.D. Cal. May 23,
   2018) ....................................................................................................... 11

7

*Conyers v. Roddy*,
   830 F. App'x 531 (9th Cir. 2020) ............................................................ 12

8

9

*Couch v. Morgan Stanley & Co. Inc.*,
   656 F. App'x 841 (9th Cir. 2016) .............................................................. 2

10

*Day v. Sears Holding Corporation*,
   930 F. Supp.2d 1146 (C.D. Cal. 2013) ...................................................... 6

11

12

*Eastman v. Thompson*,
   No. 822-cv-00099-DOC-DFM, 2022 WL 894256 (C.D. Cal. Mar.
   28, 2022) .............................................................................................. 4, 12

13

14

*Fried v. Wynn Las Vegas, LLC*,
   No. 20-15710, 2021 WL 5408678 (9th Cir. Nov. 18, 2021) ..................... 6

15

*Garland Connect, LLC v. Travelers Cas. Ins. Co. of Am.*,
   No. CV 20-09252 AB, 2022 WL 1589272 (C.D. Cal. Feb. 3, 2022) ....... 7

16

17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) .................................................................. 3

18

*Jadwin v. Cty. of Kern*,
   610 F. Supp. 2d 1129 (E.D. Cal. 2009) ..................................................... 9

19

20

*Lawler v. Montblanc N. Am., LLC*,
   704 F.3d 1235 (9th Cir. 2013) .................................................................. 5

21

*Lumens Co. v. GoEco LED, LLC*,
   807 F. App'x 612 (9th Cir. 2020) ........................................................ 5, 12

22

23

*McKinney v. American Airlines, Inc.*,
   641 F.Supp.2d 962 (C.D. Cal. 2009) ........................................................ 7

24

*Mircovich v. Reuters Am., LLC*,
   No. 218-cv-00133-CAS-PJWx, 2019 WL 1585198 (C.D. Cal. Apr.
   8, 2019) ..................................................................................................... 4

25

26

*Nelson v. Pima Cmty. Coll.*,
   83 F.3d 1075 (9th Cir. 1996) .................................................................... 5

27

28

ii                 Case No. 8:21-cv-00187-CJC (KESx)

*Pease v. Gore*,
  No. 18-CV-01062-BAS-NLS, 2018 WL 4951957, at *2 (S.D. Cal.
  Oct. 12, 2018) ............................................................................................... 5

*Ross v. Indep. Living Res. of Contra Costa Cty.*,
  No. C08-00854 TEH, 2010 WL 2898773 (N.D. Cal. July 21, 2010) .................... 3

*Sako v. Wells Fargo Bank, N.A.*,
  No. 14CV1034-GPC (JMA), 2015 WL 5022307 (S.D. Cal. Aug. 21,
  2015) ............................................................................................................... 8

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350, 212 L.
  Ed. 2d 55 (2022) ............................................................................................... 4

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ..................................................................... 1, 7

**California Cases**

*Arteaga v. Brink's, Inc.*,
  163 Cal. App. 4th 327 (2008)................................................................... 6, 7, 12

*Barry v. Kohl's Dep't Stores, Inc.*,
  No. B252275, 2015 WL 3381404 (Cal. Ct. App. May 26, 2015)........................ 11

*Butte Fire Cases v. Super. Ct. of Sacramento Cty.*,
  24 Cal. App. 5th 1150, 1158–59 (2018)................................................................ 11

*Carter v. CB Richard Ellis, Inc.*,
  122 Cal. App. 4th 1313 (2004)........................................................................... 10

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988)........................................................................................ 9

*Guz v. Bechtel Nat. Inc.*,
  24 Cal. 4th 317 (2000)................................................................................... 9, 10

*Light v. Dep't of Parks & Recreation*,
  14 Cal. App. 5th 75, 94 (2017).......................................................................... 6

*Luck v. S. Pac. Transp. Co.*,
  218 Cal. App. 3d 1, 14 (1990), *reh'g denied and opinion modified*
  (Mar. 23, 1990).................................................................................................. 9

*Muzquiz v. City of Emeryville*,
  79 Cal. App. 4th 1106 (2000)............................................................................ 12

*Nakai v. Friendship House Assn. of Am. Indians, Inc.*,
  15 Cal. App. 5th 32, 38–39 (2017)..................................................................... 5

*Ross v. RagingWire Telecomms., Inc.*,
  42 Cal. 4th 920 (2008)....................................................................................... 8

iii                Case No. 8:21-cv-00187-CJC (KESx)

*Schmidt v. Super. Ct.*,
   44 Cal. App. 5th 570, 581–82 (2020), *as modified on denial of reh'g*
   (Feb. 14, 2020), *review denied* (Apr. 15, 2020) ........................................ 10

*Scott v. Phoenix Schools, Inc.*,
   175 Cal. App. 4th 702 (2009) .................................................................... 11

*Slivinsky v. Watkins-Johnson Co.*,
   221 Cal. App. 3d 799 (1990) ....................................................................... 2

*Tomlinson v. Qualcomm, Inc.*,
   97 Cal. App. 4th 934 (2002) ....................................................................... 9

*Wills v. Super. Ct.*,
   195 Cal. App. 4th 143 (2011), *as modified on denial of reh'g* (May
   12, 2011) ..................................................................................................... 2

**Federal Statutes**

42 U.S.C.
   § 1983 ......................................................................................................... 5

**California Statutes**

Cal. Civ. Code
   § 3294 ....................................................................................................... 11

California Labor Code
   §§ 1101 and 1102 ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(c)(2).................................................................................. 3

Fed. R. Civ. P. 56(c)(4).................................................................................. 3

https://www.politico.com/news/2021/01/13/mccarthy-trump-
responsibility-capitol-riot-458975 .............................................................. 4

https://www.usnews.com/news/elections/articles/2021-01-06/read-
mitch-mcconnells-statement-to-the-senate-on-the-storming-of-the-
capitol ......................................................................................................... 4

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Snyder's Opposition is clear on only one point: *she* personally believes she acted lawfully when she went to the U.S. Capitol Building on January 6, 2021. But the Opposition completely fails to address Snyder's legal burden under the *McDonnell Douglas* standard: to show that Alight's stated reason for terminating her employment—*its* belief that she trespassed on Capitol grounds and publicized her conduct on Facebook—is pretext for unlawful retaliation in violation of sections 1101 and 1102 of the California Labor Code. Snyder's professed *subjective belief* that she did nothing wrong by joining the mobs at the Capitol Building on January 6 cannot meet this burden; it is difficult to imagine many discharged employees agree with the reasons for their discharge. Snyder offers zero admissible evidence to show that Alight held any political bias against her. Indeed, she admitted in her deposition that Alight did nothing to discourage her support for Donald Trump or to otherwise restrict her off-duty political activity.

Snyder's "evidence" of pretext is limited to criticizing Alight's investigation and insisting that she did not personally believe she committed any violence or cross any barricades. First, that Snyder questions the duration of the investigation or suggests that there is exculpatory evidence not considered by the decision makers is legally irrelevant to the issue of pretext. Likewise, that Snyder believes she did not commit a crime by going to the Capitol is similarly irrelevant to this Court's inquiry. The issue is not what Snyder's claimed reasons were for going to the Capitol Building on January 6; rather, the relevant legal issue is only whether Alight was motivated by animus barred by sections 1101 and 1102. In other words, "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotation marks omitted). Snyder "cannot simply show that the employer's decision was wrong or mistaken, since the factual

1                                   Case No. 8:21-cv-00187-CJC (KESx)

1   dispute at issue is whether discriminatory animus motivated the employer, not

2   whether the employer is wise, shrewd, prudent, or competent." *Wills v. Super. Ct.*,

3   195 Cal. App. 4th 143, 160 (2011), *as modified on denial of reh'g* (May 12, 2011).

4          Snyder has utterly failed to offer any admissible evidence reflecting that

5   Alight did not sincerely believe its reasons for terminating Snyder's employment

6   (*i.e.*, that Snyder engaged in unlawful conduct in violation of Alight's Code of

7   Conduct by going to the Capitol on January 6). She has not met her burden to show

8   Alight was motivated by political animus in violation of sections 1101 and 1102 of

9   the Labor Code. Accordingly, the Court should grant summary judgment and dismiss

10  her claims.

11  **II.    ARGUMENT**

12          **A.    No Genuine Dispute of Material Fact on Snyder's Claim for Wrongful Termination.**

13

14                  **1.    There is no evidence Alight's termination of Snyder's employment contravened a substantial public policy.**

15         As explained in the moving papers, Snyder can only prevail by showing

16  Alight's "motivation for a discharge contravenes some substantial public policy

17  principle" encompassed within sections 1101 or 1102 of the Labor Code. *Slivinsky v.*

18  *Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 806 (1990) (citation, internal quotation

19  and formatting marks omitted). "[L]iability under §§ 1101(a) and 1102 is triggered

20  only if an employer fires an employee based on a political motive." *Couch v.*

21  *Morgan Stanley & Co. Inc.*, 656 F. App'x 841, 843 (9th Cir. 2016). The Opposition

22  fails to identify a scintilla of admissible evidence to show that Alight terminated

23  Snyder based on a prohibited political motive.[1]

24         First, Snyder does not dispute, other than on relevance grounds, that Alight's

25

26  _____

27  [1]    Snyder's Opposition brief states that she was not "demonstrating" at the Capitol, suggesting she was just an innocent bystander. (Opp'n at 8:16). If she was not engaged in a political demonstration, then she cannot claim that being terminated

28  for being at the Capitol on January 6 was politically motivated.

1  Code of Conduct states "[c]olleagues are free to participate in personal political

2  activities…." (UF 4.[2]) Nor does she offer any other contrary evidence regarding

3  Alight's overall policies. This admission and the lack of contrary evidence is fatal to

4  Snyder's claim that she was wrongfully terminated in violation of the public policies

5  in Labor Code section 1101. *See Ross v. Indep. Living Res. of Contra Costa Cty.*, No.

6  C08-00854 TEH, 2010 WL 2898773, at \*9 (N.D. Cal. July 21, 2010) (summary

7  judgment on Section 1101 claim proper where no evidence of employer policy

8  discouraging employees from filing ADA lawsuits).

9          Second, at her deposition, Snyder admitted she was unaware of any Alight

10  rule, regulation, or policy forbidding employees from participating in off-duty

11  political activity or forbidding employees from becoming candidates for political

12  office. (UF 6, 7.) It is undisputed that no one in Alight management ever indicated to

13  Snyder that it had any concerns with her support of Donald Trump. (UF 10.)

14  Snyder's attempt to dispute her own sworn testimony misses the mark. She argues

15  that Alight "promulgated corporate political positions, which were supported by its

16  major stakeholder, Blackstone…" by citing to documents produced during discovery

17  and attached to Snyder's counsel's declaration with no attempt to further authenticate

18  the documents, nor to lay a proper foundation. (*See* GDF 6, 7, 10; Fed. R. Civ. P.

19  56(c)(4); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th

20  Cir. 1989) (attorney could not "authenticate the [document]….[because] [h]e did not

21  prepare or file the [document], nor did he explain in his affidavit where the attached

22  copy…originated"). Inadmissible evidence cannot give rise to a genuine dispute of

23  material fact. *See* Fed. R. Civ. P. 56(c)(2). And even taken at face value, these

24  documents are completely irrelevant to Alight's decision to terminate Snyder and

25  cannot otherwise create a genuine material dispute. The first document appears to be

26

27  [2]      All references to Alight's Uncontroverted Material Facts are abbreviated "UF
    [number]." All references to Snyder's Statement of Genuine Disputes of Material
28  Facts are abbreviated "GDF [number]."

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
52133625.v5-OGLETREE

1   a draft statement from Matthew Anderson to MacKenzie Lucas that condemns the

2   actions taken by the rioters. (Declaration of David Flyer ["Flyer Decl."], Ex. Q at

3   ALIGHT-SNYDER000000378.) The second is a series of text messages between

4   Paulette Dodson and Amy Wulfestieg. (*Id.* at ALIGHT-SNYDER000000644.)

5   Neither document reflects, or even suggests, any political motivation to terminate

6   Snyder.[3] It is undisputed that none of these individuals made the decision to

7   terminate Snyder's employment. (UF 30, GDF 30.) And while Dodson did provide

8   information regarding what the factual investigation had determined to the actual

9   decision-maker Cesar Jelvez, Snyder does not dispute that Dodson accurately

10  conveyed the investigation results as she understood them. (UF 24, 26, GDF 24, 26.)

11  Whatever inference Snyder hopes the Court will draw from these documents is far

12  too vague to create a triable issue on her claim that she was wrongfully terminated in

13  violation of sections 1101 or 1102. *See Mircovich v. Reuters Am., LLC*, No. 218-cv-

14  00133-CAS-PJWx, 2019 WL 1585198, at *10 (C.D. Cal. Apr. 8, 2019).

15      Finally, Snyder also admitted at her deposition that Alight never threatened

16  her about engaging in political activity or encouraged or urged her to engage in

17  political activity. (UF 7, 8; GDF 7, 8.) Snyder's new declaration stating she

18

---

19  [3]      Snyder appears to suggest that Alight's condemnation of the violent and
    deadly riot at the Capitol on January 6 reflects a political bias. Not so. Both this
20  Court and the District of Columbia Circuit have adopted similar characterizations of
    the events of January 6, 2021. *See, e.g.*, Eastman v. Thompson, No. 822-cv-00099-
21  DOC-DFM, 2022 WL 894256, at *5 (C.D. Cal. Mar. 28, 2022) ("the rioters
    continued to break into the Capitol"); *Trump v. Thompson*, 20 F.4th 10, 18 (D.C. Cir.
22  2021), *cert. denied*, 142 S. Ct. 1350, 212 L. Ed. 2d 55 (2022) (describing "throngs of
    rioters"). Moreover, Senate Minority Leader Mitch McConnell, not a leftist by any
23  definition, described the January 6 events as a "failed insurrection," and those at the
    Capitol an "unhinged crowd" aiming to prevent Congress from certifying the
24  election by the use of "thugs, mobs or threats." *See, e.g.*,
    https://www.usnews.com/news/elections/articles/2021-01-06/read-mitch-
25  mcconnells-statement-to-the-senate-on-the-storming-of-the-capitol. GOP House
    Minority Leader Kevin McCarthy, also hardly a liberal Democrat, similarly
26  condemned those at the Capitol on January 6 and characterized them as "mob
    rioters." *See, e.g.*, https://www.politico.com/news/2021/01/13/mccarthy-trump-
27  responsibility-capitol-riot-458975. In other words, criticism of the rioters who
    invaded the Capitol on January 6 was bipartisan and does not necessarily reflect a
28  political bias or motivation.

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

52133625.v5-OGLETREE

1   "reasonably believes" the reason for her employment termination is a "cover up" is

2   "mere allegation and speculation [regarding causation] [that] do not create a factual

3   dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d

4   1075, 1081–82 (9th Cir. 1996) (citation omitted). The Court may properly disregard

5   this type of "conclusory testimony--which lack[s] necessary facts and data." *Lumens*

6   *Co. v. GoEco LED, LLC*, 807 F. App'x 612, 617 (9th Cir. 2020).

7         The sole case on this issue regarding political bias cited in the Opposition is

8   completely inapposite. In *Pease v. Gore*, the Complaint alleged "claims under 42

9   U.S.C. § 1983 against the City of San Diego and Sheriff Gore for violations of First,

10  Fourth, and Eighth Amendments of the U.S. Constitution." No. 18-CV-01062-BAS-

11  NLS, 2018 WL 4951957, at *2 (S.D. Cal. Oct. 12, 2018). The key issues in *Pease*

12  were whether "(1) the defendant was acting under color of state law at the time the

13  complained of act was committed; and (2) the defendant's conduct deprived plaintiff

14  of rights, privileges or immunities secured by the Constitution or laws of the United

15  States." *Pease*, 2018 WL 4951957, at *4. These questions are obviously irrelevant to

16  whether there is admissible evidence that Alight terminated Snyder's employment

17  based on a political motive.

**2.     There is no evidence that Alight's legitimate reason for
termination was pretextual.**

18

19        Even if Snyder could show some factual dispute concerning her *prima facie*

20  case, "under…[the] *McDonnell Douglas* [analysis] the employer's burden is satisfied

21  if he simply 'explains what he has done' or 'produc[es] evidence of legitimate

22  nondiscriminatory reasons.'" *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S.

23  24, n. 2 (1978); *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir.

24  2013) ("California courts also employ the *McDonnell Douglas* burden-shifting

25  framework in analyzing retaliation claims"). Once the employer does so, "the

26  employee then must show that the employer's reasons are pretexts for

27  discrimination, or produce other evidence of intentional discrimination." *Nakai v.*

28

*Friendship House Assn. of Am. Indians, Inc.*, 15 Cal. App. 5th 32, 38–39 (2017) (citation and internal quotation and formatting marks omitted). "A plaintiff may rely on circumstantial evidence to show pretext, but "such evidence must be both specific and substantial." *Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 WL 5408678, at *2 (9th Cir. Nov. 18, 2021) Importantly, "mere temporal relationship between an employee's protected activity and the adverse employment action, while sufficient for the plaintiff's *prima facie* case, cannot create a triable issue of fact regarding pretext if the employer offers a legitimate, nonretaliatory reason for the adverse action." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 94 (2017). California appellate courts have "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of [pretext]." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 354 (2008) (citations and internal quotation marks omitted).

Snyder does not even attempt to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence….'" *Arteaga*, 163 Cal. App. 4th at 343. Indeed, while admitting she was at the Capitol Building on January 6 (Compl., ¶ 9, ACF 7[4]) she criticizes Alight's consistent explanation for its actions ***and admits*** the evidence shows Alight genuinely believed its reasoning for terminating Snyder's employment. (Opp'n at 12:27-28, 13:2-3.) Snyder only takes issue with the "incompleteness" of Alight's investigation, which is insufficient to establish pretext. *See Day v. Sears Holding Corporation*, 930 F. Supp.2d 1146, 1174 (C.D. Cal. 2013) ( "while [plaintiff] disputes the conclusion that she violated company policy, she has not adduced evidence that the investigation of her conduct was so flawed as to be

---

[4]     References to Snyder's Additional Contested Facts in her Statement of Genuine Disputes of Material Fact (ECF No. 105) are abbreviated "ACF [number]."

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
52133625.v5-OGLETREE

1   unworthy of credence); *McKinney v. American Airlines, Inc.*, 641 F.Supp.2d 962,

2   974 (C.D. Cal. 2009) (plaintiff cannot establish pretext by showing investigation

3   resulted in erroneous decision; rather, plaintiff must show reason was pretextual and

4   that the real reason was unlawful discrimination).

5          Snyder does not dispute that both Paulette Dodson and Cesar Jelvez

6   understood that the entirety of the Capitol Building was closed to the public on

7   January 6, 2021 and that Snyder's photos showed her inside a closed area. (GDF 25,

8   28.) Nor does Snyder dispute Alight discharged her based on its understanding of her

9   actions after investigation. (GDF 27-29.) This is fatal to her claim because "it is not

10  important whether [the reasons for the employer's actions] were objectively false

11  (e.g., whether [plaintiff] actually lied). Rather, courts only require that an employer

12  honestly believed its reason for its actions, even if its reason is foolish or trivial or

13  even baseless." *Villiarimo,* 281 F.3d at 1063. "The employer may fire an employee

14  for a good reason, a bad reason, a reason based on erroneous facts, or for no reason

15  at all, as long as its action is not for a discriminatory reason." *Arteaga*, 163 Cal. App.

16  4th at 344. There is simply no evidence that Alight's legitimate business reasons for

17  discharging Snyder were pretext.

18                  **3.      Snyder cannot salvage her wrongful termination claim by**
                             **arguing a new legal theory that was not previously alleged.**
19

20         Implicitly recognizing the weakness of her arguments under sections 1101 and

21  1102, Snyder now, for the first time, attempts to salvage her wrongful termination

22  claim by adding a new, unalleged legal theory that Alight retaliated against her for

23  reporting supposed "cyber-bullying" when she squabbled on Facebook with her high

24  school friend. However, "[a] plaintiff may not amend her complaint through

25  argument in a brief opposing summary judgment." *Garland Connect, LLC v.*

26  *Travelers Cas. Ins. Co. of Am.*, No. CV 20-09252 AB (SKx), 2022 WL 1589272, at

27  *3 (C.D. Cal. Feb. 3, 2022) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d

28  1312, 1315 (11th Cir. 2004)). This Court's reading of the Complaint is consistent

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  with the fact the complaint never alleged this theory. (*See* ECF No. 30 at 5:10-18.)

2  Snyder should not be permitted to "amend" her allegations now at the eleventh hour

3  after the close of fact discovery.

4        Even if Snyder were allowed to now add a wholly new theory for retaliation

5  based on her online squabble with Facebook friends who disapproved of her

6  behavior on January 6, this theory does not support a wrongful termination in

7  violation of public policy claim. "To support such a cause of action, the policy in

8  question must satisfy four requirements: First, the policy must be supported by either

9  constitutional or statutory provisions. Second, the policy must be public in the sense

10  that it inures to the benefit of the public rather than serving merely the interests of

11  the individual. Third, the policy must have been articulated at the time of the

12  discharge. Fourth, the policy must be fundamental and substantial." *Ross v.*

13  *RagingWire Telecomms., Inc*., 42 Cal. 4th 920, 932 (2008) (quoting *Stevenson v.*

14  *Super. Ct*., 16 Cal. 4th 880, 894 (1997), internal quotation marks omitted). Thus

15  where "[t]he conduct [] complained about is a breach of company policy rather than

16  any legal statute or regulation, or other violation based in law," plaintiff has no claim

17  for wrongful termination. *Sako v. Wells Fargo Bank, N.A.*, No. 14CV1034-GPC

18  (JMA), 2015 WL 5022307, at *14 (S.D. Cal. Aug. 21, 2015) (granting summary

19  judgment on wrongful termination claim). There is simply no constitutional or

20  statutory provision in California that either obligates employers to police their

21  employees' Facebook squabbles or insulates an employee from potential discipline if

22  the on-line conduct results in what the employer reasonably considers a violation of

23  its policies.

24        In the absence of any genuine dispute of material fact, summary judgment on

25  Snyder's wrongful termination claim is appropriate.

26      **B.**    **<u>No Genuine Dispute of Material Fact on Snyder's Claim for Breach
of Covenant of Good Faith and Fair Dealing.</u>**

27

      Snyder and Alight entered an express written agreement for at-will

28

    Case No. 8:21-cv-00187-CJC (KESx)

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

52133625.v5-OGLETREE

1   employment. (UF 11, 12.) The "at-will provision in an express written agreement,

2   signed by the employee, *cannot* be overcome by proof of an implied contrary

3   understanding." *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, n. 10 (2000) (emphasis

4   added); *Tomlinson v. Qualcomm, Inc*., 97 Cal. App. 4th 934, 945 (2002) (no implied

5   employment agreement where plaintiff's "Terms of Employment" specified at-will

6   status); *Jadwin v. Cty. of Kern*, 610 F. Supp. 2d 1129, 1193 (E.D. Cal. 2009) ("the

7   bylaws, which are a part of an express employment contract…permit removal…at-

8   will…[and are] controlling over an implied contract"). When Alight hired Snyder, it

9   sent her an offer letter specifying that her "employment with the Company is not for

10  a specified period of time and constitutes at-will employment." (UF 11.) The letter

11  expressly "supersede[d] any prior representation or agreements between [Snyder]

12  and the Company, whether written or oral." (*Id*.) At her deposition, Snyder admitted

13  she understood that she was free to leave Alight and pursue other jobs at any time for

14  any reason." (UF 12.) Courts may not imply an agreement that "varies the terms of

15  an express at-will employment agreement signed by the employee." *Tomlinson*, 97

16  Cal. App. 4th at 944. In the absence of an implied agreement granting Snyder good-

17  cause termination rights, Snyder has no claim for breach of the covenant of good

18  faith and fair dealing because "[w]here the employment contract itself allows the

19  employer to terminate at will, its motive and lack of care in doing so are, in most

20  cases at least, irrelevant." *Guz*, 24 Cal. 4th at 351.

21          To the extent they are apposite, Snyder's authorities support Alight's position.

22  The *Foley* factors erroneously cited by Snyder only apply "[w]here there is no

23  express agreement." *Guz*, 24 Cal. 4th at 366; *see also Foley v. Interactive Data*

24  *Corp*., 47 Cal. 3d 654, 677 (1988) (in "*absence of an express written or oral contract*

25  *term* concerning termination of employment" evidence of contrary intent may

26  overcome statutory presumption of at-will status) (emphasis added). For example, in

27  *Luck v. S. Pac. Transp. Co*., there was no "express written or oral contract term

28  concerning termination of employment." 218 Cal. App. 3d 1, 14 (1990), *reh'g denied*

1   *and opinion modified* (Mar. 23, 1990). On that basis, the court went on to evaluate

2   whether the evidence supported the jury's implied finding that "[t]he presumption of

3   at-will employment [was] overcome by evidence of an implied agreement that the

4   employment would continue indefinitely, pending occurrence of some event…."

5   *Luck*, 218 Cal. App. 3d at 14.[5]

6           Alternatively, even if Alight's offer letter to Snyder were not an express at-

7   will employment agreement, and even if Snyder's employment history with Alight's

8   ***predecessor companies*** (followed by a break in service working for a completely

9   unrelated company) were equivalent to uninterrupted service with Alight, this is ***still***

10   insufficient to establish an implied contract as a matter of law. *See Guz*, 24 Cal. 4th

11   at 341-342, 345 (longevity, raises, and promotions are their own reward and

12   company president's statement that company only terminated for "good reason"

13   insufficient to form implied contract); *Carter v. CB Richard Ellis, Inc.*, 122 Cal.

14   App. 4th 1313, 1327 (2004) (thirty-year employment and assurances of promotion as

15   long as employee did a "good job" insufficient to form implied contract). In *Guz*, the

16   California Supreme Court squarely held "[w]e therefore decline to [hold] that long,

17   successful service, standing alone, can demonstrate an implied-in-fact contract right

18   not to be terminated at will." 24 Cal. 4th at 343. To the extent *Luck* differs from *Guz*

19   on this point, it was overruled by the later high court decision. And even if *Luck* is

20   read on its own terms, Snyder's attempt to analogize her circumstances to those of

21   the *Luck* plaintiff still fails because Snyder cites no evidence to support the alleged

22   implied contract beyond the supposed longevity of her employment. (ACF 4.) In

23   contrast, "Luck was promoted to a nonunion position after two years. She received

24

25   [5]     Additionally, the *Luck* court's review and discussion of the implied contract
evidence was constrained by the "highly deferential" "substantial evidence"

26   standard, which does not apply here. *Luck*, 218 Cal. App. 3d at 15; *Schmidt v. Super.
Ct.*, 44 Cal. App. 5th 570, 581–82 (2020), *as modified on denial of reh'g* (Feb. 14,

27   2020), *review denied* (Apr. 15, 2020). "Under this standard of review, parties
challenging a trial court's factfinding bear an enormous burden." *Schmidt*, 44 Cal.

28   App. 5th at 581–82 (citation and internal quotation and formatting marks omitted).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
52133625.v5-OGLETREE

1   grade and salary increases and was repeatedly complimented on the high quality of

2   her work during her term of employment." *Luck*, 218 Cal. App. 3d at 14–15. No such

3   evidence is offered here.

### C.   No "Clear and Convincing Evidence" of "Oppression, Fraud, or Malice" against Snyder.

Snyder does not dispute that her punitive damages recovery requires "clear
and convincing evidence" that (1) an officer, director, or managing agent (2)
committed an act of oppression, fraud, or malice, or authorized or ratified the same.
Cal. Civ. Code § 3294. "Under the clear and convincing standard, the evidence must
be so clear as to leave no substantial doubt and sufficiently strong to command the
unhesitating assent of every reasonable mind." *Butte Fire Cases v. Super. Ct. of
Sacramento Cty.*, 24 Cal. App. 5th 1150, 1158–59 (2018) (citations and internal
formatting and quotation marks omitted). "[W]here the plaintiff's ultimate burden of
proof will be by clear and convincing evidence, the higher standard of proof must be
taken into account in ruling on a motion for summary judgment or summary
adjudication, since if a plaintiff is to prevail on a claim for punitive damages, it will
be necessary that the evidence presented meet the higher evidentiary standard." *Id*.
"[W]rongful termination, without more, will not sustain a finding of malice or
oppression." *Scott v. Phoenix Schools, Inc.*, 175 Cal. App. 4th 702, 717 (2009);
*Barry v. Kohl's Dep't Stores, Inc.,* No. B252275, 2015 WL 3381404, at \*7 (Cal. Ct.
App. May 26, 2015) (disagreeing that terminating employee due to cancer diagnosis
and return from leave "necessarily requires a finding of malice" and affirming
summary adjudication of punitive damages request); *Carr v. Home Depot U.S.A.,
Inc.*, No. 17cv1377 JM (JLB), 2018 WL 2329673, at \*8 (S.D. Cal. May 23, 2018).
Snyder fails to cite any evidence whatsoever of malice, fraud, or oppression.

Indeed, the scant "evidence" cited in the Opposition sheds no light whatsoever
on Alight's termination decision or the investigation and decision-making process
preceding the decision. Apart from citing the testimony of non-Alight-affiliated third

1   parties with no conceivable insight into the termination decision, Snyder relies on her

2   own speculation as to Alight's motives and a draft press release generally

3   condemning "the actions of the rioters at the insurrection in Washington, D.C." (*See*

4   Opp'n at 16; ACF 14 [citing Declaration of Leah Snyder at ¶ 8 and Declaration of

5   David Flyer at Ex. Q].) First, that Snyder "reasonably believes" the reason for her

6   employment termination is a "cover up" is immaterial; Snyder already admitted

7   under oath that Alight never threatened her about engaging in political activity, that

8   it never encouraged or urged her to engage in political activity, and no one in Alight

9   management ever indicated that Alight did not want Snyder to support Donald

10  Trump. (*Compare* Declaration of Leah Snyder, ¶ 8 *with* UF 6-10.) The Court may

11  properly disregard conclusory declaration statements that contradict prior deposition

12  testimony. *See Conyers v. Roddy*, 830 F. App'x 531 (9th Cir. 2020) (citing *Yeager v.*

13  *Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)); *Lumens Co.*, 807 F. App'x at 617.

14  Second, Alight's condemnation of a violent riot that happened to be politically

15  motivated is entirely reasonable—this Court (and the Congressional Republican

16  leadership) adopted a similar characterization. *See, e.g., Eastman v. Thompson*, No.

17  822-cv-00099-DOC-DFM, 2022 WL 894256, at *5 (C.D. Cal. Mar. 28, 2022).

18  Condemning the horrific events of January 6 hardly suggests categorical bias against

19  any particular political party or position.

20          The balance of Snyder's argument merely complains about Alight's reliance

21  on news reports to inform itself about the events of January 6, 2021. But that Snyder

22  (or even this Court) would investigate differently does not demonstrate that Snyder

23  was wrongfully terminated, much less that her employment termination was

24  motivated by malice, fraud, or oppression. Again, this Court does not sit as "a super-

25  personnel department" to second-guess business decisions, even if "the employer's

26  decision was wrong or mistaken." *Arteaga,* 163 Cal. App. 4th at 343; *Muzquiz v. City*

27  *of Emeryville*, 79 Cal. App. 4th 1106, n. 6 (2000). There is no evidence of any

28  conduct meriting punitive damages here and summary judgment of the punitive

1   damages request is appropriate.

2   **III.   CONCLUSION**

3        After more than a year of discovery, Snyder has adduced no evidence to

4   support the fundamental elements of her wrongful termination and breach of the

5   covenant of good faith and fair dealing claims. For the reasons stated above and in its

6   previously-filed papers, Alight respectfully requests the Court grant its Motion for

7   Summary Judgment.

8

9   DATED: July 11, 2022                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

10

11

12                                          By:  /s/ *Kathleen Choi*
                                                 Kathleen J. Choi
13                                               Thomas M. McInerney

14                                          Attorneys for Defendant
                                            ALIGHT SOLUTIONS LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 8:21-cv-00187-CJC (KESx)
REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
52133625.v5-OGLETREE